UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v.    : | MAGISTRATE NO. 21-MJ-13 (GMH) |
| : | |
| RICHARD BARNETT, : | |
| Defendant. : | |

MOTION FOR EMERGENCY STAY AND
FOR REVIEW OF RELEASE ORDER

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully moves this Court to, first, stay defendant Richard Barnett's release pending trial, and second, review the decision by the Magistrate Judge from the Western District of Arkansas to deny the government's motion for pre-trial detention. In support thereof, the government states the following:

I.    **BACKGROUND**

   A.   **Procedural Posture**

On January 8, 2021, defendant Richard Barnett was arrested in his home state of Arkansas on an arrest warrant issued from the United States District Court for the District of Columbia by Magistrate Judge G. Michael Harvey in connection with a Criminal Complaint charging the defendant with Knowingly Entering or Remaining in any Restricted Building or Grounds Without Lawful Authority While Carrying a Dangerous Weapon, in violation of 18 U.S.C. §§ 1752(a)(1), (a)(2), and (b)(1)(A), Violent Entry and Disorderly Conduct on Capitol Grounds, in violation of 18 U.S.C. §§ 5104(e)(2)(C), (e)(2)(D), and (e)(2)(G), and Theft of Public Money, Property, or Records, in violation of 18 U.S.C. § 641.

1

At his initial appearance in the Western District of Arkansas, the government made a motion to detain the defendant without bond pending trial. The defendant is subject to detention pursuant to 18 U.S.C. § 3142(f)(1)(E), which provides for detention in felony cases involving a dangerous weapon. The presiding magistrate judge denied the government's detention motion and issued an order releasing the defendant with certain conditions. Following this, the government orally moved to stay the defendant's release pending an appeal by the government. The magistrate judge denied that request, and absent further action, the release will be effectuated at approximately 9:00 am CST on January 16, 2021.

**B.     Statement of Facts**

On January 6, 2021, a joint session of the United States Congress convened at the United States Capitol, which is located at First Street, SE, in Washington, D.C. The U.S. Capitol is secured 24 hours a day by U.S. Capitol Police. Restrictions around the U.S. Capitol include permanent and temporary security barriers and posts manned by U.S. Capitol Police. Only authorized people with appropriate identification are allowed access inside the U.S. Capitol. On January 6, 2021, the exterior plaza of the U.S. Capitol was also closed to members of the public. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the United States Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on November 3, 2020. The joint session began at approximately 1:00 p.m. Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

As the proceedings continued in both the House and the Senate, and with Vice President

Mike Pence present and presiding over the Senate, a large crowd gathered outside the U.S. Capitol. As noted above, temporary and permanent barricades were in place around the exterior of the U.S. Capitol building, and U.S. Capitol Police were present and attempting to keep the crowd away from the Capitol building and the proceedings underway inside.

At such time, the certification proceedings still underway and the exterior doors and windows of the U.S. Capitol were locked or otherwise secured. Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of the U.S. Capitol Police, as others in the crowd encouraged and assisted those acts.

Shortly thereafter, at approximately 2:20 p.m. members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Mike Pence, were instructed to—and did—evacuate the chambers. Accordingly, the joint session of the United States Congress was effectively suspended until shortly after 8:00 p.m. Vice President Pence remained in the United States Capitol from the time he was evacuated from the Senate Chamber until the sessions resumed.

During national news coverage of the aforementioned events, video footage which appeared to be captured on mobile devices of persons present on the scene depicted evidence of violations of local and federal law, including scores of individuals inside the U.S. Capitol building without authority to be there.

One individual entered the restricted office area of the Speaker of the House of Representatives Nancy Pelosi and took photographs with his feet propped up on furniture. Those photos were circulated on numerous news media platforms which identified the individual as the

defendant, Richard Barnett of Gravette, Arkansas. Capitol Police searched law enforcement databases including Department of Motor Vehicle records and obtained a photograph and biographical information for the defendant. These records confirmed that the individual in the news photographs did in fact appear to be Richard Barnett of Gravette, Arkansas.

The photos circulated by news media depict the defendant in and around U.S. Capitol property. One photo shows the defendant seated inside of Nancy Pelosi's office with his feet propped on a desk with an America flag lying on an adjacent credenza. The defendant is wearing a hat, plaid jacket, blue jeans, and brown boots in the photo. Another photo depicts the defendant seated holding an envelope in his left hand addressed to The Honorable Billy Long 2453 Rayburn House Office Building Washington, D.C. 20515 and a digital signature of Nancy Pelosi. In another photo, an individual whose face is blocked by a flag, but who appears to be the defendant based on his clothing, is seated at a different desk with his feet propped holding an American flag and a cell phone. Another unidentified individual in a brown jacket is sitting next to him on a couch.







Video surveillance from a camera positioned outside of the Speaker's main office door captures individuals entering and exiting the office. At approximately 2:30 p.m., several unidentified individuals appear to try the door to the office; however, the door was locked. At approximately 2:33 p.m., an unidentified individual pushes in the door to the office. At 2:50 p.m., the defendant is captured on surveillance video carrying an American flag and a cellular phone while entering the doors that lead to the Speaker's conference room adjoining the main office space. As he is entering it, he is following behind the unidentified individual in the brown jacket. At 2:56 p.m., the defendant is captured leaving the main office doors of the Speaker's office space with only a phone in his hand.

