UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | |
| : | |
| **v.** : | Case No. 21-cr-38 (CRC) |
| : | |
| **RICHARD BARNETT,** : | |
| : | |
| **Defendant.** : | |

## GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR MODIFICATION OF BAIL TO PLACE DEFENDANT ON CONDITIONAL RELEASE PENDING TRIAL

"Nancy, Bigo was here, you bitch." Those are the words of the defendant (using his preferred nickname) in his message to Congresswoman and Speaker of the House Nancy Pelosi on January 6, 2021, when he invaded and occupied her office during a mass siege of the U.S. Capitol that halted constitutional proceedings and required the evacuation of members of Congress and the then-Vice President. At the time, the defendant was outfitted with a stun gun purchased for the occasion, and he went on to pose for a photographer, confront officers, give an interview with a reporter, and take to a bullhorn to rile up the crowd. He then returned to his home in Arkansas, where he hid or destroyed evidence. As discussed further below, the defendant's own statements and provocative and dangerous conduct leading up to his criminal activity at the U.S. Capitol make one thing abundantly clear: to him, the events at the Capitol were merely one battle in a "war" that is not over.

On January 28, 2021, Chief Judge Beryl A. Howell rightly decided that no condition or combination of conditions would ensure the safety of the community were the defendant to be released. As detailed below, the government's ongoing investigation has revealed additional

1

information that reinforces the necessity of the defendant's detention pending trial. Accordingly, the government respectfully requests the defendant's Motion for Modification of Bail to Place Defendant on Conditional Release Pending Trial ("Def.'s Mot."), ECF No. 26, be denied.

## REVELANT BACKGROUND

For his conduct on January 6, 2021, the defendant is currently charged by Indictment with: (1) Obstruction of an Official Proceeding, in violation of 18 U.S.C. § 1512(c)(2) and § 2; (2) Entering and Remaining in a Restricted Building or Grounds with a Deadly or Dangerous Weapon, in violation of 18 U.S.C. §§ 1752(a)(1), (b)(1)(A); (3) Disorderly and Disruptive Conduct in a Restricted Building or Grounds, with a Deadly or Dangerous Weapon, in violation of 18 U.S.C. §§ 1752(a)(2), (b)(1)(A); (4) Entering and Remaining in Certain Rooms in the Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(C); (5) Disorderly Conduct in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(D); (6) Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G); and (7) Theft of Government Property, in violation of 18 U.S.C. § 641. After photographs of his criminal conduct at the U.S. Capitol were widely shared by the media, he surrendered to law enforcement on January 8, 2021. At his January 11, 2021, initial appearance, the United States requested detention, and a hearing was set for January 15, 2021, before Magistrate Judge Erin Wiedemann. *United States v. Richard Barnett*, 21-mj-5001 (ELW) (W.D. Ar.). After an hours-long hearing, Judge Wiedemann decided to release the defendant to home detention and denied the government's request for a stay. *See id.* at ECF Nos. 16, 17. However, the government was able to obtain a stay from the District Court of the District of Columbia before the defendant was released, and the defendant was transported to the District of Columbia. *United States v. Richard Barnett*, 21-mj-13 (GMH-BAH) (D.D.C.), ECF

Nos. 7, 8. Chief Judge Howell held a detention hearing on January 28, 2021. After reviewing the transcript of the detention hearing and decision releasing the defendant in the Western District of Arkansas, as well as the parties' proffers and arguments, Chief Judge Howell concluded that no condition or combination of conditions would ensure the safety of the community were the defendant to be released, and entered an order of detention holding him pending trial. During the hearing and in her findings, the Chief Judge carefully examined the entirety of the record, including testimony given in Arkansas. *See* ECF No. 18, Transcript of Detention Hearing, dated Jan. 28, 2021. The Chief Judge concluded each of the applicable factors weighed in favor of detention, finding the defendant posed a danger to the community because of "his brazenly illegal conduct, pattern of armed disturbance, and access to firearms and weapons, like the stun gun, that remain missing." *See* ECF No. 16, Order of Detention, at 4. The defendant now moves for modification of that Order, specifically release on personal recognizance or, as his second choice, home confinement. Def.'s Mot. at 1. For the reasons set forth below, the government opposes.

