## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

**UNITED STATES OF AMERICA,**

**v.**

**RICHARD BARNETT,**

          ***Defendant***.

**Case No. 21-cr-0038 (CRC)**

## DEFENDANT RICHARD BARNETT'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR MODIFICATION OF BAIL

### I.  INTRODUCTION

The government's opposition falls far short of showing clear and convincing evidence to support the "dangerousness" component under the meaning of the Bail Reform Act.  The government is also unable to prove that Richard Barnett (hereafter referred to as "Richard" or "Mr. Barnett") is a flight risk by a preponderance of the evidence.  Instead, the government goes to great lengths to distort the truth and misrepresent various facts, in what can only be reasonably concluded as a deliberate effort to compensate for its inability to demonstrate that Richard should be detained pretrial.

Indeed, in the opening sentence of its Opposition Memorandum, that government sets the tone of its distorted recitation of the facts "'Nancy, Bigo was here, you bitch.'  Those are the words of the defendant (using his preferred nickname) in his message to Congresswoman and Speaker of the House Nancy Pelosi on January 6, 2021, when he invaded and occupied her office"[1]  That is false.

---

[1] *See* ECF. Doc. No.27, Government's Memorandum in Opposition, at p. 1.

The government is clearly referring to the written note Richard is alleged to have penned while still in the Speaker's office, and such photo was clearly made a part of the government's exhibits to its opposition.[2]



---

[2] *See* ECF. Doc. No.27, Government Exhibit 7 (Crime Scene Photograph from "Bigo").

This written note, however, says, "Hey Nancy Bigo was here biatd." It does *not* say "you" or "bitch"[3] or have any commas; and the word "Hey" is intentionally omitted. The government's misrepresentation of Exhibit 7 is its latest deliberate attempt to mislead this Court by casting Mr. Barnett in the worst possible light in order to ensure that pretrial release is not granted in this case.

A second example is found in the Government's very same opening paragraph, where the government asserts that Richard ". . . returned to his home in Arkansas, where he hid or destroyed evidence."[4] Richard directly addresses these conclusory allegations on pages 10, 12, 36, and 43 of his Bail Modification Motion, and by doing so demonstrates the fact that these allegations are without merit, unsupported, and should be given zero weight in determining Richard's pretrial fate.

The government does not seriously contend that Barnett poses a "risk of flight." Nor has the government demonstrated that no "reasonable condition, or combination of conditions exist that would ensure Richard's return to court or the safety of all members of the community." As such, Richard now asks this Court to look past and ultimately disregard the government's distorted representations, which do not rise to the level of showing "dangerousness" and grant Richard pretrial release as required by law and recent court decisions.

---

[3] Instead of writing the accusatory "You bitch" as the government falsely states, it only says "biatd" and without the word "you". On information and belief, the "d" was meant to be two letters, "c" and "h" with the "c" connected to an "h" to spell the word "biatch" which is a slang and less offensive word for "bitch". *See* https://idioms.thefreedictionary.com/biatch (defining "biatch" as "slang… used as a term of endearment or disparagement for another person" last visited on April 23, 2021).
[4] *See* ECF. Doc. No.27, Government's Memorandum in Opposition, at p. 1.

## II.  LAW FOR PRETRIAL RELEASE

In the recent case of the *United States v. Klein*, U.S. District Court Judge John D. Bates, granted pretrial release to the Defendant, who was also charged with crimes related to the events of January 6, 2021.[5]  The *Klein* Court laid out the legal standard for pretrial release as follows:

> To assess a defendant's dangerousness, the court must "take into account the available information" concerning four statutory factors: (1) "the nature and circumstances of the offense charged," (2) "the weight of the evidence against the person," (3) "the history and characteristics of the person," and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g)(1)–(4). As the D.C. Circuit recently stated in United States v. Munchel, "[t]o justify detention on the basis of dangerousness, the government must prove by 'clear and convincing evidence' that 'no condition or combination of conditions will reasonably assure the safety of any other person and the community.' " 2021 WL 1149196, at *4 (D.C. Cir. Mar. 26, 2021) (quoting 18 U.S.C. § 3142(f)). That requires the government to establish that the defendant poses a continued "articulable threat to an individual or the community" that cannot be sufficiently mitigated by release conditions. Id. (quoting Salerno, 481 U.S. at 751); see also id. ("[A] defendant's detention based on dangerousness accords with due process only insofar as the district court determines that the defendant's history, characteristics, and alleged criminal conduct make clear that he or she poses a concrete, prospective threat to public safety."). Furthermore, "[d]etention cannot be based on a finding that defendant is unlikely to comply with conditions of release absent the requisite finding of dangerousness ... [as] otherwise the scope of detention would extend beyond the limits set by Congress." Id. at *7; see also Salerno, 481 U.S. at 746 ("[P]retrial detention under the Bail Reform Act is regulatory, not penal.").[6]

