UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Case No. 21-CR-233 (EGS) |
| | : | |
| WILLIAM ROBERT NORWOOD III, | : | |
| | : | |
| Defendant. | : | |
| | : | |

GOVERNMENT'S RESPONSE TO DEFENDANT'S
MOTION FOR PRETRIAL RELEASE

The United States of America, by and through the United States Attorney for the District of Columbia, respectfully submits this response to defendant's Motion for Bond. ECF No. 13 (hereinafter "Def. Motion"). For the reasons set forth below, the United States agrees that defendant should be released pending trial, with conditions.

FACTS AND PROCEDURAL POSTURE

Defendant was charged by criminal complaint on February 25, 2021, with Obstruction of an Official Proceeding, in violation of 18 U.S.C. § 1512(c)(2) and 2; Theft of Government Property, specifically, a United States Capitol Police ("USCP") body armor vest and helmet, in violation of 18 U.S.C. § 641; Knowingly Entering and Remaining in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(1) and (2); and Violent Entry and Disorderly Conduct on Capitol Grounds, in violation of 40 U.S.C. § 5104(e)(2)(D) and (G). *See* ECF No. 1 (hereinafter "Complaint").

Defendant was arrested on February 25, 2021, and had his initial appearance in the District of South Carolina on February 26, 2021. *See* ECF No. 5, *United States v. William Robert Norwood III*, 21-cr-58-JDA (D.S.C. Feb. 26, 2021). As reflected in a minute entry on the

District of South Carolina's docket, at the time of defendant's initial appearance, the "District of Columbia consent[ed] to an unsecured bond, but the District of South Carolina request[ed] detention." *Id.*

A detention hearing was held in the District of South Carolina on March 2, 2021. During that hearing, defendant testified under oath regarding his actions on January 6, 2021. *See* Transcript from March 2, 2021 Detention Hearing, Exhibit 1, at 74-128. After hearing testimony and argument, the Magistrate Judge in the District of South Carolina ordered defendant detained based on danger to the community. *See* ECF No. 15, *United States v. William Robert Norwood III*, 21-cr-58-JDA (D.S.C. Mar. 2, 2021) (hereinafter "Detention Order").

On March 19, 2021, a federal grand jury returned a seven-count indictment charging defendant with the aforementioned offenses, as well as Entering and Remaining in Certain Rooms in the Capitol Building -- namely, an office belonging to Speaker Nancy Pelosi -- in violation of 40 U.S.C. § 5104(e)(2)(C). *See* ECF No. 8.

On April 14, 2021, defendant filed the instant motion for pretrial bond. *See* ECF No. 13.

## ARGUMENT

**1.      The Government's Basis for Detention**

The District of South Carolina conducted a detention hearing pursuant to 18 U.S.C. § 3142(f)(1). *See* Detention Order at 1. While the government concedes that it likely was not entitled to a detention hearing based on 18 U.S.C. § 3142(f)(1), the government was likely eligible for a detention hearing under 18 U.S.C. § 3142(f)(2) based on the serious risk that the defendant would flee and the serious risk that the defendant would obstruct or attempt to obstruct justice.

Immediately preceding his arrest on February 25, 2021, and upon suspicion that the FBI

2

may have been surveilling him, defendant engaged in what the Magistrate Judge in the District of South Carolina described as "evasive" conduct. *See* Transcript from March 2, 2021 Detention Hearing, Exhibit 1, at 48. Specifically, instead of parking in his driveway, defendant parked his vehicle outside a business almost a quarter mile away from his residence. *Id.* at 19, 48. Upon entering his home, defendant quickly turned off all the lights and began peering out the window. *Id.* at 20. Eventually, defendant snuck out of his residence and was seen speeding away in a different vehicle. *Id.* During this time, defendant managed to successfully evade surveillance units by making a sharp turn into a gated storage facility. *Id.* When defendant returned to his residence later that evening, he cut off his headlights almost a quarter mile before turning into his driveway. *Id.* at 21.

