UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | Case No. 21-CR-38 (CRC) |
| v. : | |
| : | |
| RICHARD BARNETT, : | |
| : | |
| Defendant. : | |

**GOVERNMENT'S OMNIBUS MOTION IN LIMINE**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby submits the following motion in limine to preclude three categories of evidence and arguments. The government moves to exclude the defense from introducing (1) evidence or argument related to any potential penalty, (2) evidence or argument intended to elicit jury nullification, and (3) defense evidence not produced in reciprocal discovery, and expert witnesses and affirmative defenses not identified pursuant to the Federal Rules of Criminal Procedure.

I. **Background**

On January 6, 2021, a joint session of the United States Congress convened at the United States Capitol at approximately 1:00 p.m. to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on November 3, 2020. Temporary and permanent barricades were in place around the exterior of the U.S. Capitol building, and U.S. Capitol Police were present and attempting to keep the crowd that had gathered outside away from the Capitol building and the proceedings underway inside.

Shortly after 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of the U.S. Capitol Police, as others in the crowd encouraged and assisted those acts. Shortly thereafter, at approximately 2:20 p.m.

members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Mike Pence, were instructed to—and did—evacuate the chambers. Accordingly, the joint session of the United States Congress was effectively suspended until shortly after 8:00 p.m. Vice President Pence remained in the United States Capitol from the time he was evacuated from the Senate Chamber until the sessions resumed.

The defendant made numerous statements on local news outlets and social media about his opposition to the election results and his plan to be in Washington, D.C. on January 6, 2021. He was among the crowd present on the restricted Capitol grounds. He approached the Capitol building from the West side. While approaching, he and others in the crowd followed and shouted at a group of Capitol Police Officers making their way toward the building. The officers attempted to set up fencing to keep the crowd from further approaching the building as members of the crowd attempted to push the fencing away.

At approximately 2:43 p.m., the defendant entered the U.S. Capitol with a crowd of rioters while carrying a U.S. flag and a ZAP Hike N Strike 950,000 Volt Stun Gun Walking Stick that he had purchased seven days earlier. The defendant had demonstrated the capabilities of the Stun Gun just the night before in his hotel lobby. Once inside the Capitol building, the defendant made his way to the office area of the Speaker of the House of Representatives Nancy Pelosi. While there, he took photographs with his feet propped up on furniture that were later circulated broadly to the public. He apparently also left menacing handwritten notes for the Speaker of the House.

The defendant was told to leave the Speaker's Office by a Capitol Police Officer. He then walked to the Rotunda, where, realizing that he had left his flag behind, he started yelling at officers to let him pass to get his flag back. The defendant said words to the effect of, "we are patriots, this is our building, I need my flag, you better get my flag . . . hey, I'm going to bring them in to

get my flag.  Y'all better get my flag, I going to bring 'em in . . . It's going to get really bad.  I'm a patriot, I want my flag.  Hey, we're fixin to call 'em in brother, get my flag . . . I want my fuckin flag.  It's in Nancy Pelosi's office."

After leaving the building, the defendant proudly displayed an envelope that he had taken from the Speaker's office to the crowd.  He told a news outlet, "I did not steal it. I bled on it because they were macing me and I couldn't fucking see so I figured I am in her office. I got blood on her office. I put a quarter on her desk even though she ain't fucking worth it. And I left her a note on her desk that says 'Nancy, Bigo was here, you Bitch.'"  A note recovered from the Speaker's Office substantially matched the defendant's description to the media.

In a January 6, 2021 interview with law enforcement, the defendant stated that while driving back home to Arkansas, he turned the location services off his phone, used only cash, and kept his face covered.  He also commented that the agents may not find much at his house because he is a "smart man."  The defendant's property was searched pursuant to a warrant, and the clothing he wore the day of the offense was recovered from underneath a dog crate in the back of his significant other's car.  While packaging for the stun gun was recovered, neither the stun gun itself nor the defendant's phone were.  However, the defendant used clips of video apparently recorded on the phone as exhibits in support of pretrial release.  *See* Exhibit List, ECF No. 28-2. The defendant's iCloud account was also searched pursuant to a warrant, with the results suggesting the defendant deleted all data reflecting his activities in Washington, D.C., on January 6, 2021.

