## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 1:21-cr-00038 (CRC) |
| | ) | |
| RICHARD BARNETT | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT RICHARD BARNETT'S MOTION TO DISMISS COUNT ONE OF THE INDICTMENT FOR FAILURE TO STATE AN OFFENSE, WITH MEMORANDUM OF LAW AND REQUEST FOR ORAL ARGUMENT HEARING

Comes now the Defendant, RICHARD BARNETT, by and through undersigned counsel, and respectfully moves this court to dismiss Count One of the indictment, along with the accompanying aiding and abetting charge because the Government has failed to state an essential element of the offense and is unconstitutionally misapplying the law. Mr. Barnett requests an oral argument hearing, and supports his request as follows:

## I.       INTRODUCTION

Count One of the Indictment reads as follows:

> On or about January 6, 2021, within the District of Columbia and elsewhere, RICHARD BARNETT, attempted to, and did, corruptly obstruct, influence, and impede an official proceeding, that is, a proceeding before Congress, by entering and remaining in the United States Capitol without authority and engaging in disorderly and disruptive conduct.
> **((Obstruction of an Official Proceeding and Aiding and Abetting,** in violation of Title 18, United States Code, Sections 1512(c)(2) and 2))

1:21-cr-00038-CRC ECF No. 19

Section 1512(c) falls under Chapter 73 of Title 18, which deals with "Obstruction of Justice." See generally 18 U.S.C. §§ 1501–1521. As the Ninth Circuit has carefully considered and recognized, based on the plain language of the statute, an offense under § 1512(c) does

not prohibit the obstruction of every governmental function; it only prohibits the obstruction of proceedings such as a hearing that takes place before a tribunal. See *United States v. Ermoian*, 752 F.3d 1165, 1171 (9th Cir. 2013). Stated differently, § 1512(c), by its plain language, does not criminalize the obstruction of legislative action by Congress. Any alleged obstruction of the certification of an Electoral College vote is simply outside the reach of § 1512(c).

As noted above, Count One of the Indictment charges that Mr. Barnett obstructed an "official proceeding," in violation of 18 U.S.C. § 1512(c)(2) and identifies that "proceeding" as "Congress's certification of the Electoral College vote." As set forth below, Mr. Barnett argues that the Department of Justice (DOJ) has taken § 1512(c)(2) completely out of the context of the parent chapter that is titled *Witness Tampering* and subsection c that was designed specifically for document tampering. Section 1512(c) was designed for one purpose—to prevent a party from altering, tampering, destroying, or otherwise making evidence unavailable.

In the context of January 6th related cases, however, the legislative history and purpose behind Section 1512(c) have been flatly ignored. Short of argument about someone stealing or destroying electoral certificates, should those in any way be construed to be "evidence," the application of § 1512(c)(2) to January 6th defendants is also unsupported by any prior judicial decision. In essence, § 1512(c) has been reconstructed and its scope widened for January 6 defendants such as Mr. Barnett to the point where it is unrecognizable, and misapplied for the specific purpose of dragnetting, capturing, and indicting hundreds of American Citizens who protested at the United States Capitol on January 6, 2021. "Due process bars courts from applying a novel construction of a criminal statute that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope." *United States v. Lanier*, 520 U.S. 259, 268 (1997).

In this case, Mr. Barnett was indicted for the crimes of 18 U.S.C. § 1752(a)(2) Disorderly and Disruptive Conduct in a Restricted Building; 40 U.S.C. § 5104(e)(2)(C) Entering and Remaining in Certain Rooms in the Capitol Building; 40 U.S.C. § 5104(e)(2)(D) Disorderly Conduct in a Capitol Building; 40 U.S.C. § 5104(e)(2)(G) Parading, Demonstrating, or Picketing in a Capitol Building and others. Hence in what appears as an arbitrary and capricious application that makes anything an element of § 1512(c)(2) on the Government's whim, the crimes of Being on Restricted Grounds and Disorderly Conduct are now somehow lesser charges inherent to §1512(c)(2) even though those misdemeanors were never intended by the legislature to be inherent to or made part of §1512 when the statute was passed. This is DOJ as an Executive Branch agency creating unconstitutional law. The Government is using §1512(c)(2) as a means of prosecuting felonies where at best a misdemeanor may apply. §1512(c)(2) has never been used in this context before or after January 6, 2021 for anyone who allegedly or actually disrupted any hearings or proceedings inside the U.S. Capitol.

Moreover, Mr. Barnett was nowhere near the House of Senate chamber, never attempted access to those chambers, and was not inside the Capitol when the ongoing debate related to the electoral count was stopped and Congress was evacuated. Nor is there any evidence that he took any action with respect to a document, record, or another object to corruptly obstruct, impede, or influence an official proceeding. The multitude of alleged acts that only in the construct of January 6 violate §1512(c)(2) show an arbitrary interpretation and misapplication of the statute, especially given its relation to a ceremony with the Vice President reading a ceremonial script. The fact that someone walking in the empty Senate with a Trump flag would be charged with §1512(c)(2) while another person who carried no flag in the empty Senate had the charge dismissed in plea discussions implicates political weaponization of the statute. This arbitrary application and capricious

determination of what comprises a violation of § 1512(c)(2) is flatly unconstitutional. As such, Count One of the Indictment should be dismissed.

## II.   STATUTORY BACKGROUND AND HISTORY

### A. Section 1512(c)(2)'s Structure and Legislative History

1.   § 1512(c) provides: "Whoever corruptly
    (1) alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding; or
    (2) otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so . . . shall be fined . . . or imprisoned. . .

§1512(c)(2)

2.   § 1515 defines the term "official proceeding" as used in Section 1512(c).

"[T]he term 'official proceeding' means

    (A) a proceeding before a judge or court of the United States, a United States magistrate judge, a bankruptcy judge, a judge of the United States Tax Court, a special trial judge of the Tax Court, a judge of the United States Court of Federal Claims, or a Federal grand jury;
    (B) a proceeding before the Congress;
    (C) a proceeding before a Federal Government agency . . . .

