UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA  ) | |
| ) | |
| v.   ) | Case No. 1:21-cr-00038 (CRC) |
| ) | |
| RICHARD BARNETT,   ) | |
| ) | |
| Defendant.   ) | |

**DEFENDANT'S RESPONSE TO GOVERNMENT'S MOTION IN LIMINE ECF NO. 54 REGARDING CROSS-EXAMINATION OF U.S. SECRET SERVICE WITNESS**

Comes now the Defendant, Richard Barnett, by and through undersigned counsel, and respectfully moves this Court to deny the Government's motion in *limine* contained in ECF No. 54 in the above-captioned case, and to hear this objection with other motions in *limine* on a date to be determined by this honorable Court. Mr. Barnett asserts the following in support:

**I.    INTRODUCTION**.

Examination of Secret Service Agents should not be limited in this case because the role of the Secret Service in protecting the Vice President on January 6, 2021, is part of the facts the government must prove for the charges against Mr. Barnett.

**II.    ARGUMENT**.

The government states that "to meet its burden of proof at trial the government will call a witness from the United States Secret Service to testify that, at the time of the Capitol breach, Secret Service agents were on duty to protect Vice President Mike Pence and his two immediate family members, all of whom were present at the Capitol." ECF No. 54 at 1. Mr. Barnett should thus be able to cross-examine the Secret Service agents who testify about their roles in that process,

1

the ability to carry out that role successfully, and which parts of the Capitol were restricted as part of their governmental function of protecting the Vice President that day.

The time frame and locations involved with protecting the Vice President are important for Mr. Barnett's defense. Specifically, questions are required that will show Mr. Barnett's timeline and location in relation to the general area the Vice President was located. Given the charges, it is necessary to ascertain what area the United States Secret Service designated and believed was restricted on January 6, 2021, and then for other times when the Vice President went to the U.S. Capitol, including use of his non-temporary office maintained there, what was restricted.

Questions are required to ascertain times prior to and after the Vice President and his family were transported from or within the Capitol grounds. These areas for cross-examination are not extraneous matters or unduly prejudicial as they go to the heart of whether Mr. Barnett's presence at the Capitol on January 6th impeded the Secret Service from fulfilling its functions and whether the building and grounds were indeed still restricted at the time of his alleged entry.

The government claims that the Secret Service protocols about relocation and safety are irrelevant to this case as they do not tend to make a fact of consequence more or less probable. (ECF No. 54 at 4). Answers may be dispositive because, for example, if the Vice President relocated to an area near the edge of one side of the Capitol, did the Secret Service restricted area then extend outside the Capitol boundary while another part of the grounds fell outside the initial standard restricted distance if such a distance exists? Did the Secret Service review the approved permitted rallies scheduled to be on grounds that the USCP marked on a map that they alone retained? These facts are not inconsequential.

The government and January 6 Select Committee together have elaborated about the conduct of defendants at the Capitol without distinguishing distances, sides of the building, or

separate interior areas and floors. The government uses a mountain of evidence through summary witnesses, in complaints and affidavits made public when what they present has nothing to do with the charges against specific defendants. The government does not even distinguish the activity on the west side of the Capitol from that on the east side when the distinctions are analogous to a "Tale of Two Cities." No defendant who was not in the west "tunnel area" can have known what was going on there without witnessing the police attacks on the crowd. Yet the government and January 6 Select Committee deceptively present all defendants as having participated everywhere at every time. The pictures and videos are heavily edited to make it appear as if every defendant was part of a joint endeavor. All defendants are now declared as insurrectionists and domestic terror threats to America by the U.S. President, DOJ, FBI, and many judges in the D.D.C. Because of this, Mr. Barnett has to overcome the disinformation that has been distributed across all media, and set out a timeline of who was where, and whether the area was or should have been referred to as *restricted*.

      Notably, to make the point of what was or what was not restricted, the construction workers assigned to work on the inauguration platform were at work on the Capitol grounds on January 6, 2021, and they were not told to leave the area by the USCP until the arrival of the first large wave of protestors. It is important to determine whether the U.S. Secret Service cleared those workers to be present on the grounds all day, and why they were cleared if the entire grounds were in fact restricted. It is important to highlight that the grounds were not in fact "fully closed" and to learn who if anyone the U.S. Secret Service cleared to be within the restricted area - if they were even involved with its potentially capricious designation. It is important to note what signage is normally used to give notice of a designated restricted area, versus the use of bicycle racks marked "Property of the US Capitol Police."

The January 6th Select Committee Hearings have exposed much of the evidence surrounding Vice President Pence's departure to the public as an emergency evacuation already, and exposure to this categorization will include members of our jury. They will have seen the footage and listened to the prejudicial communications by Secret Service officers who allegedly said goodbye to family members over the radio and on phone calls as protestors entered the building.[1] The hearings have played CCTV video of the evacuation of Vice President Pence, identified the location of his exit, and even exposed these communications between Secret Service officers during the time period of that evacuation. In fairness, Mr. Barnett should be able to explore with these agents on cross-examination all of these things, even if only one seated juror admits to having seen the January 6th Select Committee hearings. Given that just today a news story revealed an FBI Whistleblower who claims the FBI after January 6 marked areas as restricted that were not marked as such on January 6, 2021,[2] it is even more important to understand what, when, and where the US Secret Service expects to be categorized as a "restricted area" based on the location of a protected person.

How and when the Capitol was restricted on Jan 6, 2021, to whom that restriction was communicated, and who had the power to override that restriction are all relevant to the charges that Mr. Barnett entered a building restricted by the Secret Service that day. Whether the discovery of the pipe bombs at the Democrat and republican Nation Committee buildings was conveyed and when to the Secret Service, and what role that played in the removal of the Vice President is significant. If the pipe bombs off the Capitol grounds were near enough that the USCP went outside its grounds' jurisdiction, committed resources, and took the lead instead of the FBI or Metropolitan

---

[1] https://www.foxnews.com/politics/mike-pence-secret-service-agents-feared-lives-saidgoodbyes-family-jan-6-committee
[2] FBI hero paying the price for exposing unjust 'persecution' of conservative Americans.

Police for D.C. prior to or around 1:00 p.m., it is important to know why no sweeps of the US Capitol grounds were done and why the Secret Service had no concerns. How and when the decision to remove the Vice President was made, by whom and for what reason(s); how it was executed; when it was executed; and when it was deemed that the Vice President was out of danger are material to Mr. Barnett's defense.

### III. CONCLUSION

Because this material information must be explored on cross-examination, the government's motion to preclude such cross-examination should be denied. While details related to the number of agents assigned can be stipulated to as off-limits for exposure, other details as highlighted above and specifically related to January 6, 2021, are required.

Wherefore, Mr. Barnett respectfully moves this court to deny the government's motion at ECF No. 54.

Dated September 22, 2022             Respectfully submitted,
New York, NY                          /s/ *Joseph D. McBride, Esq.*

                                            Joseph D. McBride, Esq.
                                            Bar ID: NY0403
                                            THE MCBRIDE LAW FIRM, PLLC
                                            99 Park Avenue, 6th Floor
                                            New York, NY 10016
                                            p: (917) 757-9537
                                            e: jmcbride@mcbridelawnyc.com

## CERTIFICATE OF SERVICE

I hereby certify on the 22nd day of September 2022, a copy of the foregoing was served upon all parties as forwarded through the Electronic Case Filing (ECF) System.

<u>/s/ Joseph D. McBride, Esq.</u>
Joseph D. McBride, Esq.