**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| v. | Case No. 21-cr-38 (CRC) |
| **RICHARD BARNETT**, | |
| Defendant. | |

## OPINION AND ORDER

Richard Barnett stands charged in a seven-count indictment for his participation in the events at the U.S. Capitol on January 6, 2021 ("January 6th"). See Indictment, ECF No. 19. A jury trial is scheduled for December 12, 2022. In advance of that trial, the parties have filed a variety of legal motions and motions *in limine*. This order will resolve the legal motions; the Court will reserve judgment on the motions *in limine* until the pre-trial conference.

### I. Background

The Court need not recount the events surrounding the breach of the U.S. Capitol on January 6, 2021 and the resulting suspension of the joint session of Congress that convened that day to certify the Electoral College vote for the 2020 presidential election. See United States v. Robertson, 588 F. Supp. 3d 114, 117–19 (D.D.C. 2022); United States v. Strand, No. 21-cr-85 (CRC), ECF No. 88 at 1–3 (D.D.C. Aug. 17, 2022); United States v. Egtvedt, No. 21-cr-177 (CRC), ECF No. 93 at 1–3 (D.D.C. Nov. 4, 2022). As is relevant here, the government alleges that defendant Richard Barnett was among the crowd that breached the Capitol. See Aff. in Supp. of Criminal Compl. at 2. It further alleges that Barnett's foray through the Capitol included a stop in Speaker of the House of Representatives Nancy Pelosi's office. Id. at 1–2. While there, Barnett lounged at a desk with his feet up and posed for photos. Id. Barnett also drafted a profane note for Speaker Pelosi and left with an official envelope addressed from her to

a fellow House member.  Id.  The government filed a criminal complaint against Barnett the next

day and ultimately secured an indictment on January 29, 2021.  See Criminal Compl., ECF No.

1; Indictment, ECF No. 19.  The indictment charges Barnett with seven counts, including

obstruction of an official proceeding, entering a restricted building with a deadly or dangerous

weapon, and theft of government property.

**II.     Defendant's Motion to Dismiss All Charges or Transfer Venue**

Barnett moves to dismiss all charges against him on the ground that publicity surrounding

January 6th has tainted the jury pool throughout the country.  Mot. Dismiss All Charges, ECF

No. 80.  In the alternative, Barnett moves to transfer venue to the Western District of Arkansas,

where he resides.  Mot. Transfer Venue, ECF No. 81 (identical to ECF No. 80).  The Court will

deny both motions.

A.  Legal Standard

"In all criminal prosecutions," the Sixth Amendment guarantees "the accused" the right

to trial "by an impartial jury" in the "district wherein the crime shall have been committed[.]"

U.S. Const. amend. VI.  "The Constitution's place-of-trial prescriptions, however, do not impede

transfer of the proceeding to a different district at the defendant's request if extraordinary local

prejudice will prevent a fair trial[.]"  Skilling v. United States, 561 U.S. 358, 378 (2010).

Federal Rule of Criminal Procedure 21(a), in turn, mandates transfer for trial "if the court is

satisfied that so great a prejudice against the defendant exists" in this district "that the defendant

cannot obtain a fair and impartial trial."

To protect the right to an impartial jury, courts conduct voir dire to identify unqualified

jurors and dismiss them from the jury pool.  Morgan v. Illinois, 504 U.S. 719, 729 (1992).  "[I]f

an impartial jury actually cannot be selected, that fact should become evident at the voir dire."

United States v. Haldeman, 559 F.2d 31, 63 (D.C. Cir. 1976) (en banc) (per curiam).

Accordingly, the "well established procedure" in this Circuit directs district courts to "refus[e] [defendants] pre-voir dire requests for . . . a change of venue." Id.  After the voir dire process is when "it may be found that, despite earlier prognostications, removal of the trial is necessary." Jones v. Gasch, 404 F.2d 1231, 1238 (D.C. Cir. 1967).

      B.  Motion to Dismiss All Charges

      Barnett maintains that a speech given by President Biden on September 1, 2021, in which he discussed January 6th and made statements related to supporters of former President Donald Trump, "incited the entire nation to hate the January 6th defendants as a patriotic duty." Mot. Dismiss All Charges at 9.  Barnett asserts that the speech, as well as the hearings held by the House Select Committee on January 6th, have poisoned the national jury pool, resulting in "reverse jury nullification." Id. at 10.  Even with proper questioning, Barnett claims, "a juror's impartiality will not become evident at voir dire." Id. (italics omitted).  The Court disagrees.

      Barnett offers no authority explaining how publicity can disqualify all prospective jurors throughout the country.  Even if a potential juror knows about the events of January 6th or heard the President's speech, it does not follow that the potential juror is necessarily unqualified to sit on the jury.  "It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court." Irvin v. Dowd, 366 U.S. 717, 723 (1961).  It would be unreasonable to think that twelve impartial jurors cannot be found in this District—let alone all 94 federal districts.

