UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | Case No. 21-CR-38 (CRC) |
| v. : | |
| : | |
| RICHARD BARNETT : | |
| also known as "Bigo Barnett," : | |
| : | |
| Defendant. : | |

## MOTION TO EXCLUDE THE PROPOSED EXPERT TESTIMONY OF MARK K. SNELL AND STEVE HILL

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby moves to exclude the defendant's proposed expert testimony of Mark K. Snell and Steve Hill.[1] The defendant should be barred from presenting the proposed expert testimony for three reasons. First, neither Mr. Snell nor Mr. Hill is qualified to opine on the particular subjects for which they are noticed. Second, even if they were qualified to opine on those topics, both experts' opinions rely on speculation and unreliable or wholly made-up facts. Third, the defendant seeks to call both experts to testify as to matters that are irrelevant. Finally, Mr. Snell's proffered testimony as to the ultimate guilt or innocence of the defendant should not be allowed under established D.C. Circuit precedent.

---

[1] Defendant's counsel previously attempted to call these same experts to offer their opinions on nearly identical matters during the recent trial in *United States v. Rhodes, et al.*, 1:22-cr-15-APM (also known as the first Oath Keepers trial). *See id.*, ECF Nos. 267, 285. In fact, the defendant's notices for Mr. Snell and Mr. Hill in this case appear to be cut-and-pasted from those provided in the Oath Keepers case. *Compare, e.g., Rhodes* ECF No. 285 *and* Attachment 1 (Notice of Defense Expert – Mark K. Snell). Ultimately, Judge Mehta did not allow either Mr. Snell or Mr. Hill to testify on these matters.

Alternatively, if the Court finds that it does not yet have sufficient information in the record to exclude Mr. Snell and Mr. Hill, the United States requests a *Daubert* hearing.[2]

## BACKGROUND

### I. Factual Background

The defendant is charged in an eight-count superseding indictment in connection with his actions at the U.S. Capitol on January 6, 2021. ECF No. 96. On that date, a joint session of the United States Congress convened at the United States Capitol at approximately 1:00 p.m. to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on November 3, 2020. Temporary and permanent barricades were in place around the exterior of the U.S. Capitol building, and U.S. Capitol Police (USCP), assisted by members of the Metropolitan Police Department (MPD), were present and attempting to keep the crowd that had gathered outside away from the Capitol building and the proceedings underway inside.

Shortly after 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of the USCP, as others in the crowd encouraged and assisted those acts. Within minutes, rioters flooded the Capitol building and fanned out within it. Some of them were armed. Some explicitly called for violence against lawmakers. At approximately 2:20 p.m., with rioters gathered just outside the House and Senate chambers, members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Mike Pence, suspended the joint session of Congress and evacuated the chambers.

---

[2] "[I]f necessary, [a c]ourt shall consider a request that a *Daubert* hearing be held to evaluate [the expert's] proffered testimony." *Sloan v. Urban Title Servs., Inc.*, 770 F. Supp. 2d 227, 238 (D.D.C. 2011).

The defendant was among the rioters who invaded and occupied the U.S. Capitol building. At approximately 2:43 p.m., the defendant—along with a crowd of other rioters—pushed his way into the U.S. Capitol through the east side Rotunda doors while carrying a U.S. flag and an energy weapon, specifically a ZAP Hike 'n Strike Hiking Staff advertised as being capable of delivering a 950,000 volt shock, which he had purchased seven days earlier. The defendant had demonstrated the capabilities of the energy weapon the night before in his hotel lobby and had highlighted the energy weapon, as well as the metal pole inside the flag, on social media before he traveled to D.C. Once inside the Capitol building, the defendant made his way to the office suite of Speaker of the House of Representatives Nancy Pelosi. While there, he took photographs with his feet propped up on furniture that were later circulated broadly to the public. He also left a menacing handwritten note for Speaker Pelosi.