On the same date, the defendant spoke to media outlets in a video recording. In the recording, the defendant is wearing the same hat and plaid jacket as worn inside of the Speaker's office, except that he appears to have removed his shirt. The defendant was asked by a person off camera how he obtained an envelope he was holding, which was addressed to The Honorable Billy Long 2453 Rayburn House Office Building, Washington, D.C. 20515, with a return address of Office of the Speaker, U.S. House of Representatives, Washington, D.C. 20515, and a digital signature of Nancy Pelosi. The defendant replied, "I did not steal it. I bled on it because they were macing me and I couldn't fucking see so I figured I am in her office. I got blood on her office. I put a quarter on her desk even though she ain't fucking worth it. And I left her a note on her desk that says 'Nancy, Bigo was here, you Bitch.'"

In another photograph, seen below, which appears to be taken outside on Capitol grounds, the defendant is depicted holding the envelope he purported to have taken from Speaker Pelosi's office. Based on the writing on the envelope, the envelope appears to be the same envelope the

6

defendant was photographed holding inside of the office building.



On January 8, 2021, the defendant waived his Miranda rights and participated in a custodial interview with law enforcement. During the interview, Barnett admitted driving from Arkansas to Washington D.C. to participate in the "Stop the Steal" Rally. The defendant stated that during the course of the protests, he was pushed inside of the Capitol by a large crowd. The defendant also turned over to law enforcement the envelope that was taken from Speaker Pelosi's office. Law enforcement inquired of Barnett about his cellular device and Barnett indicated it was not on his person. He also commented that the agents may not find much at his house because he had people packing it up the night before.

On January 11, 2021, Special Agent James Soltes of the FBI's Washington Field Office learned that law enforcement received a tip that in one or more of the photographs of the defendant

seated in Speaker Pelosi's office, the defendant was carrying a stun gun. Special Agent Soltes reviewed the photographs again and determined the tip to be accurate. As seen in the zoomed-in box in the photograph below, the ZAP brand is clearly visible on the stun gun tucked into the defendant's pants. Based on the brand on the weapon, and its appearance, the weapon appears to be a ZAP Hike N Strike 950,000 Volt Stun Gun Walking Stick.



On January 11, 2021, Special Agent Soltes further learned that law enforcement conducted a search on January 8, 2021, at the defendant's residence, located on Mount Olive Road, Gravette, Arkansas, pursuant to a search warrant issued by Chief U.S. Magistrate Judge Erin L. Wiedemann in the Western District of Arkansas. During the execution of that warrant, law enforcement observed the empty packaging for a ZAP Hike n' Strike Hiking Staff High Voltage Stun Device inside the home. This packaging is shown in the below photograph.



C.      **Order for Release**

After an initial appearance and hearing in the Western District of Arkansas on January 15, 2021, the presiding magistrate judge issued an Order of Release for the defendant with certain conditions. On that same day, the United States orally sought a stay of the Order pending this Motion for Review. The magistrate judge denied that request, and absent further action, the release will be effectuated at approximately 9:00 am CST on January 16, 2021.

III.    **ARGUMENT**

Title 18, U.S.C. § 3145(a) states:

**(a) Review of a release order –** If a person is ordered released by a magistrate, …

> (1) the attorney for the Government may file, with the court having original jurisdiction over the offense, a motion for revocation of the order or amendment of the conditions of release . . .

9

The motion shall be determined promptly.

On the government's motion to review a release order, this Court considers *de novo* the Magistrate Judge's denial of pre-trial detention. In its discretion, the Court may proceed to rehear the evidence by recalling the witnesses, reviewing transcripts, or by proceeding through proffer and argument. It may take additional evidence from new witnesses or consider arguments not previously raised. In short, the Court may proceed as best enables it to resolve the question posed: whether any condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community. As the legislative history of the 1984 Bail Reform Act amendments shows:

> [T]he language referring to the safety of the community refers to the danger that the defendant might engage in criminal activity to the detriment of the community. The committee intends that the concern about safety be given a broader construction than merely danger of harm involving violence. . . .

See S.Rep. No. 225, 98th Cong., 2d Sess. 307, reprinted in 1984 U.S. Code Cong. & Ad. News 3182, 3195-3196.[1]

---

[1] To that end, it is worthwhile recalling Congress' intent in 1984 when it enacted the current version of the Bail Reform Act:

> Many of the changes in the Bail Reform Act reflect the . . . determination that Federal bail laws must . . . give the courts adequate authority to make release decisions that give appropriate recognition to the danger a person may pose to others if released. . . . The constraints of the Bail Reform Act fail to grant the Courts the authority to impose conditions of release geared toward assuring community safety, or the authority to deny release to those defendants who pose an especially grave risk to the safety of the community. . . . *This broad base of support for giving judges the authority to weigh risks to community safety in pretrial release decisions is a reflection of the deep public concern, which the Committee shares, about the growing problem of crimes committed by persons on release.*

10

The defendant is subject to detention pursuant to 18 U.S.C. § 3142(f)(1)(E) because he is charged with a felony involving a dangerous weapon. In this case, that offense is unlawfully entering and occupying an office inside the United States Capitol restricted for use by a congresswoman while carrying a stun gun. Consequently, the government requests review of the magistrate judge's decision to release the defendant and seeks a further stay of the order from this Court.

Respectfully submitted,

MICHAEL R. SHERWIN
ACTING UNITED STATES ATTORNEY

*Mary Dohrmann*

MARY L. DOHRMANN
Assistant United States Attorney
N.Y. Bar 5443874
U.S. Attorney's Office
555 4th Street, N.W.
Washington, D.C. 20530
202-252-7035
Mary.Dohrmann@usdoj.gov

---

See S.Rep. No. 225, 98th Cong., 2d Sess. 307, reprinted in 1984 U.S. Code Cong. & Ad. News 3182, 3486-3487. (Emphasis added.)