## ARGUMENT

Under 18 U.S.C. § 3142(g), the Court must consider and weigh four factors in determining whether to detain a defendant pending trial: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release. *See* 18 U.S.C. § 3142(g). Chief Judge Howell correctly determined that the defendant must be detained pending trial in light of his conduct on January 6, 2021, and his continuing danger to the community. Since that detention decision, nothing has changed that would render the defendant any less of a danger. In fact, the government's investigation—which

3

is still ongoing—has revealed additional information that underscores the need for detention of the defendant pending trial.[1]

### A. Nature and Circumstances of the Offense

The nature and circumstances of the offense heavily favor detention. The defendant traveled from his home in Gravette, Arkansas, to Washington, D.C.—a sixteen-hour drive—to take part in the "Stop the Steal" rally. That mass event was planned for January 6, 2021, the day that Congress and the Vice President would certify the Electoral College results of the 2020 Presidential Election in a manner prescribed by the U.S. Constitution. On December 31, 2020, the defendant, who owns multiple firearms, purchased a "ZAP Hike N' Strike 950,000 Volt Stun Gun Walking Stick," in other words, a stun gun concealed within a collapsible walking stick. At his hotel in Washington, on January 5, 2021, the defendant gave a group of onlookers a demonstration, discharging the stun gun in the hotel's bar (and captured on surveillance video). *See* Exhibit 1, at 01:25–01:35. The defendant thus showed himself to be a danger even before he stepped foot on the Capitol Grounds. Additional footage, recorded just before the siege at the U.S. Capitol, shows the defendant near a parking garage at his hotel shouting, "We own this motherfucker. This is our country. This is our District. You want to fuck with us, bring it on!" *See* Exhibit 2. The defendant was ready for a fight.

Thus armed and ready for a fight, the defendant proceeded to unlawfully enter the U.S. Capitol, disrupting the Constitutional proceedings described above. He then made his way to the

---

[1] The government hereby incorporates by reference its Memorandum in Support of Pre-Trial Detention, docketed in this matter as ECF No. 12, and the three attachments thereto: Attachment A (Police Report, dated July 25, 2020), Attachment B (Police Report, dated September 20, 2020), and Attachment C (Transcript of Detention Hearing in W.D. Ar., dated Jan. 15, 2021). The government further relies upon the Order of Detention issued by Chief Judge Howell and docketed at ECF No. 16, and the transcript of that detention hearing docketed at ECF No. 18.

office set aside for use by the Speaker, Congresswoman Nancy Pelosi, where he posed for numerous photographs circulated by the news media.  One photo shows the defendant seated inside of Nancy Pelosi's office with his feet propped on a desk with an American flag lying on an adjacent credenza.  *See* Exhibit 3.  Another photo depicts the defendant seated, grinning gleefully and holding an envelope in his left hand addressed to The Honorable Billy Long 2453 Rayburn House Office Building Washington, D.C. 20515 and a digital signature of Nancy Pelosi.  *See* Exhibit 4.



*Exhibit 3*



*Exhibit 4*

At 2:50 p.m., the defendant is captured on surveillance video carrying an American flag and a cellular phone while entering the doors that lead to the Speaker's conference room adjoining the main office space. At 2:56 p.m., the defendant is captured leaving the main office doors of the Speaker's Office with a phone in his hand. The lower part of the stun gun device can also be seen protruding from below his hip.

The defendant further immortalized and advertised his illegal behavior by speaking to media outlets in a video recording just outside the Capitol. In the recording, the defendant is wearing the same hat and plaid jacket worn inside of the Speaker's office, except that he appears to have removed his shirt. The defendant was asked by a person off camera how he obtained an envelope he was holding, which was addressed to The Honorable Billy Long 2453 Rayburn House Office Building, Washington, D.C. 20515, with a return address of Office of the Speaker, U.S. House of Representatives, Washington, D.C. 20515, and a digital signature of Nancy Pelosi. While displaying his trophy for the camera, the defendant replied, "I didn't steal it, I bled on it because they were macing me and I couldn't fucking see so I figured I am in her office, I got blood on her office, I put a quarter on her desk even though she ain't fucking worth it. And I left her a note on her desk that says 'Nancy, Bigo was here, you bitch.'"[2]  *See* Exhibit 5.