---

[5] *See United States v Frederico Guillermo Klein,* 2021 WL 1377128 (*citing United States v. Chrestman,* 2021 WL 765662 (D.D.C February 26, 2021)), attached hereto as **Exhibit J.**
[6] *Id.*

As will be demonstrated, the Government has not met its burden of showing that Barnett meets these four Section 3142(g) statutory factors for detention.

### III.   ARGUMENT

**POINT ONE:
THE NATURE AND CIRCUMSTANCES OF THE
DEFENDANT, UNDER 18 U.S.C. 3142(g)(1).**

In analyzing this first of the four Section 3142(g) statutory factors, "The Nature and Circumstances of the Defendant" the *Klein* court applied the following six subfactor analysis:

> These considerations include whether a defendant: (1) "has been charged with felony or misdemeanor offenses;" (2) "engaged in prior planning before arriving at the Capitol;" (3) carried or used a dangerous weapon during the riot; (4) "coordinat[ed] with other participants before, during, or after the riot;" or (5) "assumed either a formal or a de facto leadership role in the assault by encouraging other rioters' misconduct;" and (6) the nature of "the defendant's words and movements during the riot," including whether he "damaged federal property," "threatened or confronted federal officials or law enforcement, or otherwise promoted or celebrated efforts to disrupt the certification of the electoral vote count during the riot."

*United States v Frederico Guillermo Klein,* 2021 WL 1377128 at p. 6.

In light of the *Klein* decision, each of these six subfactors will be addressed individually and under its own subsection.  Factors four and five are interrelated, so these two factors will be addressed in the same subsection.

### A. Factor One*: Has Richard Been Charged with Felony or Misdemeanor Offenses*.

Richard Barnett has been charged with two felony offenses; as such, it is that factor number one arguably weighs against him in favor of detention. However, as for the felony offense of carrying a stun gun as a dangerous weapon, Barnett submits that the facts show that it was not "dangerous". *See* Section III(c), *infra.*

As for the second felony offense that Barnett is charged with, one count of violating 18 U.S.C. 1512 (c)(2), that section does not apply to Barnett's conduct.   Section 1512 is entitled "Tampering with a witness, victim, or an informant" which suggests that its subsections deal with judicial-type proceedings where a "witness, victim, or informant" is expected to testify.

Under Section 1512, the full subsection (c) states as follows:

(c) Whoever corruptly—

    (1)   alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding; or

    (2)   otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so, shall be fined under this title or imprisoned not more than 20 years, or both.

Mr. Barnett did not destroy documents used in the proceeding.  His presence in Speaker Pelosi's office for six minutes and later in the Rotunda where he was directed to go **after** the vote counting was temporarily suspended does not constitute "corruptly…obstruct[ing], influenc[ing], or imped[ing]" the "official proceeding".  As such, the government cannot argue that Barnett's and other the protestors' lawful presence outside the Capitol was intended to "influence" the vote counting inside.  Senator Schumer was not deemed to have been ". . . corruptly . . . influencing" an official proceeding or protesting outside of the U.S. Supreme Court building in March 2020 before an angry pro-abortion crowd, where he threatened Associate Justices Gorsuch and Kavanaugh while oral argument was taking place during an abortion case. [7]   FBI attorney Kevin Clinesmith, received mere probation, after not being charged with violating this provision for altering a CIA email that was subsequently used to improperly obtain a FISA warrant.[8]

---

[7] *See* https://nlpc.org/2020/03/06/ethics-bar-complaints-filed-against-sen-schumer-on-supreme-court-threats/.
[8] *See also* https://nlpc.org/2021/01/29/miscarriage-of-justice-as-clinesmith-gets-slap-on-the-wrist/.