Defendant also lied to FBI agents over the course of this investigation. During a non-custodial voluntary interview on January 22, 2021, defendant told FBI agents that he left the stolen USCP body armor vest and helmet inside a hotel room before leaving Washington, D.C. However, upon searching defendant's box trailer on February 26, 2021, the FBI recovered the stolen USCP body armor vest and helmet. *Id.* at 24-26, 105.

Notwithstanding defendant's eligibility for pretrial detention, in light of recent guidance from this Court and the D.C. Circuit Court of Appeals, the government believes that conditions can be imposed that will reasonably assure the appearance of the defendant as required and the safety of any other person and the community. Therefore, having conferred with defense counsel, the government would propose the following standard conditions and special conditions of release: (1) electronic monitoring; (2) home detention with a curfew allowing defendant to work; (3) prohibition against leaving the District of South Carolina without approval; (4) random drug testing; (5) removal of all firearms from defendant's residence; and (6) avoid all contact,

3

directly or indirectly, with any person who is or may become a victim or potential witness in the investigation or the prosecution, including but not limited to: co-conspirators and defendant's estranged wife.

**2.     The Government's Analysis of the Bail Reform Act Factors**

There are four factors that a court must analyze when evaluating whether to detain a defendant pending trial: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the defendant's history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release.  18 U.S.C. § 3142(g)(1)-(4).

**A.     The Nature and Circumstances of the Offense**

The nature and circumstances of the offense weigh in favor of pretrial detention.  Aside from participating in the violent breach of the U.S. Capitol in an apparent attempt to subvert a democratic election and prevent the peaceful transition of power, defendant also led a pack of rioters through the inner sanctum of Speaker Pelosi's office space.  In fact, defendant kept a souvenir from Speaker Pelosi's office -- a paper coaster with the words "United States Congress" printed on it -- which law enforcement ultimately recovered from defendant's vehicle.  *See* Transcript from March 2, 2021 Detention Hearing, Exhibit 1, at 22-23.

The day after the riot, defendant boasted to family members about assaulting law enforcement officers and stealing USCP equipment:

*"It worked . . . I got away with things that others were shot or arrested for."*;

*"The cop shot a female Trump supporter.  Then allowed 'ANITFA Trump supporters' to assault him.  I was one of them.  I was there.  I took his shit."*;

*"I fought 4 cops, they did nothing.  When I put my red hat on, they pepper balled me."*;

4

*"I got a nice helmet and body armor off a cop for God's sake and I disarmed him. Tell me how that works."*; and

*"I'm anti shitty cop. The cops who acted shitty, got exactly what they deserved. The ones who were cool, got help."*

Complaint at 2-3. To date, the government has not identified evidence of defendant engaged in any violent or assaultive conduct either inside or outside the U.S. Capitol building. Nevertheless, defendant's arrogance following the January 6 riot -- including lying to FBI agents about leaving the stolen USCP body armor vest and helmet inside a hotel room -- underscores his utter lack of remorse for his actions.

Although the government does not currently believe that defendant was a leader in organizing the attack on the Capitol, the government does have evidence that defendant engaged in prior planning before arriving in Washington D.C. on January 6. In a post-arrest *Mirandized* interview on February 26, 2021, defendant admitted to packing a green tactical vest, bear mace, and a knife in the vehicle he drove to Washington, D.C.[1] Defendant was not seen wearing the green tactical vest inside the Capitol building, nor was he seen wielding a knife or spraying bear mace. Nevertheless, the fact that defendant packed these items in the first place suggests that he was "not just caught up in the frenzy of the crowd, but instead came to Washington, D.C. with the intention of causing mayhem and disrupting the democratic process." *United States v. Chrestman*, No. 21-mj-218 (ZMF), 2021 WL 765662, at *8 (D.D.C. Feb. 26, 2021).