**II.    Argument**

Only evidence that is relevant may be admitted at trial.  *See* Fed. R. Evid. 402.  And to be relevant, the evidence must have a "tendency to make the existence of [a] fact that is of consequence to the determination of the action more probable or less probable than it would be

3

without the evidence." Fed. R. Evid. 401; *see also United States v. Sesay*, 313 F.3d 591, 599-600 (D.C. Cir. 2002). Even if the defendant can articulate *some* basis for believing that information is relevant to his defense, the Court "may exclude marginally relevant evidence and evidence posing an undue risk of confusion of the issues without offending a defendant's constitutional rights." *United States v. Alayeto*, 628 F.3d 917, 922 (7th Cir. 2010) (citing *Holmes v. South Carolina*, 547 U.S. 319, 326–27 (2006)). Thus relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. Fed. R. Evid. 403. Finally, the introducing party carries the burden to establish both relevancy and admissibility under the evidentiary rules. *United States v. Oseguera Gonzalez*, 507 F. Supp. 3d 137, 147 (D.D.C. 2020). For the reasons below, the Court should exclude certain evidence and argument in the event that it is advanced by the defendant.

### A. The Court Should Preclude Evidence and Argument Related to any Potential Penalty.

The United States requests that the defendant be prohibited from attempting to introduce evidence or to argue about the potential penalties or collateral consequences associated with a conviction for the charged offenses.

It is well-settled that arguments or evidence regarding punishment are improper because the potential penalties faced by a defendant are irrelevant to the jury's determination of guilt or innocence. *See Shannon v. United States*, 512 U.S. 573, 579 (1994) ("a jury has no sentencing function, it should be admonished to 'reach its verdict without regard to what sentence might be imposed'") (quoting *United States v. Rogers*, 422 U.S. 35, 40 (1975)); *United States v. Frank*, 956 F.2d 872, 879 (9th Cir. 1991) ("It has long been the law that it is inappropriate for a jury to consider or be informed of the consequences of their verdict"); *United States v. McDonald*, 935 F.2d 1212, 1222 (11th Cir. 1991) (the "question of punishment should never be considered by the jury in any way in deciding the case"). The D.C. Circuit has also recognized that generally "the jury has no

4

concern with the consequences of a verdict, either in the sentence, if any, or the nature or extent of it, or in probation." *Lyles v. United States*, 254 F.2d 725, 728 (D.C. Cir. 1958), *overruled in part on other grounds by United States v. Brawner*, 471 F.2d 969 (D.C. Cir. 1972); *United States v. Patrick*, 494 F.2d 1150, 1154 (D.C. Cir. 1974) (reversing and remanding with instructions to properly instruct the jury that "[i]t is the jury's responsibility to determine guilt or innocence on the basis of the evidence that has been presented. You are not to consider the question of punishment in arriving at your verdict. If you find the defendant guilty the Court will determine the appropriate sanction.").

This analysis applies equally to the collateral penalties associated with a felony conviction – such as being prohibited from certain types of employment and losing the rights to possess firearms and vote. *See United States v. Muentes*, 316 F. App'x 921, 926 (11th Cir. 2009) ("A defendant is not entitled to an instruction informing the jury of the consequence of a guilt or innocence finding in terms of punishment"); *United States v. Thigpen*, 4 F.3d 1573, 1578 (11th Cir. 1993) ("We ... hold that the general rule against informing jurors of the consequences of a verdict governs such cases"); *see also* 18 U.S.C. § 922(g)(1) ("It shall be unlawful for any person ... who has been convicted [of a felony to] possess ... any firearm or ammunition").

The rationale for excluding penalty evidence is plain – the penalties associated with a conviction are not probative of guilt or innocence. Instead, evidence relating to the punishment and the collateral effects of a conviction serve only to compromise the verdict, confuse the jury, or invoke sympathy for the defendant. *See McDonald*, 935 F.2d at 1222.

As a result, the United States moves to preclude the defendant from arguing or introducing evidence regarding the potential penalties he faces upon conviction, including: (a) the maximum penalties associated with the charged offenses; (b) that if convicted, the defendant could be sentenced to prison; (c) that the defendant will be prohibited from obtaining certain types of jobs,

including jobs in law enforcement and the military, if convicted; and (d) that the defendant will no longer be able to vote or possess a firearm if convicted. *See Rogers*, 422 U.S. at 40 ("the jury [has] no sentencing function and should reach its verdict without regard to what sentence might be imposed") (citations omitted).

### B. The Court Should Preclude Argument or Evidence that Encourages Jury Nullification.

The Court should prohibit the defendant from making arguments or introducing evidence that encourages jury nullification. As the D.C. Circuit has made clear,

> A jury has no more "right" to find a "guilty" defendant "not guilty" than it has to find a "not guilty" defendant "guilty," and the fact that the former cannot be corrected by a court, while the latter can be, does not create a right out of the power to misapply the law. Such verdicts are lawless, a denial of due process and constitute an exercise of erroneously seized power.