§ 1515(a)(1)

3.   Congress subsequently amended § 1515 to provide:
    As used in section 1505, the term **'corruptly'** means acting with an improper purpose, personally or by influencing another, including making a false   or misleading statement, or withholding, concealing, altering, or destroying a document or other information.

§ 1515(b)

### B. Section 1512 Falls Under Chapter 73, Obstruction of Justice.

Section 1512 is titled "Witness Tampering." Section 1512(c) was a change after the Enron scandal that was specifically designed to close a loophole related to acts preventing use of documents as evidence.

**C.  Congress Created Section 1512(c) to Fill a Loophole That Existed at the Time of the Enron Case**.

1.  The Senate Report for the Sarbanes-Oxley Act identified the statutory loophole as the requirement that the person damaging documents had to have been directed by defendants.

> Indeed, even in the current Andersen case, prosecutors have been forced  to use the "witness tampering" statute, 18 U.S.C. § 1512, and to proceed under the legal fiction that the defendants are being prosecuted for telling other people to shred documents, not simply for destroying evidence themselves. Although prosecutors have been able to bring charges thus far in the case, in a case with a single person doing the shredding, this legal hurdle might present an insurmountable bar to a successful prosecution.

S. Rep. No. 107–146, p. 7 (2002).

2.  Senator Lott introduced § 1512(c) on July 10, 2002. He said the amendment's "purpose" was "[t]o deter fraud and abuse by corporate executives" as happened in the Enron case. 148 Cong. Rec. S6542 (daily ed. July 10, 2002). Then-Senator Joseph Biden referred to the new subsection (c) as "making it a crime for document shredding." *Id*. at S6546. Senator Hatch made similar statements regarding the focus of the proposed new subsection on documents and document shredding, as well as its ties to the then-recent Enron scandal. Senator Hatch said, "the amendment strengthens an existing federal offense that is often used to prosecute document shredding and other forms of obstruction of justice," noting that current law "does not prohibit an act of destruction committed by a defendant acting alone." *Id*. at S6550.

**D.  President Bush Defined *Corruptly* for the Executive Branch in Scienter Terms Upon Signing H.R. 3763[1]; and Indicated that Section 1512(c) Applied to Businesses:**

> To ensure that no infringement on the constitutional right to petition the Government for redress of grievances occurs in the enforcement of section 1512(c) of title 18 of the U.S. Code, enacted by [§ ] 1102 of the Act, which among other things prohibits corruptly influencing any official proceeding,

---

[1]  Statement issued by the White House Press Secretary on July 30, 2002 and found at https://georgewbush-whitehouse.archives.gov/news/releases/2002/07/20020730-10.html (last visited September 20, 2022).

the executive branch shall construe the term "corruptly" in section 1512(c)(2) <u>*as requiring proof of a criminal state of mind on the part of the defendant.*</u>

GEORGE W. BUSH
THE WHITE HOUSE,
July 30, 2002. (Emphasis added)

1.    The President stated that the Sarbanes-Oxley Act and sections were to protect investors and improve corporate disclosures related to financial matters. "The Act adopts tough new provisions to deter and punish corporate and accounting fraud and corruption, ensure justice for wrongdoers, and protect the interests of workers and shareholders." *Id.*[2]

2.    The Congressional debate about the need for passage of the Act with Section 1512(c) to hold corporations accountable and to close loopholes regarding evidence alteration or destruction,[3] combined with President Bush's statements about Section 1512(c) were heavily covered in media because of the Enron case. In addition to legacy news coverage, the topic was covered in opinion pieces and even advertising, "A television commercial for Heineken beer, broadcast during the 2002 holiday season, vilified Enron's document destruction as being anathema to having been 'good this year.'"[4] Heineken showed what looked to be snow falling outside an apartment building, and then panned inside a top-level apartment, where men in white shirts were shredding documents and tossing confetti shreds outside. *Id.*[5]

---

[2] Refers to the Sarbanes-Oxley Act of 2002 (*Public Company Accounting Reform and Investor Protection Act*), Pub. L. No. 107-204, 116 Stat. 745 (codified in sections of 15 U.S.C. and 18 U.S.C. including Section 1512(c) changes).
[3] Statements in support of the Sarbanes-Oxley Act of 2002 included "we must crack down on the corporate criminals and rebuild America's confidence in our markets .... [T]he best way to do that is to punish the corporate wrongdoers and to punish them harshly." 148 CONG. REC. H5464 (daily ed. July 25, 2002) (statement of Representative Sensenbrenner).
[4] Daniel A. Shtob, "Corruption of a Term: The Problematic Nature of 18 U.S.C. §1512(c), the New Federal Obstruction of Justice Provision," 57 Vanderbilt Law Review 1429, 1432  (2019). Available at: https://scholarship.law.vanderbilt.edu/vlr/vol57/iss4/6
[5] The old 2002 commercial 'Let It Snow" can be found on YouTube: https://www.youtube.com/watch?v=UZ9n1x9YjjY (last visited September 21, 2022).

3.   There is no apparent evidence of any intent by the Congress or President Bush in respectively passing and signing § 1512(c) that it would ever serve as a catch-all for interrupting a Congressional hearing, the passage of legislation, or committee work sessions.

## MEMORANDUM OF LAW

### III.   LEGAL STANDARD

Before trial, a criminal defendant may move to dismiss a count of the indictment based on a "defect in the indictment." Fed. R. Crim. P. 12(b)(3)(B). Defects can include "lack of specificity" and "failure to state an offense." *Id*. A "failure to state an offense" argument includes constitutional challenges to the statute creating the charged offenses. See *United States v. Stone*, 394 F.Supp.3d 1, 7 (D.D.C. 2019); *United States v. Seuss*, 474 F.2d 385, 387 n.2 (1st Cir. 1973).