      Moreover, federal district courts, including this one, have empaneled impartial jurors in many high-profile cases.  See, e.g., Skilling, 561 U.S. at 399 (finding no prejudice in Enron Corporation CEO's jury); United States v. Haldeman, 559 F.2d 31, 70-71 (D.C. Cir. 1976)

(affirming the impartiality of the jury in Watergate case); United States v. McVeigh, 153 F.3d 1166, 1222 (10th Cir. 1998) (affirming conviction of Oklahoma City bomber after finding no evidence of a prejudicial jury).  This case is no different.  Barnett offers no factual support for his assumption that the President's speech reached and instilled a commitment to "reverse jury nullification" in every eligible juror in the country.

Finally, Barnett is incorrect that a juror's impartiality would not become evident during voir dire.  "[V]oir dire has long been recognized as an effective method of routing out . . . bias, especially when conducted in a careful and throughgoing nature." In re Nat'l Broad. Co., 653 F.2d 609, 617 (D.C. Cir. 1981) (footnote omitted).  As the Court noted in denying a venue transfer motion in another January 6th case, it is confident that the voir dire process will yield a fair jury in this case despite the considerable publicity surrounding the events.  See United States v. Strand, No. 21-cr-85 (CRC), ECF 89 at 3.  Many potential jurors in the Court's prior January 6th trials have indicated that they have only followed the story in passing since the events occurred.  And others who have kept abreast of the news coverage swore that they would decide the case impartially based solely on the evidence.  The Court believes the juries in those cases did just that.

C. Motion to Transfer

In the alternative, Barnett asks that the Court transfer the case to the Western District of Arkansas, where he is from.  Citing privately commissioned opinion polls, he maintains that it is the only district "where he has any chance of selecting a fair and impartial jury of his peers[.]" Mot. Transfer 33.  For the same reasons stated above, Barnett's pre-voir dire motion to transfer is premature.

Further, the opinion polls which Barnett relies on are not substitutes for "comprehensive voir dire examination" while prospective jurors are under oath.  See Haldeman, 559 F.2d at 64 n.43 (trial court did not err in declining to rely on public opinion poll commissioned by the defense); see also United States v. Rodriguez, 581 F.3d 775, 786 (8th Cir. 2009) (collecting circuit cases that "have declined to rely on public opinion polls when reviewing denials of motions for change in venue in criminal cases").  Additionally, as with all trials and unlike the polling Barnett references, the jury will be instructed on the presumption of innocence, and the Court will question any "bias or prejudice that would prevent [jurors] from returning a verdict according to the law and evidence" presented in the case.  See United States v. Tsarnaev, 142. S. Ct. 1024, 1034 (2022) (citation omitted).

The Court does not doubt that, given the extensive media coverage, many prospective jurors will be generally knowledgeable about the events of January 6th.  But, "the right to an impartial jury does not require ignorance."  Id. (cleaned up) (quoting Skilling, 561 U.S. at 381).  Accordingly, the Court will determine whether individual prospective jurors harbor bias or prejudice and whether an impartial jury can be impaneled through voir dire, as it has done in other January 6th trials.

**III.  Defendant's Motion to Dismiss Count One**

Barnett moves to dismiss count one—obstruction of an official proceeding in violation of 18 U.S.C. § 1512(c)(2)—for failure to state a claim.  The Court has already addressed and rejected several of the arguments that Barnett advances, and any novel arguments are unpersuasive.  Accordingly, the Court will deny the motion.

A.  Legal Standards

A criminal defendant "may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits."  Fed. R. Crim. P. 12(b)(1).  Among other things, defendants may challenge "a defect in the indictment," including "failure to state an offense."  Fed. R. Crim. P. 12(b)(3)(B)(v).  Because pretrial dismissal of an indictment "directly encroaches upon the fundamental role of the grand jury, dismissal is granted only in unusual circumstances."  United States v. Ballestas, 795 F.3d 138, 148 (D.C. Cir. 2015) (internal quotation marks omitted).  "The operative question is whether the allegations" in the indictment, "if proven, would be sufficient to permit a jury to find that the crimes charged were committed."  United States v. Sanford, Ltd., 859 F. Supp. 2d 102, 107 (D.D.C. 2012).

B.  Relevant Statutory Text

Section 1512 provides in relevant part that:

(c) Whoever corruptly—

> (1) alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with intent to impair the object's integrity or availability for use in an official proceeding; or

> (2) otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so,

shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 1512(c).  The term "official proceeding" includes within its meaning, "a proceeding before the Congress."  § 1515(a)(1)(B).

C.  Analysis

Barnett opposes his Section 1512 charge on the grounds that his actions do not fall within the scope of the statute and that the statute is unconstitutionally vague as applied to him. Neither challenge is convincing.