The defendant was told to leave the Speaker's Office by a police officer. He walked to the Rotunda, where, realizing that he had left his flag behind, he started yelling at officers to let him pass to get his flag back. The defendant said words to the effect of, "we are patriots, this is our building, I need my flag, you better get my flag . . . hey, I'm going to bring them in to get my flag. Y'all better get my flag, I going to bring 'em in . . . It's going to get really bad. I'm a patriot, I want my flag. Hey, we're fixin to call 'em in brother, get my flag . . . I want my fuckin flag. It's in Nancy Pelosi's office." During this encounter in the Rotunda, the defendant began waving over other rioters, encouraging them to join the mob antagonizing the officers. At one point during this altercation, the defendant reached for and displayed his energy weapon, which had its sharp, electrified prongs exposed.

After leaving the building, while still on Capitol grounds, the defendant approached a line of police officers and shouted, "We're American citizens, we're patriots. Your boys maced me.

This is my house, y'all maced me in my own house. This is gonna get real bad, not necessarily today, we're going to calm down and leave, but y'all gotta remember something. Y'all gotta pick a fucking side. This civil war, this isn't 'oh, somebody broke the law'—the fucking Communists have declared war on us, boys." He also used a bullhorn to give a speech to the crowd, declaring to loud cheers, "We took back our house, and I took Nancy Pelosi's office!" He then gloated about his action of leaving a note for the Congresswoman, addressed her once again in disturbing terms, and, finally, initiated a chant of, "Our house." The defendant proudly displayed an envelope that he had taken from the Speaker's office, telling a news outlet, "I did not steal it. I bled on it because they were macing me and I couldn't fucking see so I figured I am in her office. I got blood on her office. I put a quarter on her desk even though she ain't fucking worth it. And I left her a note on her desk that says 'Nancy, Bigo was here, you Bitch.'" A note recovered from the Speaker's Office substantially matched the defendant's description to the media.

USCP and MPD officers spent hours on the afternoon of January 6 defending the U.S. Capitol and the assembled lawmakers and their staffs from the rioters. Both inside and outside the building, the officers were outnumbered, overwhelmed, and frequently subjected to hand-to-hand combat. Late in the afternoon, long awaited and desperately needed reinforcements arrived and the law enforcement officers were able to clear the rioters from the building. Congress still could not resume the joint session, however, until law enforcement officers determined that it was safe to do so, which involved sweeping the building for dangerous items, among other tasks. Finally, the Senate and House resumed meeting at approximately 8:06 p.m. and 9:02 p.m., respectively. Congress's joint session continued until approximately 3:44 a.m. on January 7, 2021, when it completed the certification of the Electoral College vote. Vice President Pence remained in the

United States Capitol from the time he was evacuated from the Senate Chamber until the election was certified.

The defendant provided the government with timely notice of his intent to call two expert witnesses: Mark K. Snell and Steven Hill. The United States' addresses each expert in turn below.

**ARGUMENT**

The defendant provided the government with timely notice of his intent to call two expert witnesses: Mark K. Snell and Steven Hill. Neither Mr. Snell nor Mr. Hill should be qualified as an expert on the matters for which the defendant seeks to call them, however. Even if they could be so qualified, both alleged experts appear to base their opinions on speculation and/or insufficiently reliable facts. Finally, even if the defense could surmount those first two hurdles, each issue that the defendant seeks to have Mr. Snell and Mr. Hill opine about to the jury is either irrelevant or otherwise an improper legal conclusion. The Court should not permit Mr. Snell or Mr. Hill to provide their opinions on any of these topics.

### I.     Legal Standard

Federal Rule of Evidence 702 principally governs the admission of expert testimony:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) [t]he expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) [t]he testimony is based on sufficient facts or data; (c) [t]he testimony is the product of reliable principles and methods; and (d) [t]he expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Here, the Court has "the responsibility of acting as [a] 'gatekeeper[]' to shield unreliable or irrelevant expert testimony and evidence from the jury. *United States v. Sutton*, No. CR 21-0598 (PLF), 2022 WL 16960338, at *2 (D.D.C. Nov. 16, 2022) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993)). Thus, "the twin requirements for the admissibility

5

of expert testimony are evidentiary reliability and relevance." *FTC v. Whole Foods Mkt., Inc.*, Case No. 07-cv-1021 (PLF), 2007 WL 7632283, at *1 (D.D.C. July 27, 2007). ''With respect to relevance, the Court must determine whether the proffered testimony is sufficiently tied to the facts of the case and whether it will aid the factfinder in resolving a factual dispute." *FTC v. Whole Foods Mkt., Inc.*, 2007 WL 7632283, at *1 (citing *Daubert*, 509 U.S. at 592–93). In addition to presenting reliable and relevant testimony, "an expert witness also must be "qualified" under Rule 702[,]" such that they possess sufficient "knowledge skill, experience, training or education," for their conclusions. *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 292 F. Supp. 3d 14, 49 (D.D.C. 2017) (quoting Fed. R. Evid. 702).