The note described in Exhibit 5 by the defendant, was subsequently found, among others, in the Speaker's Office. *See* Exhibits 6–7.

---

[2]  Any transcriptions of the defendant's recorded statements are made in good faith to the best of the government's ability, and the recordings themselves have been provided as exhibits.



*Exhibit 6*



*Exhibit 7*

The government's investigation has also revealed that, after leaving the Speaker's Office, the defendant proceeded to the Rotunda. There, the defendant confronted law enforcement officers who were attempting to clear the Capitol by directing rioters to the Rotunda and its outside exit and guarding the wings of the Capitol from further intrusion by rioters. Specifically, footage recorded by body worn cameras worn by Metropolitan Police Department officers shows the defendant aggressively demanding either to be allowed to go back to the Speaker's Office, purportedly to get the American flag he left there, or that an officer leave their post, retrieve his flag, and bring it to him. At one point during the confrontation, which lasts several minutes, as an officer attempts to press him back, the defendant can be seen gripping the stun gun device, which is under his clothing at his waist. *See* Exhibits 8–9.



*Exhibit 8*



*Exhibit 9*

When a melee breaks out between a different rioter and officer on the same police line, the defendant is seen yelling and waving his hand in the air inviting the crowd behind him forward. When the officers do not relent in the face of his repeated demands, the defendant states, "Y'all better get my flag, I'm gonna bring 'em in, they'll shove you right through here if I don't get my flag. It's in Nancy Pelosi's office . . . it's going to get really bad, I'm telling you . . . hey, we're fixing to call them in brother, GET MY FUCKING FLAG." *See* Exhibit 10. The interaction ends when the crowd surges toward the police line and, apparently, tear gas is deployed. All of this after the defendant has already intruded deep into the Capitol, planted his feet on the Speaker's desk, and left her a frightening and angry message.

Twenty minutes or so later, the defendant is again captured on body worn camera. By this time, he has removed his shirt and is carrying the stun gun device, which has been extended to the length of a walking stick, in his hand. He approaches a line of police officers and shouts, "We're

9

American citizens, we're patriots.  Your boys maced me.  This is my house, y'all maced me in my own house.  This is gonna get real bad, not necessarily today, we're going to calm down and leave, but y'all gotta remember something.  Y'all gotta pick a fucking side.  This civil war, this isn't 'oh, somebody broke the law'—the fucking Communists have declared war on us, boys." *See* Exhibit 11.

At some point before leaving the Capitol grounds on January 6, 2021, the defendant used a bullhorn to give a speech to the crowd, declaring to loud cheers, "We took back our house, and I took Nancy Pelosi's office!"  He then gloated about his action of leaving a note for the Congresswoman, addressed her once again in disturbing terms, and, finally, initiated a chant of, "Our House."  *See* Exhibit 12.

### B. *Weight of the Evidence*

The overwhelming weight of the evidence against the defendant likewise favors detention. The defendant is featured in high-quality photographs, surveillance footage, and body worn camera footage in and around the U.S. Capitol, expressing his intent to obstruct the Constitutional proceedings occurring there and his glee that he "took" Nancy Pelosi's office.[3]  The stun gun device is visible in multiple photos and videos spanning the defendant's time in and around the U.S. Capitol, as well as in surveillance video where he discharges it at his hotel bar the night

---

[3] The defendant, who loudly and repeatedly bragged about his aggressive incursion into the Capitol on January 6th, now suggests to the Court that he entered the Capitol unwillingly.  *See* Def.'s Mot. at 9.  The government continues to investigate the exact manner of the defendant's entry into the Capitol, but has recently identified surveillance video appearing to show him entering through the Rotunda door at approximately 2:43 p.m.  The video shows the defendant appearing to stumble upon entry, but that is attributable to unlawfully entering as part of a frenzied mob rather than any hesitation or unwillingness on the defendant's part, which is further belied by the totality of his conduct.

before. Indeed, the fact that he purchased the device on December 31, 2020, indicates that he bought it precisely for his criminal activity in the District on January 6, 2021.[4]

### C. History and Characteristics of the Defendant

The defendant's history and characteristics—recent, not historical—were predictive of his conduct at the U.S. Capitol, reflecting an aggressive pattern of creating and contributing to dangerous situations. Thus, they also weigh in favor of detention.