Based on these above-mentioned examples, and the charges in this matter, as defense counsel for Mr. Barnett, we are duty bound to request discovery from the government to disclose the charging documents against "Code Pink" and other protestors who disrupted confirmation hearings ("official proceedings") for Justice Kavanaugh. *See* Doug Stanglin, Caroline Simon, *Rise up, women!: Angry crowds flood Capitol Hill to protest Brett Kavanaugh nomination*, USA Today, available at https://www.usatoday.com/story/news/2018/09/28/brett-kavanaugh-hearing-protesters-christine-blasey-ford/1453524002/ (last visited April 23, 2021).

These individuals also were alleged to have blocked Congressional hallways and offices. *Id.* Discovery requests must be made to determine if those involved in "Code Pink" were charged with violating 18 U.S.C. 1512(c)(2) and their respective dispositions.

At best, this is the only factor which weighs against Richard in favor of pretrial detention, but is outweighed by all the other factors.

**B.** **Factor Two*: Did Richard Engaged in Prior Planning Before Arriving at the Capitol*.**

Richard is not a member of any of the groups alleged to have organized and participated in violence at the Capitol on January 6, 2021. There is no evidence that he knew of a plan to attack the Capitol, coordinated any attack on the Capitol, or carried a map of the Capitol. Despite this reality, the government continues to unjustly associate the premeditated acts of others with Richard. Since the inception of this case, and yet again in the Opposition Memorandum, the government has repeatedly suggested that the act of Richard traveling from Arkansas to Washington, D.C., to participate in a political rally is problematic. The government is wrong because United States Citizens are free to travel to the District of Columbia at any point in time, especially when they are traveling to protest and petition his government for redress of grievances as protected by the First Amendment.

The government has repeatedly suggested that there is also something inherently dangerous about being a lawful and responsible gun owner from Arkansas. Again, the government is wrong, because Arkansas law and the Second Amendment of the United States Constitution permit sixty-year-old men with no criminal records to own and carry guns in Arkansas. Then the government has suggested that purchasing a walking-stick-stun-gun in Arkansas and then traveling to Washington, D.C. with a said device is evidence of dangerousness. Again, the government is wrong, because it is legal to possess walking sticks and stun guns in Washington, D.C.

More importantly, there is no actual evidence of Richard planning anything nefarious before heading to the Capitol. There is no manifesto, no plans, no maps, no level of organized communication suggesting participation in any violent plot. Stated otherwise, there is no nexus between Richard's perfectly legal Arkansas life to any credible evidence of planning an attack on the Capitol. As such, factor number two weighs in favor of release.

**C. Factor Three*: Did Richard Carry or Use a Dangerous Weapon During the Incident*.**

Richard has been accused of carrying a dangerous weapon during the incident, to wit: a stun gun/walking stick. The government, in its Opposition Memorandum cites Exhibit 1, a January 5, 2021, video clip of Richard demonstrating a shock test to a group of men in a bar in support of its evidence that Richard had a dangerous weapon on January 6, 2021. In the video, the walking stick is extended and Richard activates the stun gun at approximately 1:29 in the video. Activation of this stun gun creates a bright red light emanating from the device. Richard then triggers the stun gun to the amusement of the group, and the video ends. In furtherance of its argument, the government cites Exhibits 8, 9, and 10 as evidence supporting the conclusion that the walking-stick-stun-gun is a dangerous weapon.

However, as Richard argues in his Motion for Bail Modification, the batteries were removed from the device before heading to the January 6th protest, a day after the government's exhibit where Richard demonstrated the ability of the stun gun portion of the device. Upon removing the batteries, this multi-use device, in turn, is converted to a single-use device, which is nothing more than a collapsible walking stick. We respectfully submit to this Court that Richard's behavior on January 6th is consistent with a responsible gun owner with no criminal history.[9] In further support of Richard's claim of being a responsible gun owner, the Government's Exhibits 8, 9, and 10 are vital. Each of these government exhibits corroborate this argument because each show the device up-close in two still shots and one live video. At no point *on January 6th* is there a single instance where the stun gun is visibly armed (demonstrated by the red light) like it was in the *January 5th* video. This is because on January 6th, the only relevant date in question, the device was nothing more than a walking stick.