Finally, unlike other individuals charged with unlawfully entering the U.S. Capitol on January 6, 2021, defendant is charged with two felonies -- obstruction of an official proceeding and theft of government property -- and is facing a potential twenty-year prison sentence. *See* 18

---

[1] The FBI ultimately recovered these items during the February 26, 2021 search of defendant's box trailer.

5

U.S.C. §§ 1512(c)(2) and 641.

### B. The Weight of the Evidence Against the Defendant

The weight of the evidence against the defendant is overwhelming, and this factor weighs in favor of pretrial detention. The government's evidence against defendant includes, among other things, surveillance footage of defendant entering one of Speaker Pelosi's offices, open source photographs of defendant wearing a stolen USCP body armor vest and helmet, and the stolen USCP vest and helmet recovered from defendant's box trailer. The government's evidence also includes Facebook messages sent by the defendant to family members boasting of his and others' assaultive conduct inside the U.S. Capitol building, as well as defendant's statements to law enforcement on January 22, 2021 and February 25, 2021, as well as his testimony during his March 2, 2021 detention hearing.

### C. The History and Characteristics of the Defendant

This factor weighs in favor of pretrial release. In evaluating the history and characteristics of the defendant, the Court considers the defendant's "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings." 18 U.S.C. § 3142(g)(3)(A). While defendant has admitted to using drugs recreationally, he has no significant criminal history, he has strong ties to the area in which he resides, and he was gainfully employed prior to his arrest in this case. And though defendant's lack of candor with law enforcement is troublesome, the government believes that this risk can be mitigated through close supervision of the defendant, to include electronic monitoring and home detention.

6

**D.     Risk of Danger to the Community**

The fourth factor, the nature and seriousness of the danger to any person or the community posed by a defendant's release, weighs in favor of defendant's release. Defendant's actions, though unlawful, do not warrant pretrial detention. As detailed above, aside from defendant's messages boasting about disarming a law enforcement officer, the government does not have any evidence that defendant engaged in any physically violent or assaultive conduct inside or outside of the U.S. Capitol building on January 6, 2021. *Cf. United States v. Munchel*, No. 21-3011, 2021 WL 1149196 (D.C. Cir. Mar. 26, 2021); *United States v. Sabol*, No. 21-cr-35 (EGS), 2021 WL 1405945 (D.D.C. Apr. 14, 2021). Moreover, the government's proposed special conditions of release tend to mitigate any risk of flight or obstruction of justice by requiring location monitoring and home detention, and by prohibiting interaction with any potential witnesses.

//

//

//

## **CONCLUSION**

The government, having conferred with defense counsel, respectfully submits that defendant should be released pending trial on the standard conditions, the following special conditions, and any additional conditions that the Court deems necessary to ensure defendant's appearance and the safety of the community:

1. Electronic monitoring;
2. Home detention with a curfew allowing the defendant to work;
3. Prohibition against leaving the District of South Carolina without Court approval;
4. Random Drug Testing;
5. Removal of all firearms from defendant's residence; and
6. Avoid all contact, directly or indirectly, with any person who is or may become a victim or potential witness in the investigation or the prosecution, including but not limited to: co-conspirators and defendant's estranged wife.

Respectfully submitted,

CHANNING D. PHILLIPS
Acting United States Attorney
D.C. Bar No. 415793

By: _/s/ Hava Mirell_

HAVA MIRELL
CA Bar No. 311098
Assistant United States Attorney
Detailee
U.S. Attorney's Office for the District of Columbia
555 4th Street, N.W.
Washington, D.C. 20530
(213) 894-0717
hava.mirell@usdoj.gov

8

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I caused a copy of this pleading to be served upon defense counsel via the Electronic Case Filing (ECF) system, on April 17, 2021.

/s/ Hava Mirell
_____
HAVA MIRELL
CA Bar No. 311098
Assistant United States Attorney
Detailee
U.S. Attorney's Office for the District of Columbia
555 4th Street, N.W.
Washington, D.C. 20530
(213) 894-0717
hava.mirell@usdoj.gov