*United States v. Washington*, 705 F.2d 489, 494 (D.C. Cir. 1983). Evidence that only serves to support a jury nullification argument has no relevance to guilt or innocence. *See United States v. Gorham*, 523 F.2d 1088, 1097-98 (D.C. Cir. 1975); *see also United States v. Funches*, 135 F.3d 1405, 1409 (11th Cir. 1998) ("No reversible error is committed when evidence, otherwise inadmissible under Rule 402 of the Federal Rules of Evidence, is excluded, even if the evidence might have encouraged the jury to disregard the law and to acquit the defendant").

By way of example, the government moves to preclude evidence or arguments related to:

(1) a claim that the defendant has been unfairly singled out for prosecution because of his political views; *see United States v. King*, 2009 WL 1045885, at *3 (D. Idaho Apr. 17, 2009) ("The Court will therefore exclude any evidence or argument as to selective prosecution at trial."); *United States v. Kott*, 2007 WL 2670028, at *1 (D. Alaska Sept. 10, 2007) (where defendant, in response to government's expressed concern that defendant might use challenged evidence to claim

6

selective prosecution at trial, the defendant "abjured any effort to" to make such a claim, "[t]he court will enforce that promise").

(2) sympathy for the defendant; *see United States v. Bell*, 506 F.2d 207, 226 (D.C. Cir. 1974) ("evidence which has the effect of inspiring sympathy for the defendant or for the victim … is prejudicial and inadmissible when otherwise irrelevant") (internal citation omitted); *United States v. White*, 225 F. Supp. 514, 519 (D.D.C 1963) ("The proffered testimony (which was clearly designed solely to arouse sympathy for defendant) was thus properly excluded.").

(3) the defendant's work life or any family hardships; *see United States v. Perez*, 459 F. App'x 191, 198 (3d Cir. 2012) (family and work life not relevant and "pose[d] an improper risk of jury nullification"); *United States v. Copeland*, 291 F. App'x 94, 97 (9th Cir. 2008) (evidence of defendant's hardship excluded because "possible prejudice to the government of jury nullification based on sympathy").

(4) the defendant's religious beliefs; *see Wallace v. Davis*, 362 F.3d 914, 921 n.2 (7th Cir. 2004) (Williams, J., concurring) ("mitigation strategies which seek the 'equivalent of jury nullification' on the basis of religious beliefs are unreasonable").

(5) the suggestion that the jury should apply community standards or principles of democracy over the law; *see United States v. Washington*, 705 F.2d 489, 494 (D.C. Cir. 1983) (holding defendant had no right to an instruction informing the jury of its power to engage in nullification if it found her conduct not culpable or morally blameworthy under prevailing community standards); *United States v. Dougherty*, 473 F.2d 1113, 1133-34 (D.C. Cir. 1972) ("This so-called right of jury nullification is put forward in the name of liberty and democracy, but its explicit avowal risks the ultimate logic of anarchy.").

In sum, such evidence and argument is not relevant to the issues at trial, could promote jury nullification, and should be excluded. Should the defendant seek to raise other arguments targeted at the jury's sympathies rather than the question of guilt or innocence, those arguments should likewise be excluded.

### A. The Court Should Preclude Defense Evidence Not Produced in Reciprocal Discovery.

Federal Rule of Criminal Procedure 16(b)(1)(A) imposes a "reciprocal discovery requirement" between the United States and a criminal defendant. *See United States v. Hardy*, 586 F.3d 1040, 1043 (6th Cir. 2009). Among the defendant's disclosure requirements are notice and a written summary of any expert witness opinions. Rule 16(b)(1)(C). As of the date of the filing of these motions, the defendant has not produced any reciprocal discovery, despite the government's written request on multiple occasions, specifically June 2, 2021, and August 20, 2021. The United States has requested that the defendant comply with Rule 16(b) of the Federal Rules of Criminal Procedure, as well as Rule 12.1, which requires notice of any alibi defense, Rule 12.2, which requires notice of an insanity defense, and Rule 26.2, which requires the production of prior statements of all witnesses, except for those of the defendant. The defendant has not provided the United States with any notices, documents or statements. Accordingly, the United States seeks to exclude any evidence and disclosures that should have been produced in reciprocal discovery.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar Number 481052

*/s/ Mary L. Dohrmann*
MARY L. DOHRMANN
Assistant United States Attorney
NY Bar No. 5443874
601 D Street N.W.
Washington, DC 20530

8

Mary.Dohrmann@usdoj.gov
(202) 252-7035

*/s/ Alison B. Prout*
ALISON B. PROUT
Assistant United States Attorney
Georgia Bar No. 141666
75 Ted Turner Drive, SW
Atlanta, Georgia 30303
alison.prout@usdoj.gov
(404) 581-6000