Where an indictment is defective for failing to state an offense, a pretrial motion to dismiss the defective indictment is warranted, and the Court must dismiss an indictment which fails to state all essential elements of the crime charged. Fed. R. Crim. P. 12 (b)(3)(B)(v). The indictment must be plain, concise, and clear as to the facts of the offense charged. Fed. R. Crim. P. 7(c)(1). The indictment must provide the defendant sufficient detail to allow him to prepare a defense, to defend against a subsequent prosecution of the same offense, and to ensure that he is prosecuted upon facts presented to the Grand Jury." *United States v. Apodaca*, 275 F. Supp. 3d 123, 153 (D.D.C. 2017) (citing *Russell v. United States*, 369 U.S. 749 (1962); *Stirone v. United States*, 361 U.S. 212 (1960)).

When considering a challenge to the indictment, "a district court is limited to reviewing the face of the indictment;" "the Court must "presume the allegations [in the] indictment to be true." *United States v. Sunia*, 643 F.Supp.2d 51, 60 (D.D.C. 2009) (internal quotation marks omitted). "The operative question is whether [those] allegations, if proven, would be sufficient to

permit a jury to find that the crimes charged were committed." *United States v. Sanford, Ltd.*, 859

F.Supp.2d 102, 107 (D.D.C. 2012).

A criminal statute is unconstitutionally vague if it "fails to give ordinary people fair notice

of the conduct it punishes, or [is] so standardless that it invites arbitrary enforcement." *United*

*States v. Bronstein*, 849 F.3d 1101, 1106 (D.C. Cir. 2017) (quoting *Johnson v. United*

*States*, 135 S.Ct 2551, 2556 (2015)). "The void-for-vagueness doctrine . . . guarantees that ordinary

people have 'fair notice' of the conduct a statute proscribes. And the doctrine guards against

arbitrary or discriminatory law enforcement by insisting that a statute provide standards to govern

the actions of police officers, prosecutors, juries, and judges." *Sessions v. Dimaya*, 138 S. Ct. 1204,

1212 (2018) (citing *Kolender v. Lawson*, 461 U.S. 352, 358 (1983)). Notice requires the person to

be able to know what acts are criminal.

"[T]he rule of lenity is venerable," *United States v. Nasir*, 17 F.4th 459, 472 (3d Cir. 2021)

having arisen to mitigate draconian sentences in England and having been firmly established in

English law by the time of Blackstone. *Id.* at 473. "Under the rule of lenity, courts construe penal

laws strictly and resolve ambiguities in favor of the defendant," *id.*, so long as doing so would not

"conflict with the implied or expressed intent of Congress," *Liparota v. United States*, 471 U.S.

419, 427 (1985). Under current doctrine, the rule of lenity applies to instances of "grievous"

ambiguity, see *Shular v. United States*, 140 S. Ct. 779, 788 (2020) (Kavanaugh, J., concurring)

See William Blackstone, Commentaries *88 ("Penal statutes must be construed strictly.").

## IV.   ARGUMENT

**A.  Count One of the Indictment Fails to State an Offense Because it Charges Mr. Barnett With Conduct Outside the Reach of § 1512(c)(2), and Unconstitutionally Applies § 1512(c)(2) to the Alleged Conduct.**

1. **The Purpose of 18 U.S.C. § 1512(c) Requires a Witness or Evidence.**

        18 U.S.C. § 1512(c), of which § 1512(c)(2) is a part, was enacted by the Sarbanes-Oxley Act as an amendment to 18 U.S.C. § 1512. Sarbanes-Oxley Act, Pub. L. No. 107-204, § 1102, 116. Stat. 807 (2002). As outlined *supra* in Section II, C-D, neither Congress nor the President enacted § 1512(c) to be used for anything other than document tampering as related to evidence. The Department of Justice's own interpretation of § 1512 is reflected in its Criminal Resource Manual. *See* Criminal Resource Manual, CRM 1729, Department of Justice that states § 1512 "proscribes conduct intended to illegitimately affect the presentation of evidence in Federal proceedings. . . ." The President, DOJ and Congress never distinguished before January 6, 2021 that any part of 1512(c) was not tied to interfering with the presentation of evidence by witnesses or by tangible items like documents. A review of other parts of § 1512 shows it involves actions against people, whereas § 1512(c) was added for actions taken by people against documents and tangible evidence. Section 1512(c)(2) may have been ahead of its time in compensating for electronic drives and cloud files, and the use of 'acid washing' for digital files. Section 1512 requires action against a witness or evidentiary document. § 1512(c) was enacted about document tampering that would impact evidence required for a proceeding.

        Mr. Barnett cannot have violated § 1512 because he was not inside the Capitol Building at 2:20 and obstructed nothing when the electoral objection debates stopped, and Congress evacuated the chambers. He is not charged with any action that did or would have impacted a witness's testimony or a document required for evidence by Congress on January 6, 2021 or any future date. § 1512 is not titled "Disrupting Congress." There are misdemeanor crimes for disrupting Congress. 18 U.S.C. § 1752(a)(2) Disorderly and Disruptive Conduct in a Restricted Building and 40 U.S.C. § 5104(e)(2)(D) Disorderly Conduct in a Capitol Building are existing

statutes. In Mr. Barnett's case, the DOJ has arbitrarily made those crimes lesser crimes within Section 1512. Count One is arbitrary because in 2017 when protestors gathered outside a Senate meeting on replacing the Affordable Care Act, there was no attempted use of § 1512(c). The large group of protestors shouted, blocked hallways, and refused to leave. 161 people were arrested and while the majority received minor fines if anything, fifteen protestors were charged with the misdemeanor of disrupting Congress.[6] News reported that proceedings had to stop for over fifteen minutes. Thus, in 2017 the conduct of causing a delay in Congressional proceedings that did not involve witness or evidence tampering did not give rise to charges and prosecution under Section 1512(c)(2).