First, Barnett maintains that he could not have violated § 1512(c)(2) because this part of the statute was created "for actions taken by people against documents and tangible evidence" and he is charged with no such action.  Mot. Dismiss Count One at 9.  The Court has previously ruled that a Section 1512(c)(2) charge need not allege that a defendant took an action with respect to a document, record, or other object and stands by its prior decisions.  See United States v. Strand, No. 21-cr-85 (CRC), ECF 88 at 7 (D.D.C. Aug. 17, 2022); United States v. Robertson ("Robertson I"), 588 F. Supp. 3d 114, 121 (D.D.C. 2022) (Cooper, J.); see also United States v. Robertson ("Robertson II"), 2022 WL 2438546, *3 (D.D.C. July 5, 2022) ("Naturally read, subsection (c)(1) is about the alteration of evidence and hindering its use in an official proceeding; subsection (c)(2) is about 'otherwise,' meaning in a different way than what's provided in (c)(1), hindering the official proceeding itself." (internal citation omitted)); Egtvedt, No. 21-cr-177 (CRC), ECF 93 at 7–8 (D.D.C. Nov. 4, 2022).  The Court stands by these rulings here.

Next, Barnett contends that count one is unconstitutionally vague as applied because it does not inform him of who he allegedly aided and abetted nor "how, and for what."  Mot. Dismiss 11.  He claims "[n]o person can know what will make their actions a crime under § 1512(c)(2) as applied[]" because the statute is vague in its "interpretation and application."  Id. The Court disagrees.  Section 1512(c)(2) does not leave people in the dark about "what will make their actions a crime" under the statute.  Id.  The Court has considered many of the same arguments and concluded that § 1512(c)(2) is not unconstitutionally vague, either by its terms or in its application to the events of January 6.  See United States v. Groseclose, No. 21-cr-311 (CRC), ECF 50 at 14–15 (D.D.C. Sept. 13, 2022); Robertson I, 588 F. Supp. 3d at 122-23 (finding that the exercise of prosecutorial discretion in the government's charging decisions

related to January 6 does not raise any vagueness concerns);  Robertson II, 2022 WL 2438546, at

*3–4;  United States v. Egtvedt, No. 21-cr-177 (CRC), ECF 93 at 8;  United States v. Mostofsky,

579 F. Supp. 3d 9, 26 (D.D.C. 2021) ("reject[ing] the notion that" applying § 1512(c)(2) to the

defendant's conduct "is so 'unexpected and indefensible by reference to the law which had been

expressed prior to the conduct at issue'" (quoting Bouie v. City of Columbia, 378 U.S. 347, 354

(1964)); United States v. Nordean, 579 F. Supp. 3d 28, 52 (D.D.C. 2021) (same).  Again, the

Court adopts that reasoning here.

     Finally, Barnett maintains that Congress's certification of the election results is not an

"official proceeding" under § 1512(c)(2).  The Court has already ruled in several cases that the

certification of the Electoral College votes is an official proceeding under the statute.  See

Strand, No. 21-cr-85 (CRC), ECF 88 at 5; Robertson I, 588 F. Supp. 3d at 120-22; Robertson II,

2022 WL 2438546, at *2 (holding that "[t]he plain, obvious and common sense meaning of"

official proceeding "reaches the Certification of the Electoral College vote" (internal quotation

omitted)); Egtvedt, No. 21-cr-177 (CRC), ECF 93 at 5–7.  Barnett's motion does not raise any

arguments warranting a different outcome.  The Court fully adheres to its prior reasoning and

directs the parties to those opinions.

     For all these reasons, Barnett's motion to dismiss count one is denied.

## IV.  Government's Motion to Strike

     As it has in numerous January 6th cases, the United States moves to strike portions of the

indictment that reference the "Vice President-elect" in the counts charging Barnett with

violations of 18 U.S.C. § 1752.  Barnett has not opposed this motion.  The Court therefore grants

the motion and amends all references in the indictment of "where the Vice President and Vice

President-elect were temporarily visiting" to "where the Vice President was temporarily visiting."

## V.    Motions in Limine

Both the United States and Barnett filed motions in limine to limit the types of evidence and arguments that can be raised at trial.  The Court will take up these arguments at the pretrial conference.

## VI.    Conclusion

For the foregoing reasons, it is hereby

**ORDERED** that [80] Defendant's Motion to Dismiss All Charges is DENIED.  It is further

**ORDERED** that [81] Defendant's Motion to Transfer Venue is DENIED.  It is further

**ORDERED** that [74] Defendant's Motion to Dismiss Count One DENIED.  It is further

**ORDERED** that [56] Government's Motion to Strike Portions of the Indictment is GRANTED.

**SO ORDERED**.


_____
CHRISTOPHER R. COOPER
United States District Judge

Date:  November 23, 2022