The defendant cannot meet these standards for either Mr. Snell or Mr. Hill, at least not on the topics for which their claimed expert testimony has been noticed.

**II.     Mark K. Snell**

The defendant intends "to designate Mark K. Snell as the defense team's expert on the evaluation of the effectiveness of security force response and emergency operations employed to protect high value facility targets." *See* Attachment 1 (Notice of Defense Expert – Mark K. Snell) at 1. According to his resume, Mr. Snell has been "[e]mployed since 2021 as needed by RhinoCorps, Ltd. Co. as a consultant for [his] expertise on addressing statistical issues associated with stochastic models being incorporated into their combat simulation software," which "is used for site vulnerability analysis" at, for example, nuclear facilities. *See* Attachment 2 (Resume of Mark Snell) at 1. The defendant wants Mr. Snell to provide the jury with his opinions about (1) the nature of the rioters' attack on the Capitol, which Mr. Snell believes was "a sophisticated, organized attack" carried out by a shadowy group who manipulated "large numbers of Trump supporters" to carry out their plans before disappearing; (2) the timing of when the USCP and U.S.

6

Secret Service (USSS) decided to "evacuate both Houses of Congress;" (3) law enforcement's reasoning behind the timing of when they gave their approval for Congress to resume the certification proceedings; and (4) the defendant's relative culpability for obstructing Congress's official proceeding as compared to that of "any one of the thousands of Trump supporters on the Capitol Grounds who did not enter the Capitol or attack police." *Id.* at 1-2

> A. Mr. Snell is not qualified to render expert opinions on the meaning of the Jan. 6 rioters' tactics; the decision-making processes, timing, or reasoning of the USCP and USSS; or the defendant's relative culpability as compared to other rioters.

The government concedes that from his resume, Mr. Snell appears to be very experienced and accomplished in his fields. At its broadest possible characterization, Mr. Snell appears to have had a long, successful career assessing the vulnerabilities of sensitive buildings, primarily nuclear facilities, and theorizing how to better protect them. But Mr. Snell's areas of expertise have little to no connection to the *sui generis* January 6 riot at the U.S. Capitol building, and even less of a connection to divining meaning from the rioters' behavior and tactics, interpreting the decisions of the USCP and USSS, or assessing the defendant's legal culpability.

According to the defendant's notice, he wishes to call Mr. Snell to testify as follows:

> Mr. Snell's opinion is that a sophisticated, organized attack on the Capitol began just before 1 PM with the intention of occupying it and flooding the building with large numbers of Trump supporters so as to allow the latter to protest outside the Chambers; and that soon after the House Chamber was evacuated sometime between 2:45 and 2:50 PM, approximately, those attackers who organized and executed these activities on the second floor then left, leaving a large number of protestors, who knew nothing about the planned assault, in place to do as the latter saw fit.

Attachment 1 at 1. Mr. Snell's familiarity with the vulnerabilities of nuclear facilities provides no legitimate basis for him to opine on whether the rioters who stormed the U.S. Capitol on January 6 were acting organically or at the covert direction of an undetected group of tactical masterminds who secretly manipulated the horde and then exited the scene once violent chaos had been sparked

7

at their target locations, as Mr. Snell apparently believes. Even if the U.S. Capitol building were anything like a nuclear facility, which it isn't, the defendant has not noticed Mr. Snell to testify about the building's weak points. Instead, the defendant intends to call Mr. Snell to extrapolate from his views of the Capitol's weak points that *because* the rioters attacked those weak points, the rioters *must* have been acting at the direction of sophisticated, knowledgeable, unidentified leaders. This is as nonsensical as it is unfounded. It is a conspiracy theory. And nothing in Mr. Snell's background or experience qualifies him to offer it to the jury, certainly not elevated on the pedestal of expert opinion testimony.