Most notably, in the six months leading up to the insurrection, the defendant engaged in a series of alarming and bizarre activities, some involving law enforcement contact. On July 25, 2020, the defendant was demonstrating with a rifle in tow in a public area near Fayetteville, Arkansas's Washington County Courthouse. The next day, an individual driving her car in that area notified police that she believed the defendant had pointed his weapon at her. *See* ECF No. 12, Attachment A. For the reasons described in Attachment A, the case was closed as unfounded. Next, on September 20, 2020, the police were called a second time regarding the defendant. This time, the caller reported a person carrying a machine gun in the same area as the July 25, 2020, incident.[5] The police responded and in their interaction, captured on body worn camera footage, the defendant can be seen on the sidewalk directly adjacent to the courthouse carrying a long gun as well as a pistol on his hip. After exchanging pleasantries with the officers, he advises them that

---

[4] The defendant invites the Court to credit his self-serving and belated assertion that the stun gun device did not have the requisite batteries to function when he wore it on his hip like a firearm to the Capitol. Def.'s Mot. at 21, 29. This is pure fiction: The defendant purchased the stun gun shortly before the insurrection, chose a device that could be concealed as a walking stick, proudly discharged the stun gun for a crowd of onlookers the night before, appears to be aware of the device's location during a confrontation with an officer, and, as discussed further below, hid or discarded the device before his apprehension.

[5] Arkansas law makes it a crime to possess a handgun on or about one's person "with a purpose to employ [it] as a weapon against a person," Ark. Code § 5-73-120, and to carry a firearm in "any publicly owned building or facility or on State Capitol grounds," *id.* § 5-73-122.

he is "standing security" and explained that a past rally "there was some controversy going on, so we always like to have somebody armed just as a back up." *See* Exhibit 13. He further indicated that the rally in question was a "Save the Children" rally, which is a slogan associated with a discredited QAnon conspiracy theory politicizing an imaginary child sex-trafficking ring.[6] The defendant was not asked, nor did he explain, the precise nature of the "controversy" or why both a pistol and a long gun were necessary—or legal—to address it. After a discussion of the various legal interpretations and strategies that would provide the defendant an exception to the illegality of carrying weapons in public buildings and on the state Capitol grounds, a report was taken but the defendant, deemed "polite," was not arrested. ECF No. 12, Attachment B.

On September 20, 2020, the defendant mentioned to officers a further "Save the Children" event he was hosting, which appears to have taken place on October 10, 2020. Photographs from that event show the defendant holding a pistol fitted with a silencer alongside two young people, one of whom wields a firearm, and in a larger group of individuals all carrying firearms surrounding a sign stating, "Dead Pedophiles Don't Reoffend." Exhibits 14–15.

On December 18, 2020, less than three weeks before he breached the Capitol, a post from a Facebook user account in the name "George Reincarnated Patton" featured a selfie of the defendant wearing the hat he wore to the U.S. Capitol and holding a firearm, and signed with "Bigo," stating, "I came into this world kicking and screaming, covered in someone else's blood. I'm not afraid to go out the same way." Exhibit 16. Whether or not the firearms the defendant

---

[6] A search of the defendant's home following his arrest revealed further evidence of his connection to QAnon, specifically a decal with "Q" underneath "WWG1WGA," the shorthand version of the QAnon motto, "Where we go one, we go all."

possessed in these episodes were legal in his jurisdiction, there is no question that they are exceedingly dangerous in his hands.