Moreover, and unlike the cases where people used flag poles and axe handles as weapons against law enforcement, Richard is never shown using the device to hit, poke, stab, or stun anyone; rather, he is simply covering it with his hand so it is not dislodged from his person, and to protect himself from being further injured.

Specifically, the rubber cap which protects the metal prong of the stun gun was lost when Richard fell to the ground after being pushed into the Capitol, which resulted in him being cut and bleeding on an envelope from Speaker Pelosi's office.[10] More importantly, when observed in the full unedited context, at 42:12 in the video, Mr. Barnett adjusts his sweater to cover, *not* uncover

---

[9] *See* ECF Doc. No 26. Defendant's Motion for Bail Modification at page 29
[10] *See* ECF Doc. No. 27, Government's Opposition Motion at Exhibit 10, (27 seconds)(showing Barnett's lacerated left finger).

the stun gun because he does not want to be cut again by the metal prongs.[11]  The metal prongs of the stun gun do not stun Barnett or anyone else at any time.

The notion, therefore, that exhibits 8, 9, and 10 are indicia of violence is utterly ridiculous, and only further serves to corroborate the government's futile attempt to create conditions of dangerousness that do not exist.  Instead, the evidence shows that Richard was clearly not carrying a functioning stun gun on January 6th, which in turn means that he was not carrying a dangerous weapon inside the Capitol.  As such, factor number 3 weighs in favor of release.

**D.  Factors Four and Five*: Whether Richard Coordinated with Other participants; Or, if Richard Assumed a Formal or De Facto Leadership.***

Despite the government's insinuation that Richard is somehow, single handedly, responsible for a crowd becoming violent, there is simply no evidence that Richard coordinated with other participants before, during, or after the incident; additionally, the record is devoid a single piece of evidence that Richard played any leadership role or capacity, whatsoever. Therefore, factor numbers 4 and 5 weighs in favor of release.

**E.  Factor Six*: Whether the Nature of Richard's Words and Movements Promoted Efforts to Disrupt the Electoral Vote.***

Once again, the government has made a grand ordeal about Richard's words and movements before the incident.  *See* Section I, Introduction, *infra*.  Specifically, the government cites Exhibit 2 as evidence of Richard being ready for a fight, where he stated, "We the People. We own this motherfucker.  This is our country.  This is our District.  You wanna fuck with us. Bring it on!".  This is a politically protected statement that Richard made ***prior*** *to* his traveling to see President Trump's speech, in anticipation of said speech.  Richard does do not even cross the

---

[11] *See* Video available at 20210106-RIOTOUS_ACTS-US_CAPITOL_COMPLEX-2.mp4.

threshold of the Capitol until hours later at approximately 2:43 PM.[12]  Clearly, Richard was talking about the rally, not the future incident at the Capitol which he did not yet know, at the time, was going to be the event it shaped out to be.   Richard submits herein **Exhibit K** as evidence contradicting the government's claim that Richard was ready for war because the video, also taken some time before the Capitol incident, clearly shows Richard's peaceful demeanor in the time leading up to the protest.[13]

The government has made another grand ordeal about Richard's words and movements after the incident, specifically, remarks made to a reporter and the crowd after he left the Capitol Building.  While unfortunate in content, these remarks are irrelevant as the incident had already subsided. At the time, Richard proffered an envelope from the Speaker's office and explained that he removed said envelope because he bled on it, and did not want to leave his blood in the Speaker's office.  On the other hand, Richard voluntarily returned that same envelope unopened to the FBI upon surrendering himself.  Therefore, it cannot be said that he intentionally damaged federal property.