After being pushed and swept inside open doors with crowd flow, Mr. Barnett is recorded on video in the building at 2:50 p.m., well after Congress had evacuated. ECF No. 1-1 at 2; ECF 3-1 at 4.  He did not force his way inside and made no threats. Neither is he accused of doing anything to tamper with a witness or evidentiary documents that would be used by Congress on January 6, 2021, or later. Mr. Barnett did not come near, let alone attempt to take the electoral certificates, which were the only documents for the ceremonial event if it is classified as a "proceeding." Importantly, the electoral certificates were never intended as evidence. The certificates are on fancy paper in fancy envelopes and were intended for a ceremony. They were not marked as evidence. They were placed in a fancy box and are likely in the National Archives somewhere. The key element of the crime is not charged in that there was no evidence related to documents or files that were tampered with. Instead, Mr. Barnett's indictment charges him with entering and remaining in the United States Capitol without authority and engaging in disorderly and disruptive

---

[6] https://www.nbcwashington.com/news/local/181-arrested-at-capitol-hearing-during-protests-about-gop-health-care-bill/28737/ (last visited September 21, 2022).

conduct. The charges are elements of misdemeanor crimes he is charged with, but they are not elements of § 1512(c). Section 1512 was never intended to be a catch-all for temporary schedule disruptions in Congress. And corrupt intent is required under Section 1512. President Bush was clear that airing grievances, which in the English language include First Amendment speech, cannot be grounds for use of Section 1512(c).

Because Mr. Barnett did not "tamper" with evidence or documents and he was not accused of such; he had no intent to and the Government cannot show he had any intent to obstruct any proceeding by tampering with a witness or evidence; and his alleged conduct is arbitrarily charged as an unconstitutional expansion beyond the intent and reach of § 1512(c)(2), the count should be dismissed.

## 2.  **The Statute is Unconstitutional in Arbitrary Application**.

Count One provides not a scintilla of information about whom Mr. Barnett aided and abetted, how, and for what. No person can know what will make their actions a crime under Section 1512(c)(2) as applied. The statute is not vague as written - but its interpretation and application against Mr. Barnett and January 6 defendants are novel and capricious, and therefore, unconstitutional.

The DOJ, as well as the D.C. U.S. District Court's judges, view and apply Sections 1512(c)(1) and (c)(2) as disjointed, because of the word "otherwise," even though in the English language "otherwise" as used in Section 1512(c)(2) is a conjunctive adverb. Despite Senators stating at the time of enactment circa 2002 that Section 1512(c) closed a loophole for document destruction or tampering, for January 6th cases the legislative intent is ignored. Section 1512(c)(2) is used without any relation to a witness or evidence. Despite every other part of Section 1512 having a purpose to deter a threat to a witness or tangible document or file related to evidence, the

Government and District Court judges have decided that Congress buried 1512(c)(2) as a crime for anything that interrupts "the proceeding," where no interference with a witness or evidence is required. There was not a single "witness" on January 6. The Electoral Count Act never once mentions the word "witness.' The Act never once mentions the word 'evidence' as a requirement to ceremoniously count certificates. Because of the above, the statute is being applied unconstitutionally and outside of its design, where anything that interrupts "a proceeding" can be charged as a twenty-year felony.

A judge, U.S. Attorney, or FBI agent can decide at their whim what obstructs a proceeding involving no witness or evidence such that Section 1512(c)(2) is violated. A proceeding is now anything involving Congress, except when Stephen Colbert's television comedy crew remains in the buildings connected by tunnel to the Capitol after being told to leave. DOJ did not use Section 1512(c)(2) on January 6, 2017, when a man wandered yelling through the occupied chamber and disrupted the Electoral Vote Count.

The DOJ did not weaponize Section 1512(c)(2) in 2017 when groups in intervals showed up in the Senate gallery and yelled during the Justice Kavanaugh confirmation hearings, where said hearings were actually "obstructed" and had to stop while members of Code Pink were removed. The DOJ did not use Section 1512(c)(2) when people verbally surrounded and accosted Republican Senators in hallways and by elevators during breaks from the confirmation hearings - where the locations were off-limits to the public. The DOJ did not use Section 1512(c)(2) when Congresswoman Kyrsten Sinema was accosted by activists while using the restroom. The DOJ did not use Section 1512(c)(2) after gun control activist David Hogg was escorted out of a House Judiciary Committee hearing on June 20, 2022, following an outburst that received over one million views on Twitter within hours of the incident. For example, DC Jail's Inmate Grievance

Process Coordinator T. Campbell clearly violated 1512(c) when on April 11, 2022, she materially altered crucial evidentiary documents necessary for the administrative grievance process at DC Jail—yet she has never been charged by the Department of Justice.[7]

In application, nobody can tell what acts will be criminal under Section 1512(c)(2), where the DOJ and the D.D.C. say that 1512(c)(2) can be anything that disrupts what they call a "proceeding." According to the DOJ's and D.D.C's interpretation, and current application of Section 1512(c)(2), it is a felony punishable by twenty years in prison to block a Senator's parking space that subsequently causes the Senator to be late for a meeting. However, your chances of being prosecuted are extremely high if you support Donald Trump, and non-existent if you do not.

This novel and unprecedented application – unique and newly invented for January 6 defendants - relies on the false idea that Congress buried a catch-all clause to all of Section 1512 in Section 1512(c)(2) where no person can know what conduct violates what part of the law, if any. This makes the law unconstitutional as applied, even though the use is a deliberate misapplication of the law as written and intended. The D.D.C. is rewriting the law from the bench. As a catch-all phrase, Section 1512(c)(2) joins to Section 1512(c)(1) in the English language and as Congress the President intended in 2002. But as applied, instead of the focus being on witness and evidence tampering (the reasons for the overall statute's existence), the DOJ arbitrary interpretation combined with D.D.C. court-made law as applies to January 6 defendants, has turned Section 1512(c)(2) on its head. Now anything that might interrupt any "proceeding" that is deemed "official" where there is no evidence or witnesses can result in a 20-year felony if DOJ decides to

---

[7] See Habeas Corpus Petition, Nichols v. Garland et al, Case No. 1:22-cv-02356 ECF No. 1 at 33:140 and 34:140

prosecute. The potential reach of this statue is limitless, has no bounds, and must be reined in at once.