    Similarly, Mr. Snell is unqualified to speculate on the decision-making processes, timing, or rationales of USCP or USSS leadership. Yet the defendant wishes to have Mr. Snell offer the following "expert" opinions:

> As to the US Capitol Police and the Secret Service, it is his opinion that the decision to evacuate both Houses of Congress was reached between approximately 2:20 and 2:35 p.m. and that a decision was made to not resume Certification of the Electoral Votes until, among other requirements, the Restricted Capitol Grounds (not just the Capitol Building by itself) were cleared.

Attachment 1 at 2. First, these are not opinions at all. The time at which USCP, USSS, and Congressional leadership decided to evacuate the House and Senate chambers is a matter of <u>fact</u>. It just isn't a fact Mr. Snell knows because he had no role in that decision-making or window into it, so he has nothing to offer but his speculation on when he *thinks* that decision was reached by others. This provides no benefit to the jury. Similarly, the requirements set by USCP, USSS, and Congressional leadership for deeming the Capitol sufficiently secure to resume the Joint Session are matters of <u>fact</u>. If these facts were relevant and material to this trial, either party could choose to call an appropriate fact witness—presumably someone from the USCP, USSS, or Congress who participated in these decisions—to establish them. But Mr. Snell is not such a witness.

Even were these matters of opinion, Mr. Snell has no relevant experience that would qualify him to opine on them as an expert. He has no law enforcement experience at all. He is not, and never has been, part of the leadership of the USCP, USSS, or Congress. And he has no experience making security decisions in the midst of a riot, let alone one at the U.S. Capitol at a time when over 500 members of Congress were assembled with the Vice President on site.

Finally, the defendant also wishes to call Mr. Snell as an expert to give his opinion on the defendant's general culpability relative to other January 6 rioters, and specifically his guilt on Count Two, the charged violation of 18 U.S.C. § 1512(c)(2) (obstruction of an official proceeding). As stated in the defendant's notice

> The further conclusion [Mr. Snell] reaches is that the activities involving in purposely and corruptly storming and occupying the Capitol on the one hand; and those involved in putting the Certification into recess, evacuating the Chambers, and clearing the Grounds on the other, were not affected in any more significant way by Mr. Barnett compared to how these activities were affected by any one of the thousands of Trump supporters on the Capitol Grounds who did not enter the Capitol or attack police. Thus Mr. Barnett did not corruptly contribute to obstructing or impeding an official proceeding by delaying any activities such as evacuation on the front end or in clearing the grounds so Certification could resume on the back end. Nor did he corruptly influence that proceeding by entering and remaining in the United States Capitol without authority and engaging in disorderly and disruptive conduct because all the members of Congress had been evacuated to other buildings off the Capitol Grounds.

Attachment 1 at 2.

Mr. Snell is not qualified to offer these opinions in the guise of expertise. He is not a judge or a lawyer. He has no legal training. He has no other experience with criminal law. He has not compared the evidence in this case to the evidence gathered by law enforcement concerning the "thousands of other Trump supporters on Capitol Grounds" that he relies upon as his comparison group. He has not sat through the government's presentation of evidence in this case or any other. Moreover, he was not present in the Capitol on January 6 or in any meetings held during the riot

9

or about it by any involved group, such as Congress, the USCP, the MPD, the USSS, the Department of Justice, the FBI, the Department of Defense, the National Guard, the White House, or any other official body. He is not remotely qualified to offer his opinion that the defendant's actions impacted Congress no more than any of the other rioters unlawfully present on the Capitol grounds.