*Exhibit 16*

The defendant's recent proclivity for bringing dangerous weapons into volatile situations is alarming on its own, but becomes even more so in the context of his statements contemplating his capacity for violence—not only at the U.S. Capitol on January 6, 2021, but in the months leading up to those events.[7]

---

[7] The defendant's lack of actual criminal convictions highlights the common sense underlying the § 3142(g) factors, which make formal criminal history merely a component of one of four factors to be weighed when considering pre-trial detention.

13

The defendant's behavior after his criminal conduct on January 6, 2021, must also be considered as part of his history and characteristics. The defendant demonstrated both consciousness of guilt (driving home wearing a face covering for apparently the first time, turning off his cell phone, and paying cash)[8] and an immediate impulse to evade responsibility for his actions by hiding or offloading evidence. The iPhone and stun gun device used at the U.S. Capitol have never been recovered. His firearms were removed to the home of a friend—one who had also traveled to D.C. for the events of January 6th—where the defendant still would have access to them. His clothing worn at the rally was found hidden under a dog crate in the back of his significant other Tammy Newburn's car. When questioned as to why it was there, Ms. Newburn—whom the defendant would have this Court appoint as his "third-party" custodian if released to home confinement[9]—claimed it was pure happenstance that those two items of clothing, and only those two items of clothing, were under a dog crate in the trunk of her car. ECF No. 12, Attachment C, Det. H'rg Tr. at 152:6–154:10.

Also important to consider is the defendant's behavior before this very Court. At a status hearing on March 4, 2021, while the Court was setting a status hearing for May 4, 2021, the defendant, appearing via telephone only, interrupted to object. Despite defense counsel's efforts

---

[8] The parenthetical information was provided by the defendant at the time of his arrest, and the defendant now claims it was elicited in violation of his 5th and 6th Amendment rights. Def.'s Mot. at 39–43. Even assuming arguendo the validity of the defendant's complaint, the Court would still be entitled consider these statements, just as a jury would be entitled to consider them, should the defendant testify, as impeachment evidence at any trial in this matter. The defendant also objects to the government's proffer of the evidence that the defendant turned off his location services as a violation of his Fourth Amendment right against warrantless searches. Def.'s Mot. at 34–37. In the context at hand, that legal strawman fares no better than the defendant's 5th and 6th Amendment argument. Even more to the point, none of the information pointed to by the defense is necessary to the conclusion that the defendant poses a serious danger if released.

[9] For the reasons stated above, as well as those detailed in the government's Detention Memorandum in this matter, ECF No. 12 at 14–16, the government submits that even if the defendant could be released, Ms. Newburn would be an unsuitable custodian.

to calm him, the defendant became irate, shouting, "I've been here a long time! I've been here a month! . . . It's not fair!" The defendant continued to speak aggressively and disrespectfully even after the Court announced a five-minute recess.

The defendant's history and characteristics outlined above reveal an inclination to encourage and participate in volatile, dangerous situations with weapons, as well as a lack of impulse control or willingness to accept the consequences of his actions, to include prosecution and imprisonment. In short, he is a ticking time bomb.

### D. Nature and Seriousness of the Danger to Any Person or the Community

The defendant has a recent and frequent history of injecting dangerous weapons into volatile situations and fanning the flames with disturbing, violent rhetoric. He has touted his capacity for violence and belief that it is necessary, going so far as to threaten officers defending the Capitol with future danger in the so-called "war" he referenced in Exhibit 11. And he has shown again and again his lack of regard for the safety of others and the letter of the law. Accordingly, this factor weighs heavily in favor of detention.[10]

The defendant poses a number of specific and prospective dangers to the community: first, that he will create and contribute to dangerous and volatile situations, specifically by bringing dangerous weapons, where in fact such weapons are banned or restricted for public safety reasons; second, that he will use weapons, intimidation, or physical presence to halt legitimate government functions as a soldier in the "war" he believes is currently underway in the United States; third,

---

[10] The defendant cites a litany of cases from various time periods and jurisdictions, as well as several involving participants in the January 6, 2021, riot at the Capitol, to assert essentially that, as the defendant proclaimed at the hearing on March 4, 2021, detaining the defendant pending trial would be unfair. Def.'s Mot. at 22–28. Of course, none of the cases cited are binding on the Court, nor has the defendant identified someone with the defendant's combination of derogatory conduct that has been released pending trial.