Shortly after being photographed at Speaker Pelosi's desk, Capitol police tell protesters to clear out of the Speaker's office.  Barnett quickly exits, without incident, leaves his flag behind, and walks into what appears to be a rotunda.  The Capitol Police initially prevent anyone from leaving the area, and things get intense.  The government cites a verbal exchange between Barnett and a Capitol Police officer, where Barnett while demanding his flag from the Speaker's office appears to say ". . . it's going to get really bad, I'm telling you . . . hey, we're fixing to call them in brother."  It is worthy to note that if an act of violence were ever going to happen, this was the

---

[12] *See* Government's Opposition at FN. 3.
[13] *See* **Exhibit K** attached hereto (encompassing a video of Richard Barnett peacefully interacting with protesters and children).

moment… Barnett, however, is NOT violent.  His statement is tantamount to nothing more than braggadocio directed at retrieving his flag, not disputing the electoral process.  Moments later, a person who has no relationship to Barnett whatsoever is maced by the police and a shoving match between the Capitol Police and the crowd ensues.  Barnett, clearly uninvolved, video records the incident from his cell phone.  Because Barnett was argumentative but not violent, factor number six neither weighs in favor of detention or release.

 In the case of Richard Barnett, in applying the *Klein* analysis, four of the six factors weigh in favor of release.  Only one factor arguably weighs in favor of detention.  And one factor is neutral.

As such, and under the analysis implemented by this Court in *Klein,* the nature and circumstances of the offense weigh in favor of release. *United States v Klein,* 2021 WL 1377128. He therefore clearly satisfies the first of the four Section 3142(g) factors.

## POINT TWO:
## WEIGHT OF THE EVIDENCE, UNDER 18 U.S.C.3142(g)(2)

The government's contention that the overwhelming weight of the evidence against Mr. Barnett favors detention is an exaggerated conclusion, nothing more.  The government has repeatedly comingled the actions of others with those of Richard since the beginning of this case, because the government knows that nature and circumstances of the offense do not warrant pretrial detention.  If there is overwhelming evidence of anything, it is that Richard Barnett did indeed enter the Capitol on January 6, 2021.

Richard, however, maintains that his entry was not only non-violent, but also non-voluntary.  In our instant application, on page 9, paragraph 14, we explain how the Capitol doors opened, throngs of people pushed, resulting in Barnett being swept inside and unable to turn against the crowd.  The Defense's investigation—which is still ongoing— has revealed additional

information that corroborates the aforementioned claims.  Namely, a video recording of Richard being pushed into the Capitol, where the listener can hear Richard's very own words, during the moments before he crossed the threshold of the Capitol: "They're pushing.  We have no choice. We're going in.  They're pushing.  We have no choice.  We have no choice.  We have no choice. We have to go in.  Go in.  Go in."[14]

Barnett's claim of not being able to go against the crowd is corroborated by the same footage, which shows a throng of tightly packed people pushing past open Capitol doors. Importantly, Barnett actually attempts to turn around at the end of the video, only to be pushed back into the Capitol.  This fact is corroborated in the government's Opposition Motion at FN. 3, which states:

> . . .The government continues to investigate the exact manner of the defendant's entry into the Capitol, but has recently identified surveillance video appearing to show him entering through the Rotunda door at approximately 2:43 p.m. The video shows the defendant appearing to stumble upon entry. . .

All of this speaks toward an involuntary entry into the Capitol.  None of this is violent. Involuntary entry is an absolute defense against violent entry.  Because of this, the weight of evidence clearly favors pretrial release.

### POINT THREE:
### HISTORY AND CHARACTERISTICS OF THE DEFENDANT, UNDER 18 U.S.C.3142(g)(3)

Richard is a sixty-year-old United States Citizen with no criminal record. Mr. Barnett has been in a committed relationship with his life partner Tammy Newburn for over twenty years. Richard lives with Tammy and daughter Ashlee, whom both depend on him for financial support. Richard is a gainfully employed retired fire fighter who is beloved in his community. He spent the

---

[14] *See* attached hereto **Exhibit L**, Video of Richard Barnett being pushed into the Capitol against his will.

first part of his life in Memphis Tennessee and has been living in Western Arkansas for the past twenty-five-years.

Richard's ties to his community are strong. He has personal relationships with members of the local business community, law enforcement, friends, and family. He has no criminal history, no warrant history, and is not on probation or parole. He has never forged or altered his identification. He agreed to surrender his passport to probation after being granted pretrial release by the Western District of Arkansas. Nothing about his past or current history supports the conclusion that he is dangerous to anyone, a risk of flight, and/or incapable of complying with court-imposed restrictions designed to assure his return to court and protect the community from future harm.