If Mr. Barnett's prosecution is not in fact arbitrary, the government should be able to articulate a credible statutorily based standard that would explain why it thinks his alleged conduct falls under its broad reading of § 1512(c)(2), in a way that also accounts for why it has failed to charge not only other persons whose alleged conduct would also have disrupted the counting of the Electoral College votes on January 6th but also persons who have disrupted official proceedings in the past.

In Mr. Barnett's case, the indictment shows that the Government made trespass and being amidst a loud First Amendment protest, conduct that creates new, unwritten elements for Section 1512(c) crime that is supposed to be about document tampering. Because the statute is unconstitutional as applied since nobody can know what constitutes criminal activity, and where others similarly situated are not charged equally, Mr. Barnett's Count One should be dismissed.

### 3.  Under DOJ and The Court's Mistaken Grammatical Interpretation, There Are No Set Elements That Make Up A 1512(C)(2) Crime.

A thorough review of the entire statutory context proves that the word "otherwise" was intended by Congress to unite sections 1512(c)(1) and 1512(c)(2). The obvious contextual evidence that counters the Court's usual "plain meaning" determination is § 1512's repeated use of the disjunctive "or" throughout the statute as a way of demarcating plainly separate and independent conduct. In fact, the word "or" is used nine times in 18 U.S.C. § 1512 to create twenty separate and independent methods of obstructing justice. "Or" is used in § 1512(a)(1) to demarcate three separate methods of obstructing justice by murder or attempted murder. Similarly, "or" appears twice in § 1512(a)(2), effectively demarcating seven distinct methods of obstruction through threats or physical force. Congress, unlike in twenty surrounding places in the Witness

Tampering statutes, inserted "otherwise" only between subsections (c)(1) and (c)(2) of § 1512(c). Why would Congress, after using "or" to unambiguously demarcate twenty plainly separate and independent methods of obstructing justice, insert the word "otherwise" between subsections (c)(1) and (c)(2) for the exact same purpose? In other words, Congress could have "underscored" that (c)(1) and (c)(2) involve different obstructive conduct by omitting "otherwise" from the statute altogether. Therefore, logically "otherwise" must have been intended by Congress to have a statutory constructive purpose different than, as the Court found, underscoring disjunction between the subsections.

The Section 1512(c)(2) and Section 2 Indictment against Mr. Barnett, if left standing, allow a claim of disorderly conduct and aid to unidentified persons - without any sub-elements and without standards - to be decided based upon the subjective imagination of a jury. The indictment's Count One eliminates the *mens rea* (i.e., to corruptly intend to obstruct a proceeding) required by Section 1512 . As charged, Count One allows allegations and interpretation that conduct was disorderly (*actus rea* alone) to result in a guilty conviction for a felony that was enacted to deter the destruction of evidence for a Congressional investigation or court proceeding. Without any showing that the alleged disorderly conduct was intended to obstruct anything, a finding that conduct was disorderly makes Section 1512(c)(2) a strict liability crime. The Government knows that Mr. Barnett did not do anything to stop the debates over Arizona electoral votes. He did not aid anyone in causing Congress to stop its business. Mr. Barnett did not by his short presence around 2:50 p.m. cause Congress to stop its business because Congress had already evacuated. Mr. Barnett did not cause any delay to the restart of the debates over the electoral count because he left the building well before the USCP cleared out the last protestors.

There is no indication as to why Section 1512(c)(2) is being used for January 6 defendants and why it was not used for the 161 protestors who shut down a Senate proceeding in 2017 as discussed *supra*. The time in 2017 was about 17 minutes of shutdown versus five and a half hours on January 6, 2021. The amount of shutdown time that can be claimed as disruptive versus obstructive is totally arbitrary in application. Further, the US Capitol Police (USCP) with the House Speaker, Senate leader, and Sergeants-at-Arms determined when Congress members (at their predetermined reduced number due to Covid-19 seating restrictions) would return to recommence the ceremonial business of debate and watching certificates be opened and counted. The USCP set the time for security clearing of the expansive building given the exit by around 4:30 p.m. of the last protestors and many stray journalists and photographers. That the USCP did not use the intercom system that runs through all hallways and areas to tell people to leave right after initial entries around 2:00 p.m. - or at any time while protestors were entering though open doors - remains a mystery. The USCP's clearing timeline after protestors were all outside is not transparent or discernible, where the USCP with the House and Senate leaders for unknown reasons declared 8:00 p.m. as the time to restart. Allowances for Congress members' and USCP's dinner time and member travel cannot be attributed to alleged conduct by Mr. Barnett since he left the building well before the last protestors were out. Mr. Barnett did not prevent any USCP from executing their security duties. His entry through open doors around 2:50 where he went looking for a rest room did not enable anyone else to stop a meeting that had already been stopped. Events show there is nothing knowable by any person as to what amount of disruption time to a scheduled meeting gives rise to felony Section 1512(c)(2) charges rather than Section 1752 misdemeanor charges or a $75.00 fine in DOJ's newly created construct of the law.

Disorderly conduct, that is covered under misdemeanor statutes, now can be used as stand-alone *actus rea* to prove felony Section 1512(c)(2) guilt. Without even showing the required *mens* rea for knowingly being in a restricted area under Section 1752, just a claim of being disorderly without intent to do anything besides protest can be turned into strict liability under Section 1512(c)(2). This borders on the absurd. If Congress wanted to create a law that made it a felony to interrupt a meeting that was not a hearing with witnesses and evidence, it could have written laws different than the misdemeanors already on the books. The DOJ and Court are instead creating law by replacing Section 1512(c) as written, intended, and enacted with unconstitutional interpretations. Because of the above, Mr. Barnett's indictment makes it impossible to defend against Section 1512(c)(2) and Count One of the Indictment should be dismissed.