### B. Mr. Snell's proffered opinions are based on speculation.

An expert's testimony must be "based upon sufficient facts or data" and must also be "the product of reliable principles and methods," applied "reliably to the facts of the case." Fed. R. Evid. 702. Yet here, Mr. Snell's proffered testimony consists primarily of, and relies upon, facts that have not been shown or found to exist. The defense has therefore failed establish a proper basis for *opinion* testimony. *See id.*

Mr. Snell's opinion that the January 6 riot was a "sophisticated, organized attack" on the Capitol led by an undiscovered group of antagonists who covertly manipulated an unwitting mob of Trump supporters to execute their plan is not "the product of reliable principles and methods." *Id.* Indeed, it does not appear to be the product of any principles or methods at all, other than perhaps Mr. Snell watching television, perusing the Internet, and examining public documents. There is no evidence that such a group of secret masterminds exists or was behind the January 6 riot. But like all conspiracy theories—such as the "9/11 Truthers" movement of which this conspiracy theory is a cousin—the absence of evidence for it is a strength, not a fatal weakness; it supposedly underscores just how deep the conspiracy goes. Regardless, the defense cannot show that Mr. Snell's opinions about the nature of the rioters' tactics are reliable. *Sutton*, 2022 WL 16960338, at *2. His proffered opinion testimony is not "sufficiently tied to the facts of the case[.]"

10

*United States v. Naegele*, 471 F. Supp. 2d 152, 157 (D.D.C. 2007). Nor would it "aid the jury in resolving a factual dispute." *Id.*

Similarly, Mr. Snell has no "specialized experience or reliable method to draw upon" to form a reliable opinion about when the USCP, USSS, and Congress decided to evacuate or what conditions they set to find the Capitol sufficiently secure to resume the certification proceeding. *See Est. of Stuller v. United States*, 811 F.3d 890, 896 (7th Cir. 2016). As discussed above, Mr. Snell was not part of those decisions and he does not have access to any records that would give him particular or specialized insight into them. Instead, Mr. Snell's proffered testimony inappropriately "rests solely on 'subjective belief or unsupported speculation[.]'" *Groobert v. President & Directors of Georgetown Coll.*, 219 F. Supp. 2d 1, 6 (D.D.C. 2002) (citing *Daubert*, 509 U.S. at 590); *see also, e.g.*, *DePaepe v. Gen. Motors Corp.*, 141 F.3d 715, 720 (7th Cir. 1998) (concluding that the expert "could not testify as an expert that [a party] had a particular motive"); *Sykes v. Napolitano*, 634 F. Supp. 2d 1, 9 (D.D.C. 2009) (rejecting expert opinion where a party "attempts to offer, as 'expert testimony,' the conclusion that [a government agent] had bad motives" and concluding that "[t]his is not expertise[;] [the expert] offers only his lay opinions about the credibility of others he has never even met").

Mr. Snell's proffered testimony about the relative role or culpability of the defendant as compared to other rioters is pure speculation at well. He has not experienced the government's trial presentation. He does not have comprehensive knowledge of the conduct of, and evidence against, all of the other "thousands of Trump supporters on the Capitol Grounds" to whom he seeks to compare this defendant. And he has no insight into the experiences of the Vice President, the members of Congress forced to pause the Joint Session and evacuate, or the law enforcement officers tasked with defending the Capitol and then clearing it. In short, Mr. Snell's opinion is

based solely on his speculation about the conduct and experiences of others about whom he has little to no information.

### C. Several of Mr. Snell's proffered opinions are irrelevant.

Even if Mr. Snell were qualified to give the opinions the defendant seeks to present to the jury as expertise, and even if Mr. Snell's opinions were based on reliable principles and methods, the Court should still exclude them because they are irrelevant. First, while the defendant's conduct during the riot is relevant, as is his intent, the intent or manipulative efforts of unknown others is not. The defendant is not charged with conspiracy. Even if there had been a shadowy cabal of *agents provocateurs*, their efforts to inspire and direct the mob would not absolve the defendant of his conduct or make him any less guilty of the crimes with which he has been charged. On the second issue, while the timing of when the responsible parties decided to evacuate Congress and why they decided to resume might be relevant, Mr. Snell's *opinions* about these matters are not. These are matters of fact that Mr. Snell is not the right witness to establish.