15

that he will use the platform he has cultivated for himself to incite others to violent or obstructive conduct.

As the D.C. Circuit has recently noted, "whether a defendant poses a particular threat depends on the nature of the threat identified and the resources and capabilities of the defendant." *United States v. Munchel*, No. 21-3010, 2021 WL 1149196, at *7 (D.C. Cir. Mar. 26, 2021). Here, the defendant poses a threat of future illegal possession of dangerous weapons and has ready access to weapons, including the weapons that he secreted with friends before his arrest in this matter. He also poses a threat of halting further legitimate government functions, given that he has both stated and demonstrated that he views himself as a soldier in a "war" where part of his duty is to stop government action he disagrees with through obstructive behavior or intimidation tactics, such as by invading and occupying the office of a politician with whom he disagrees during a constitutional proceeding to which he objects. In the defendant's mind, the January 6th riot was not the end, but just one battle in his continuing war. Indeed, the defendant's disturbing actions and vitriol toward Congresswoman Pelosi leave little to the imagination regarding the nature and seriousness of the danger he poses. Through his public participation in various rallies and hosting of events at his own home, the defendant has shown his connection to and influence over other individuals, including a connection to QAnon. No doubt his following has exponentially increased as a result of his brazen and flagrant conduct at the U.S. Capitol on January 6, 2021—conduct that appears designed to attract attention and exert influence. Accordingly, the defendant has shown both the capacity and the willingness to illegally possess dangerous weapons and halt legitimate government functions by various means.

Notably, the defendant is different from the defendants in *United States v. Munchel*, where the D.C. Circuit remanded the case for the District Court to reconsider its order of detention, and the government ultimately withdrew its detention request.

Unlike the *Munchel* defendants, the defendant in this case has exhibited nothing but brazenness and defiance in his actions related to January 6, 2021. This defendant aggressively confronted law enforcement officers inside and outside the Capitol, displaying his stun gun in the process. Munchel did not. This defendant concealed or destroyed important evidence, including his clothing, and the iPhone and the stun gun he brought to the Capitol. Munchel, by contrast, preserved and provided his iPhone to the FBI. Further, this defendant showed off his stun gun to a crowd, posed for photographers while occupying the office of the Speaker of the House, stole a piece of her official correspondence, left a disturbing and menacing handwritten note in her office, and repeated that message on video to the media as well as on a bullhorn to a crowd outside the Capitol. Munchel did none of those things. While Munchel has a history of marijuana possession, this defendant has a history of causing public disturbances by toting multiple firearms at demonstrations related to a fictitious, politicized conspiracy theory. He has made clear via social media and statements captured on video both before and after his criminal conduct at the Capitol that January 6th is simply one battle in a continuing war he intends to wage until his will is imposed on others. In sum, the matter at hand is easily distinguished from *Munchel*.

Relevant to the defendant, the Chief Judge of this District has noted the significance of defendants who "promoted or celebrated efforts to disrupt the certification of the electoral vote court during the riot, thereby encouraging others to engage in such conduct," noting that such behavior "measure[s] the extent of a defendant's disregard for the institutions of government and

17

the rule of law." *United States v. Chrestman,* No. 21-MJ-218 (BAH), 2021 WL 765662, at *8 (D.D.C. Feb. 26, 2021).  The defendant's actions and statements could not be more clear: He has no regard for the rule of law and he will flagrantly violate it to further his interests and goals.

### CONCLUSION

The defendant poses an ongoing and specific threat of prospective danger.  Consequently, he must be detained pending trial.

WHEREFORE, the United States respectfully requests that the Court deny the defendant's Modification of Bail to Place Defendant on Conditional Release Pending Trial.

    Respectfully submitted,

    CHANNING D. PHILLIPS
    Acting United States Attorney
    D.C. Bar No. 415793

By: *[signature]*
MARY L. DOHRMANN
Assistant United States Attorney
N.Y. Bar Number 5443874
555 Fourth Street, N.W.
Washington, D.C. 20530
(202) 252-7035
Mary.Dohrmann@usdoj.gov