In applying 18 U.S.C. Section 3142(g)(3) to the above-mentioned facts to Richard's life, the only reasonably conclusion is that such factors weigh in favor of pretrial release. In order to overcome this reality, the government is asking this Court to: (1) disregard Richard Barnett's lifetime of law-abiding behavior and corresponding lack of criminal history as nothing, and (2) to equivocate uncharged unsubstantiated allegations to an actual criminal history.[15]

The government's request contradicts the legislative intent and overall meaning of the Bail Reform Act, and contravenes relevant caselaw as well. The Government's ask comes from a place of desperation because the government is very much aware that Richard Barnett's history and Characteristics clearly favor pretrial release.

---

[15] *See* Government's Opposition Motion at FN. 7 (*stating* "The defendant's lack of actual criminal convictions highlights the common sense underlying the § 3142(g) factors, which make formal criminal history merely a component of one of four factors to be weighed when considering pre-trial detention.").

**POINT FOUR:**
**NATURE AND SERIOUSNESS OF THE DANGER TO**
**ANY PERSON IN THE COMMUNITY, UNDER 18 U.S.C.3142(g)(4)**

Similar to *Klein*, Richard's behavior on January 6, 2021 appears to be an aberration in his life, which in turn ". . . makes his dangerousness challenging to assess.  So, too, does his lack of planning."  *Id.*  Fortuitously, the D.C. Circuit recently gave guidance regarding how to properly assess those were charged with crimes related to the events that took place at the Capitol on January 6, 2021.  Specifically, the D.C. Circuit creates two categories of offenders, one whose conduct rises to dangerousness under the meaning of the Bail Reform Act and another whose conduct does not.  The first category is comprised of those who "actually assaulted police officers and broke through windows, doors, and barricades, and those who aided, conspired with, planned, or coordinated such actions. . . ". *Id.*  The second category is composed of ". . . those who cheered on the violence or entered the capitol after others cleared the way." *Id.*  (*quoting United States v Munchel*, No. 1:21-cr-0018-1).

Barnett's actions clearly place him in the former category, and mandate his release.  Unlike Richard Barnett, Klein took physical and forceful action against law enforcement when he used a riot shield to wedge open doors to the Capitol and then subsequentially shove officers with the shield in order to break a police line.  Similar to Barnett, Klein was not dressed in tactical gear, there was no evidence of a premeditated plan of attack, no evidence of participation in a coordinated attack, no evidence of a leadership role during the attack.  Klein was accused of shouting "We need fresh people; we need fresh people."  Barnett is accused of saying "Ya'll better get my flag, I'm gonna bring 'em in, etc.. ."[16]  The Court described Klein's statements and actions as troubling, but not indicative of leadership, or rising to the level of coordination demonstrated in

---

[16] Mr. Barnett's flag has not been returned to him.  Counsel will be requesting the Government to return his property.

the cases of *United States v. Pezzola*, 2021 WL 1026125 (D.D.C Marc 16, 2021) and *United States v. Chrestman,* 2021 WL 765662 (D.D.C February 26, 2021).   Like *Klein*, Barnett's statements could be viewed as troubling, but are similarly not indicative of leadership or coordination.

Richard Barnett's conduct was objectively less severe than the defendant's in *Munchel* and in *Klein.*  And the defendants in both *Munchel,* and *Klein* were both released.   As such, Richard Barnett should be released as well.   Further corroborating the justification for Barnett's release is this the Government's concession in the *Norwood* case. *See USA v. Norwood*, Case No. 21-CR-233 (EGS) (attached hereto as **Exhibit M**). Defendant who stole body armor and vest from the United States Capitol Police, entered and remained in Speaker Pelosi's office, and was accused by the government of engaging in evasive conduct after leaving Washington, D.C., and yet eligible for pretrial detention). The Government conceded in *Norwood* that "Notwithstanding defendant's eligibility for pretrial detention, in light of recent guidance from this Court and the D.C. Circuit Court of Appeals, the government believes that conditions can be imposed that will reasonably assure the appearance of the defendant as required and the safety of any other person and the community." *Id.*  And Judge Emmet Sullivan promptly granted Defendant's release and set bail conditions on April 20, 2021.[17]