### 4. <u>Misuse of Grammar Allows Misapplication of the Law from What was Intended</u>.

"Otherwise" is used as a conjunctive adverb in thoughtful reading of the entire statute. In Section 1512(c)(2) Congress left open the ability to address other means of interfering with the availability of documents as evidence in a proceeding. In the Enron case, the lack of a "Section 1512(c)" meant that the document possessor could destroy, shred, tamper, or otherwise make documents disappear. Again, why would Congress delineate--twenty times--separate types of obstructive conduct by using "or," but then insert the word "otherwise" in § 1512(c) for the same purpose? In the rest of the statute, Congress listed very specific acts (murder, kidnapping, etc.) whereas for documents it left open other ways someone trying to obstruct a proceeding could impact them. Nothing indicates Congress intended Section 1512(c)(2) as a placeholder for DOJ and courts to come along and implement their own version of this law.

There are six types of adverbs in the English language: adverbs of time, manner, place,

degree, frequency, and conjunction.[8] The first five types are similar in nature, and are used to modify (typically) verbs within their clauses or sentences.[9] The sixth type of adverb is the "conjunctive adverb," which "is an adverb that acts like a conjunction."[10] In § 1512(c)(1), "otherwise" operates as a conjunctive adverb. That "otherwise" in § 1512(c)(1) is a conjunctive adverb is clear. According to a well-respected dictionary: "When used to connect two related clauses, otherwise is usually classified as a conjunctive adverb, which by grammatical tradition should be preceded either by a semicolon or by a period."[11]

    A <u>"conjunctive adverb" conjoins and modifies two separate clauses</u>. The difference between "otherwise" the "adverb" and "otherwise" the "conjunctive adverb" is significant. An "adverb" modifies an adjacent word, e.g., "she believed otherwise," "quickly ran," "knocked on the door loudly," "briefly spoke," etc. Conjunctive adverbs, by contrast, do not modify adjacent words; instead, these grammatical renegades relate the entire adverbial clause back to the preceding clause, thus modifying, in some respect, the first clause. A conjunctive adverb connects independent clauses and acts as a modifier by using one clause to modify another.[12]

    A "conjunctive adverb" is "a word that modifies a whole previous statement." Frederick Crews, The Random House Handbook 403 (6th ed. 1992). Unlike the Government's interpretation, "otherwise" was not used for disjunction where an unregulated catch-all could be applied to Section 1512 in its entirety. Under the Government's interpretation the entirety of Section 1512 could be eliminated and replaced with just Section 1512(c)(2).

---

[8] https://www.thesaurus.com/e/grammar/types-of-adverbs/ (online thesaurus).
[9] *Id*.
[10] *Id*. A "conjunctive adverb" is sometimes called an "adverbial conjunction."
[11] AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (5th Ed. 2020), https://www.ahdictionary.com/word/search.html?q=otherwise, (Usage note) (emphasis original).
[12] Dictionary.com (online dictionary and thesaurus), https://www.thesaurus.com/e/grammar/conjunctive-adverbs/ (emphasis added).

Congress's intent in Section 1512(c)(2) was to criminalize obstructive conduct related to documentary-type evidence technically not captured or anticipated under Section 1512 (c)(1); and not to hand prosecutors and courts a sweeping, over-lapping obstruction of justice statute equipped with a 20-year maximum penalty sledgehammer. As the Supreme Court has emphasized "over and over," when "expounding a statute, we must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy." *U.S. Nat'l Bank v. Independent Ins. Agents of Amer.*, 508 U.S. 439, 455 (1993) (internal citations omitted).

The current version of § 1512(c) was enacted as part of Sarbanes-Oxley and was intended by Congress to improve the accuracy of corporate disclosures by penalizing those who obstruct justice "by impairing the integrity or availability of records, documents, and other tangible objects." *United States v. Hutcherson*, No. 6:05CR00039, 2006 U.S. Dist. LEXIS 6652, at *6-7 (W.D. Va. Feb. 3, 2006). Accordingly, "the amended § 1512(c) created a specific subsection dealing with tampering with tangible evidence, in what was otherwise a statute that previously dealt only with tampering of persons." *Id.* Section 1512 was not intended to create two separate crimes, but instead, was "meant to criminalize difficult to enumerate conduct that would otherwise slip past Section 1512(c)(1)'s specific prescription. *Id. Accord United States v. Pugh*, No. 15-CR-116 (NGG), 2015 U.S. Dist. LEXIS 170271, at *54-55 (E.D.N.Y. Dec. 21, 2015) ("Accordingly, this structure suggests that subsections (1) and (2) of Section 1512(c) outlining two separate ways that a person can corruptly violate the statute."). Importantly, the understanding by President Bush and the DOJ upon enactment in 2002 was that the DOJ had to show the defendant's *mens rea* to obstruct justice.  Grievance speech, under First Amendment protest, including expressive conduct a defendant believes is legal, cannot equal obstruction of Congress for *mens rea* or within the law's intent by the legislature and the President.

**5.   The Government's Interpretation Violates the Canons of Noscitur A Sociis and Ejusdem Generis.**

That Congress only intended for § 1512(c)(2) to apply to conduct that resembles the specific acts listed in § 1512(c)(1) in some way (other than misapplied to make a felony any conduct that disrupts a proceeding) is required by the application of the interpretative canons of noscitur a sociis and ejusdem generis as illustrated by *Yates v. United States*, 135 S.Ct. 1074 (2015) and *Begay v. United States*, 553 U.S. 137 (2008).