Moreover, the questions of *what time* the evacuation decision occurred and the conditions set for resuming the certification proceeding are not beyond the capability of the jury to determine after hearing testimony from witnesses with knowledge of those facts, so "expert" testimony on those topics would be inappropriate. *United States v. Gonzalez-Maldonado*, 115 F.3d 9, 17–18 (1st Cir. 1997) ("Expert testimony on a subject that is well within the bounds of a jury's ordinary experience generally has little probative value. On the other hand, the risk of unfair prejudice is real. By appearing to put the expert's stamp of approval on the government's theory, such testimony might unduly influence the jury's own assessment of the inference that is being urged") (citation omitted); *Sonrisa Holding, LLC v. Circle K Stores, Inc.*, 835 F. App'x 334, 339 (10th Cir. 2020) ("expert testimony is unnecessary if the question does not require specialized or technical

knowledge.") (quotations omitted); *United States v. Davis*, 772 F.2d 1339, 1343–44 (7th Cir. 1985) ("Expert testimony is not admissible under Rule 702 if it will not assist the jury in understanding the evidence or determining a fact in issue or it is purely speculative."); *United States v. Montas*, 41 F.3d 775, 783 (1st Cir. 1994) ("There is no more certain test for determining when experts may be used than the common sense inquiry whether the untrained layman would be qualified to determine intelligently and to the best degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute."). The proffered testimony poses two potential problems. First, it seeks to place an expert's stamp of approval on a determination that the jury can make on its own. Second, it opens a backdoor for the defense to admit evidence that would otherwise be inadmissible under Rules 402 and 403.

Next, while the defendant's role and culpability in general, and his guilt of Count Two in particular, are core issues for this trial, his *relative* role or culpability is irrelevant. While the defendant's relative culpability is a proper issue at sentencing, the Court should explicitly instruct the jury <u>not</u> to consider how the defendant compares to others in their assessment of whether he is guilty of the crimes with which he is charged. To suggest otherwise is to invite the jury to engage in improper nullification, acquitting the defendant not because they find a lack of proof, but rather because they view others as *even more* guilty. Indeed, the D.C. Circuit has noted that trial courts may exclude expert testimony that purports to "assign[] specific roles to individual defendants" as unfairly prejudicial under Federal Rule of Evidence 403. *United States v. Boney*, 977 F.2d 624, 631 (D.C.Cir.1992). Consequently, Mr. Snell should be prohibited from providing his "expert" opinion that the defendant's conduct was no worse or impactful than many others'.

> D. *Mr. Snell's proffered opinion as the defendant's ultimate guilt or innocence exceeds the bounds of proper expert testimony.*

Mr. Snell's opinion that "Mr. Barnett did not corruptly contribute to obstructing or impeding an official proceeding" is patently improper. Although in certain circumstances, a qualified expert using reliable facts and methodology may opine as to issues to be determined by the trier of fact, the D.C. Circuit has made clear that "an expert may not testify on the ultimate question of guilt or innocence." *Boney*, 977 F.2d 624 *at* 630; *accord United States v. Sobin*, 56 F.3d 1423, 1427–28 (D.C. Cir. 1995) (noting that "an expert is forbidden to offer" an opinion as to "the ultimate question of guilt or innocence"); *see also United States v. Lockett*, 919 F.2d 585, 590 (9th Cir.1990) ("A witness is not permitted to give a direct opinion about the defendant's guilt or innocence."); *United States v. Masson*, 582 F.2d 961, 964 n. 5 (5th Cir.1978) (holding that trial judge correctly refused to permit defendant's attorney to ask witness whether he believed the defendant was guilty).

**II.    Steve Hill**

The defendant intends "to designate Steve Hill as the defense team's expert on the evaluation of in the fields of [*sic*] use-of-force, self-defense[,] and energy weapons training." Attachment 3 (Notice of Defense Expert – Steve Hill) at 1. According to the defendant and Mr. Hill's resume, Mr. Hill is a retired police officer, systems engineer, and "protective force" trainer. *See id.*; Attachment 4 (Resume of Steven K. Hill at 1-2). The defense offers Mr. Hill's testimony on two distinct matters. First, the defendant intends to call him as "a rebuttal witness" regarding "the use-of-force by the defendant and [ ] the use-of-force by police officers when confronted by citizens in possession of various weapons[.]" Attachment 3 at 2. Second, the defendant seeks to allow Mr. Hill to present the jury with his opinions (1) about what actions law enforcement officers had to undertake before the certification proceedings could resume; and (2) that the defendant's

"presence was immaterial to these operations and had no effect on when the proceedings were suspended or restarted." *Id.* at 3.