As argued above, Richard Barnett has no criminal history whatsoever, and a strong personal history in terms of finding favorability under the Bail Reform Act.   In order to overcome these objective truths, the government has yet again, conjured up conspiracy and controversy to create conditions of dangerousness where none exist. Specifically, in its Opposition Memorandum, the government cites Exhibits 13, 14, 15, and 16, as evidence of future dangerousness.   These

---

[17]  *See* attached hereto **Exhibit N**, April 20, 2021: ORDER SETTING CONDITIONS OF RELEASE in *United States v Norwood*, Case No. 21-CR-233 (EGS).

claims, like many others before it, are meritless, ridiculous, and should be given no weight whatsoever.

Specifically, government Exhibit 13, when viewed in its totality shows Richard peacefully interacting with police and explaining his job as security at a September 20, 2020, march in Fayetteville, Arkansas. Everything about this interaction is legal, respectful, and peaceful. Exhibit 14, shows Richard posing at a photoshoot in his own backyard, with props from a photoshoot that he was asked to participate in. Again peaceful, legal, and friendly. Exhibit 15, shows Richard at that same photoshoot surrounded by family in friends with a sign that says "DEAD PEDOPHILES DONT REOFFEND." This is a perfectly legal exercise of all participants' First Amendment rights to free speech and assembly that is possibly offensive to pedophiles and their supporters, but no one else.

None of these exhibits provide evidence of a specific articulated threat to the community, or a risk of danger to any specific person. All these exhibits do is further demonstrate the weakness of the government's case, along with its disdain for life in Arkansas. As such, government Exhibits 13, 14, 15, and 16 do not amount to evidence of dangerousness under the meaning of the Bail Reform Act.

## IV.   CONCLUSION

Richard Barnett respectfully asks this Court to grant him pretrial release under the above cited line of cases in *Munchel, Klein,* and *Norwood,* and other recent precedent out of the D.C. Circuit Court and D.C. District Courts, regarding the release of persons accused of crimes related to the January 6, 2021, incident at the United States Capitol.

The government's argument in favor of pretrial detention is unsupported by facts demonstrative of risk of flight or danger to the community. The government has also utterly failed

in demonstrating a specific articulated future threat of dangerousness, but has instead advanced speculation and conjecture in its absence. Richard Barnett's personal history, community ties, and lack of criminal history are more than sufficient proof to rebut any presumption of detention. Because of this, Richard Barnett should be released from the dangerous conditions of punishment he is experiencing in the DC Central Detention Facility.[18]

WHEREFORE, for the foregoing reasons, any others which may appear at a full hearing on this matter, and any others this Court deems just and proper, defendant, Richard Barnett, through counsel, respectfully requests that he be released on personal recognizance. If that request is denied, defendant requests as an alternative, that he be released on Third Party Custody and placed under the Supervision Pretrial Services under the reasonable conditions of electronic monitoring, work release, out of state travel restrictions and curfew.

---

[18] *See* Politico's article on the horrific conditions of confinement at the DC Detention Facility where Richard Barnett is being detained, available at, *https*://www.politico.com/amp/news/2021/04/06/capitol-riot-defendant-beating-guards-479413, (last visited April 16, 2021).

Dated:  April 23, 2021                          Respectfully Submitted,

                                                /s/ **Joseph D. McBride, Esq.**
                                                _____
                                                Joseph D. McBride, Esq.
                                                Admission Pending
                                                THE MCBRIDE LAW FIRM, PLLC
                                                Attorneys for the Defendant
                                                99 Park Avenue, 25th Floor
                                                New York, NY 10016
                                                *Phone:* (917) 757-9537
                                                *Fax:*     (646) 219-2012
                                                *Email:*  jmcbride@mcbridelawnyc.com


                                                Respectfully Submitted,

                                                /s/ **Steven A. Metcalf II, Esq.**
                                                _____
                                                STEVEN A. METCALF II, ESQ.
                                                Seeking Admission
                                                **Metcalf & Metcalf, P.C.**
                                                *Attorneys for the Defendant*
                                                99 Park Avenue, 25th Floor
                                                New York, NY 10016
                                                *Phone* 646.253.0514
                                                *Fax* 646.219.2012
                                                metcalflawnyc@gmail.com