In *Yates*, fishermen threw grouper overboard when they were about to be caught with under-sized fish. They were charged with Section 1519 - a felony carrying up to a twenty-year sentence. *Yates* at 1520. 18 U.S.C. § 1519 made it a crime to "alter[],destroy[], mutilate[], conceal[], cover[] up, falsif[y], or make[] false entry in any record, document, or tangible object" in relation to certain types of investigations, matters, and cases. 18 U.S.C. § 1519. In reversing the Eleventh Circuit's judgment, a four-Justice plurality of the Supreme Court noted that 18 U.S.C. § 1519 was created through the Sarbanes-Oxley Act ((the same act that created 18 U.S.C. §1512(c), the act where Mr. Barnett is charged, without any involvement with documents)).

The plurality noted that the Sarbanes-Oxley Act "was prompted by the exposure of Enron's massive accounting fraud and revelations that the company's outside auditor, Arthur Andersen, LLP, had systematically destroyed potentially incriminating documents." Yates, 135 S.Ct. 1081. With this backdrop, the plurality determined that the term "tangible object" in § 1519 is only meant to refer to tangible objects that are of a type with a "record" or "document" and not just to "all objects in the physical world." *Id*. at 1081. The four-Justice plurality indicated that this conclusion was compelled by use of the interpretive canons of *noscitur a sociis* (it is known by its company) and *ejusdem generis* (of the same kind). *Id*. at 1085-86. In this, they were joined by a fifth Justice. *Id*. at 1089-90. To show how reading Sections (c)(1) and (c)(2) as disjointed creates an absurdity,

upon review of the rest of the statute that harmonizes like "things" in each section where what the section is intended to address is clear, *Miller* aptly observed that the government's construction of § 1512(c)(2) presumes Congress would "hide [an] elephant in [a] mousehole." 2022 U.S. Dist. LEXIS 45696, at *29. More aptly the Government's interpretation appears as a zebra standing out in a field with a flock of geese.

As the plurality in *Yates* explained, under the noscitur a sociis canon, a term should not be ascribed "a meaning so broad that it is inconsistent with its accompanying words, thus giving unintended breadth to the Acts of Congress." *Id*. at 1085 (quoting *Gustafson v. Alloyd Co*., 513 U.S. 561, 575 (1995)). Under the *ejusdem generis* canon, "[w]here general words follow specific words in a statutory enumeration, the general words are [usually] construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words." *Id.* at 1086 (quoting *Washington State Dept. of Social and Health Servs. v. Guardianship Estate of Keffeler*, 537 U.S. 371, 384 (2008)) ("[usually]" added in *Yates*). By applying the *noscitur a sociis* canon and the *ejusdem generis* cannon to "any record, document, or tangible object" in § 1519, the four-Justice plurality and the concurring Justice determined that "tangible object" should not be understood to be something of a type different than "record" or "document." *Yates*, 135 S.Ct. 1087, 1089.

*Begay* concerned the interpretation of an "otherwise" clause in 18 U.S.C. § 924(e)(2)(B). In *Begay*, the issue was whether DUI for example fell under the "otherwise" section after specific violent crimes were listed. *Begay* held that the proximity of the listed crimes "burglary, arson, extortion, or crimes involving the use of explosives" to a general crime "otherwise involv[ing] conduct that presents a serious potential risk of physical injury to another" was sufficient to "indicate[] that [the 'otherwise' clause] covers only similar crimes, rather than every crime that

'presents a serious potential risk of physical injury to another.'" *Begay*, 553 U.S. at 142. Specifically, even though DUI posed a serious risk of injury, the Court found "that DUI falls outside the scope of clause (ii). It is too unlike the provision's listed examples [burglary, arson, extortion, or crimes involving explosives] for us to believe that Congress intended the provision to cover it." *Id.* at 142.

Congress does not write criminal laws where people must read caselaw over  twenty years to know what the newest interpretation will be and what violates the law from year to year. Because of the Canons of *Noscitur A Sociis* and *Ejusdem Generis*, the meaning of Section 1512(c)(1)-(2) clearly operate together and cannot now be interpreted to infer Congress meant something that it never wrote. There is no hidden elephant or zebra. Thus, Count One should be dismissed.

### 6.  The Government's Construction of § 1512(c)(2) Creates Surplusage

Accepting the Government's construction for § 1512(c)(2) creates surplusage for almost the entirety of § 1512. The canon against surplusage holds that "all words in a statute are to be assigned meaning, and that nothing therein is to be construed as 'surplusage.'" *Independent Ins. Agents of Am., Inc. v. Hawke*, 211 F.3d 638, 644 (D.C. Cir. 2000) (quoting *Qi-Zhuo v. Meissner*, 70 F.3d 136, 139 (D.C. Cir. 1995)). "[T]he canon . . . is strongest when an interpretation would render superfluous another part of the same statutory scheme." *Marx v. General Rev. Corp.*, 568 U.S. 371, 386 (2013) (emphasis added). If § 1512(c)(2) covers every and any act that obstructs, influences, or impedes an official proceeding, which can involve no witnesses or documents, then seven of the provisions are rendered superfluous and run afoul of § 1512(c)2). :§§ 1512(a)(1)(A), 1512(a)(1)(B), 1512(a)(2)(A), 1512(a)(2)(B)(i), 1512(a)(2)(B)(iii), 1512(a)(2)(B)(iv), 1512(b)(1), 1512(b)(2)(A), 1512(b)(2)(C), 1512(b)(2)(D), and 1512(d)(1).

Because the Government's interpretation of Section 1512(c) creates surplusage - where the above sections are duplicative in effort, the majority of Section 1512 is unconstitutional. This is absurdly outside the legislative intent but this far the D.D.C. by the majority has ignored the absurdity. Count One of the Indictment should be dismissed.

7.  **Review of all of § 1512 Shows the Government Interpretation of § 1512(c) is Wrong.**

A review of § 1512(a), (b), and (d) shows that each provision proscribes only conduct that is intended to cause the suppression or corruption of testimony, evidence, and information that could be relevant at an official proceeding: § 1512(a) proscribes murder or attempted murder, and the use of force, threats of force, or attempts to use force or threats of force that has such intent; § 1512(b) proscribes intimidation, threats, and corrupt persuasion that has such intent, and § 1512(d) proscribes harassment that has such intent.