> A. *Mr. Hill is not qualified to opine on either the actions law enforcement officers had to take before Congress could resume the Joint Session, or the materiality of the defendant's presence and actions in the Capitol to those activities.*

Mr. Hill, like Mr. Snell, is not qualified to opine on the topics for which the defendant has noticed him as an expert and sought to allow the jury to hear his unfounded opinions. According to the defendant's notice, he specifically wishes to call Mr. Hill to testify on the following two topics:

> [I]t is Mr. Hill's opinion that [1] once the evacuation decision was made, a complex set of clearance activities needed to occur in and around the Capitol and grounds before operations could recommence. This complex activity required numerous first response agencies to conduct building searches, searches for explosives and clearing operations. [2] Mr. Barnett's presence was immaterial to these operations and had no effect on when the proceedings were suspended or restarted.

Attachment 3 at 3. On these two topics, Mr. Hill fails to qualify as an expert for the same reasons as Mr. Snell.[3] Mr. Hill does not appear to have any specialized background or experience with

---

[3] The defendant has also noticed Mr. Hill as an expert on a third topic, declaring in his notice that

> Mr. Hill will be a rebuttal witness to state witnesses who testify on the use-of-force by the defendant and to the use-of-force by police officers when confronted by citizens in possession of various weapons.

Attachment 3 at 2. The defendant is not charged with assault or the use of force, nor did any officer use force against him. The United States guesses that this notice serves as an indirect reference to Counts 5 and 6, the two charges that allege the defendant carried an energy weapon, specifically a ZAP Hike 'n Strike Hiking Staff, into the Capitol, that the energy weapon was capable of causing serious bodily injury, and that the defendant intended to use it as such.
    The United States recognizes that, based on his resume, Mr. Hill might be an appropriate rebuttal witness on one or more issues surrounding Counts 5 and 6. But the defendant has failed to provide notice of the <u>substance</u> of Mr. Hill's opinion(s) on these matters, *i.e.*, the specific opinions the defendant expects Mr. Hill to share with the jury. Accordingly, the defendant's notice is inadequate on this topic, and the government cannot assess Mr. Hill's suitability as an expert on such "use-of-force" issues at this time.

Congress, the USCP, the USSS, or the U.S. Capitol building and grounds. Consequently, there is no basis for allowing him to muse to the jury about what he *thinks* the USCP and Congress had to do to clear the rioters, secure the building, and resume the certification proceeding. These are matters beyond his knowledge and experience. On these topics, he is an outsider or armchair quarterback, not an expert.

For the same reasons, Mr. Hill is also unqualified to opine on how material or problematic the defendant's presence in the Capitol building was for the USCP, MPD, USSS, and Congress. As he has no special training or experience with those organizations or the site of the riot, he has no expertise about their operations or considerations to offer the jury. It follows then that Mr. Hill is also unqualified to provide his "expertise" about whether the defendant's presence and conduct had an "effect on when the proceedings were suspended or restarted." *Id.* He wasn't there. He wasn't involved. He wasn't briefed. He doesn't know.

> B. *Mr. Hill's proffered opinions are based on speculation, not reliable facts or methodology.*

As discussed above, Mr. Hill—like Mr. Snell—was not part of the decision-making processes of the USCP, USSS, or Congress, and he does not have access to any records that would give him particular or specialized insight into them. Accordingly, Mr. Hill does not know what "clearance activities needed to occur in and around the Capitol and grounds before operations could recommence." Attachment 3 at 2. Similarly, Mr. Hill has not interviewed USCP officers who confronted the defendant inside the Capitol or seen the government's trial presentation, so he has no reliable basis to opine that the defendant's "presence was immaterial to these operations and had no effect on when the proceedings were suspended or restarted." *Id.* Instead, Mr. Hill's proffered testimony inappropriately "rests solely on 'subjective belief or unsupported speculation[.]'" *Groobert*, 219 F. Supp. 2d at 6; *see also Daubert*, 509 U.S. at 590. Consequently,