Given that Congress inserted the current § 1512(c) into the scheme that included the above three provisions shows that it intended for § 1512(c) as whole to only address conduct that might affect the evidence an official proceeding would review—not all conduct that affects or can affect an official proceeding as a general matter. Because of arbitrary decisions, the Government makes for construing actions as meeting the elements of Section 1512(c)(2), its incorrect construction of the language, and failure to look at the legislative history, the government failed to correctly apply the statute. And because of the incorrect and arbitrary application, Mr. Barnett cannot have known at the time if he violated the law, and what he is supposed to defend against.

Section 1512(c)(2) requires an act against documents. Mr. Barnett is not charged with such offense, and instead, the Government makes entering the capitol and alleged disorderly conduct lesser crimes under Section 1512(c)(2), that once charged, are strict liability violations of the Section 1512(c) law that was all about documents.

Count One for 1512(c)(2) and Section 2 should be dismissed because Mr. Barnett cannot have known what acts would violate the law; the statute is being applied unconstitutionally, and the Government and D.D.C. are using a faulty construction of the language where they can make anything a crime in violation of Section 1512(c), while Mr. Barnett's alleged and admitted conduct is beyond the reach of what was the intended construction of the law. Mr. Barnett is not charged with committing the acts, or having the *mens rea*, required for 1512(c)(2). Because of this, Count One should be dismissed.

**B.  The Electoral Count is not a Proceeding as Contemplated When Section 1512(c) Was Passed.**

The counting of the Electoral College votes by the Vice President is conducted pursuant to the Twelfth Amendment to the U.S. Constitution and the rules spelled out in 3 U.S.C. § 1 et seq. The actual meeting to count the Electoral College votes is conducted pursuant to 3 U.S.C. § 15. At such a meeting of both houses of Congress, "certificates of electoral votes" are "presented" to the Vice President by "tellers" on a state-by-state basis and "read… in the hearing of the two Houses." After such reading of the certificates of electoral votes from each state, the votes are then "counted… and delivered to the President of the Senate, who shall thereupon announce the state of the vote, which announcement shall be deemed a sufficient declaration of the persons, if any, elected President and Vice President of the United States." *Id*. This procedure allows for no exercise of discretion or judgment on the parts of the tellers and the President of the Senate, *id.*, and their roles must therefore be regarded as purely ceremonial or ministerial.

"Ministerial describes an act or a function that conforms to an instruction or a prescribed procedure. It connotes obedience. A ministerial act or duty is a function performed without the use

of judgment by the person performing the act or duty."[13] "MINISTERIAL. . . . as opposed to judicial; as, the sheriff is a ministerial officer bound to obey the judicial commands of the court. When an officer acts in both a judicial and ministerial capacity, he may be compelled to perform ministerial acts in a particular way; but when he acts in a judicial capacity, he can only be required to proceed; the manner of doing so is left entirely to his judgment."[14]

There is significant case history prior to January 6, 2021, articulating what a "proceeding" is under 1512(c)(2), none of which, includes an electoral count. The necessary requirements for the sufficiency of an official proceeding are (1) a witness and (2) evidence through testimony or documents under Section 1512. There is not a single mention of a witness in the Electoral Count Act, nor is there any mention of evidence. There is instead, a scripted procedure that the Vice President reads. While there was an objection to the votes from Arizona on January 6th prior to evacuation, the thing cut short was a debate in each house and a vote as to whether to accept the certificates. No witnesses were scheduled. The Secretaries of State who certified the electors' certificates were not present. Debate was going to include words, but no document evidence was going to be provided.

A "proceeding" cannot simultaneously be both a proceeding where decisions and judgments are made and a ceremony where there is no discretion, decision, or judgment. In his letter dated January 6, 2021, VP Pence wrote that his role was largely ceremonial. The Congress recently engaged in revision work for the Electoral Count Act, where the word "ministerial" will be included to solidify that there is no decision-making. The use of "proceeding" to describe a function where no decisions were to be made by a master of ceremonies or the electoral vote

---

[13] West's Encyclopedia of American Law, edition 2. Copyright 2008 The Gale Group, Inc.
[14] https://legal-dictionary.thefreedictionary.com/Ministerial

talliers, and where everything was scripted for a ceremony, with not a single witness, does not meet the historical usage that required hearings and evidence for a proceeding. The operative terms prior to Section 1512 as rewritten to incorporate Section 1519 and Section 1505 were "hearing" and "evidence." January 6, 2021, was not a hearing and there was no evidence to be presented by a witness or document. The debate for any objections did not involve any witnesses or documents.

## V.      CONCLUSION

Because Count One of the Indictment fails to state any allegation where Mr. Barnett's actions fall within the ambit of conduct that is necessary for the triggering of statute 1512(c), and application of the statute is capricious and arbitrary, Mr. Barnett's motion to dismiss should be granted.

WHEREFORE, Defendant, Richard Barnett moves this Honorable Court to dismiss Count One of the Indictment for failure to state an offense for 18 U.S.C. Section 1512 (c)(2) and 18 U.S.C Section 2; and for unconstitutional application of both statutes.

Dated September 22, 2022                              Respectfully submitted,

/s/ Joseph D. McBride, Esq.
Joseph D. McBride, Esq.
Bar ID: NY0403
THE MCBRIDE LAW FIRM, PLLC
99 Park Avenue, 6th Floor
New York, NY 10016
p: (917) 757-9537
e: jmcbride@mcbridelawnyc.com

**CERTIFICATE OF SERVICE**

I hereby certify on the 22nd day of September 2022, a copy of the foregoing was served upon all parties as forwarded through the Electronic Case Filing (ECF) System.

/s/ Joseph D. McBride, Esq.
Joseph D. McBride, Esq.