Mr. Hill's testimony on these points is not reliable, *see Sutton*, 2022 WL 16960338, at *2, "sufficiently tied to the facts of the case," *Naegele*, 471 F. Supp. 2d at 157, or likely to "aid the jury in resolving a factual dispute," *id.*

      C. *Mr. Hill's proffered opinions are irrelevant.*

Even if Mr. Hill were qualified to render expert opinions on the two topics noticed, and even if those opinions were based on reliable principles and methods, the Court should still preclude Mr. Hill from testifying as an expert on these matters because his opinions on them are irrelevant. First, the defendant—like with Mr. Snell—seeks to elicit expert *opinions* from Mr. Hill about matters of fact. Of course there were certain conditions that had to be met before the USCP, USSS, and Congress would deem the Capitol sufficiently secure to resume the Joint Session, and of course the USCP, MPD, USSS, and other law enforcement agencies had to engage in certain "clearance activities" to achieve those conditions. *See* Attachment 3 at 2. But these are matters of fact. They just aren't facts that Mr. Hill knows because he wasn't involved in either the setting of those conditions or the operations to achieve them, and he has not reviewed any materials that describe them.

The defendant seeks to call Mr. Hill to speculate and substitute what he *thinks* the USCP, USSS, and Congress decided, and what the USCP, MPD, USSS, and others did, for what actually happened. Like Mr. Snell's proffered "expert" opinions, Mr. Hill's opinions on these topics are not expertise at all, but rather speculation and guesswork about matters of fact of which he is ignorant. While these facts may be relevant, Mr. Hill is not the proper witness to establish them; either side could call an appropriate, informed member of the USCP, USSS, or Congress for that purpose. But the Court should preclude Mr. Hill from offering his speculation about these matters of fact under the cloak of expertise. Mr. Hill's opinions on these topics provide no assistance to

the jurors, who can make these determinations on their own after hearing testimony from knowledgeable witnesses. *See Gonzalez-Maldonado*, 115 F.3d at 17–18; *Sonrisa Holding, LLC*, 835 F. App'x at 339; *Davis*, 772 F.2d at 1343–44; *Montas*, 41 F.3d at 783. Like Mr. Snell, Mr. Hill's proffered testimony not only seeks to impart an expert's stamp of approval a conclusion that the jury can make on its own but also risks serving as a backdoor for the defense to admit evidence that would otherwise be inadmissible under Rules 402 and 403.

Mr. Hill's opinion that the defendant's "presence was immaterial to these operations and had no effect on when the proceedings were suspended or restarted" is equally based on speculation, not reliable facts or methodology. Attachment 3 at 2. While Count Two requires the government to prove that the defendant attempted to or did obstruct or impede an official proceeding, *see* 18 U.S.C. § 1512(c)(2), Mr. Hill's opinion on the significance or impact of the defendant's activities inside the Capitol on January 6 would not aid the jury because he has no expertise to offer on this point. *See Naegele*, 471 F. Supp. 2d at 157. As discussed above, Mr. Hill has no basis to assess whether the defendant's conduct impacted "when the proceedings were suspended or restarted," Attachment 3 at 2, so his opinion on the matter provides no benefit to the jury, *see Naegele*, 471 F. Supp. 2d at 157.

## CONCLUSION

For the reasons stated above, the United States respectfully requests that the Court preclude the defendant from presenting his proposed experts' testimony on the topics he noticed. Should the Court find that it lacks sufficient information to rule at this time, however, the United States requests a *Daubert* hearing.

Respectfully submitted,

MATTHEW M. GRAVES

United States Attorney
D.C. Bar Number 481052

*/s/ Alison B. Prout*
ALISON B. PROUT
Assistant United States Attorney
Georgia Bar No. 141666
75 Ted Turner Drive, SW
Atlanta, Georgia 30303
alison.prout@usdoj.gov
(404) 581-6000

MICHAEL M. GORDON
Assistant United States Attorney
Florida Bar No. 1026025
400 N. Tampa St., Suite 3200
michael.gordon3@usdoj.gov
(813) 274-6370

NATHANIEL K. WHITESEL
Assistant United States Attorney
D.C. Bar No. 1601102
601 D Street, NW
Washington, DC 20530
nathaniel.whitesel@usdoj.gov
(202) 252-7035