**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Case No. 21-CR-38 (CRC)** |
| **v.** | : | |
| | : | |
| **RICHARD BARNETT** | : | |
| **also known as "Bigo Barnett,"** | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION FOR A CONTINUANCE
OR TO DISMISS THE INDICTMENT**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby submits the following response to Defendant's Opposed Motion for a Continuance; or in the Alternative for the Court to Dismiss the Indictment. ECF No. 112 (Def. Mot.). The defendant argues that the government's superseding indictment, which added the charge of civil disorder against the defendant, warrants either a continuance of the twice-continued trial, or warrants the draconian remedy of complete dismissal of the indictment. Because the defendant fails to identify any particularized prejudice he would suffer from proceeding to trial on the current charges, his motion should be denied in its entirety.

**I.     Procedural Background**

This case has been pending before the Court since the defendant was indicted on January 29, 2021. ECF No. 19. The procedural history is rife with the defendant's repeated missed deadlines and last-minute requests for extensions and continuances. Because that history informs the government's position as to the defendant's present motion, the government sets it forth here.

On February 4, 2022, the Court set this case for trial on September 6, 2022, and set pretrial motions to be due April 29, 2022. ECF No. 49 ¶ 1. On March 18, 2022, defense counsel moved to continue his deadline to file pretrial motions because, he claimed, he and his investigator had only

recently been granted licenses to access the Relativity and Evidence.com databases. He requested a 45-day continuance so that "he can have a reasonable opportunity to parse through the totality of the available discovery via the Relativity and Evidence.com databases." ECF No. 51 at 2. The Court appropriately granted the defendant an extension until May 31, 2022 for the parties to file pretrial motions. 3/30/2022 Minute Order.

The government filed its pretrial motions on the May 31, 2022 deadline (ECF Nos. 54-56), but the defense did not. One week after the deadline, the defendant moved for an unopposed second extension of an additional 30 days to file pretrial motions due to illness of a member of the defense team and his family. ECF No. 57. The Court again granted the defendant's motion and extended his deadline to file pretrial motions to July 6, 2022. 6/10/2022 Minute Order.

The defendant failed to file pretrial motions by the new July 6 deadline. On July 12, 2022, the defendant moved unopposed for a third continuance of the pretrial motions deadline. He requested an additional 30 days, again due to illness. ECF No. 60. On July 18, 2022, the Court held a status conference during which opposing counsel put his medical condition on the record, and asked the Court to continue the trial. 7/18/2022 Minute Order. The Court granted the request, continued the defendant's deadline for pretrial motions to September 6, 2022, and reset the trial for December 12, 2022. ECF No. 63. At the hearing, the Court expressed concern about defense counsel's uncertainty about the time he would need to address his medical condition and advised defense counsel to ensure that co-counsel would be ready to try the case in December if he were not. The Court directed the parties to file a Joint Status Update on August 17, 2022. *Id.*

In the Joint Status Update, opposing counsel described his medical treatment and stated that "[r]egardless of undersigned defense counsel McBride's treatment and recovery plan, the defense is on track with the current scheduling order, which actually is in-line [*sic*] undersigned

counsel's treatment plan," and "undersigned defense counsel can assure the Court that there are no related issues concerning the defendant's continued representation. Lead counsel is Joseph McBride, and co-counsel is Steven Metcalf." ECF No. 72 at 2.

In spite of these assurances, the defense failed to file its pretrial motions by the September 6, 2022 deadline, missing the deadline for the fourth time. On September 16, 2022, defense counsel filed another belated motion to extend the deadline a fifth time, asking the Court to delay the deadline to September 22, this time citing two reasons: opposing counsel's medical condition, which was described to the Court on August 17, and to a death in another counsel's family. ECF No. 73. Again, the government did not oppose this request. *Id*. The Court granted the defendant until September 22.

On September 22, 2022, almost five months after the initial deadline, the defendant filed his pretrial motions. ECF Nos. 74, 75, 80, 81. The government filed timely responses and proceeded to prepare for trial on December 12.

On November 21, 2022, three weeks before trial, the defendant moved for the second time to continue the trial, this time for three months, until March 2023. ECF No. 88. The defendant claimed to need a continuance because of (1) a pending D.C. Circuit argument regarding a motion to dismiss the charge of 18 U.S.C. § 1512(c)(2) in another case, (2) "new evidence [that] continues to emerge concerning January 6th that are [*sic*] directly relevant to Mr. Barnett's defense," and (3) Mr. McBride's health. Mr. McBride wrote that there was a "necessary medical procedure" that he was scheduled to have on November 17, 2022, but "due to unforeseen complication . . . must be rescheduled for December 9, 2022." *Id*. at 1. The defendant argued that he should be allowed "to

wait until all of the facts of the day's events are known before proceeding to trial." *Id*. at 5. The government did not oppose a limited continuance of 30 to 45 days. ECF No. 89.[1]

> The Court considered, and rejected the defendant's grounds for requesting additional time:
>
> The Court finds that none of the reasons advanced in the Defendant's motion are grounds for a continuance. This case was charged nearly two years ago, one trial date has already been vacated at the defense's request, and the present date was set over four months ago. Defense counsel, which now number at least three, have had more than ample time to prepare for trial. The defense has not identified any material evidence that it is lacking, either from the government's voluminous production of both case-specific and global discovery, or from other public sources.

11/23/2022. The Court equally rejected the government's anticipated change of counsel as a ground for continuance, stating, "[a]s for any anticipated change in government trial counsel, the government has been aware of the current trial date for months and should have planned accordingly." *Id*. Nonetheless, the Court ordered the parties to file a joint notice of trial availability that identified dates to allow for a "brief" continuance. *Id*.

After conferring at the Court's direction, the parties informed the Court that they were mutually available the weeks of January 9, 2023 and January 16, 2023. ECF No. 91. The parties further agreed upon the remaining pretrial deadlines. *Id*. Based on the parties' mutual availability, the Court agreed to continue the trial until January 9, 2023, and set the pretrial deadlines consistent with the parties' agreement. 11/29/2022 Minute Order. The government continued to diligently prepare for trial, including substituting one member of its trial team. ECF No. 92.

---

[1] The government's later review of open-source social media suggests that Mr. McBride was apparently in South Florida on the night of November 15, 2022, attending a social and political event. *See* Exhibit 1. This may explain the "unforeseen complication" that caused him to reschedule his "necessary medical procedure." *See* ECF No. 88 at 1. The government also learned that despite his claim that he was unavailable for the December 12 trial due to recovery from a necessary medical procedure on December 9, Mr. McBride nonetheless was able to appear on December 10, 2022 as the "Special Guest" at another political event. *See* Exhibit 2.

On December 19, 2022, the government informed the defense both during a telephone conferral and in a filing on the docket that two days later, on December 21, 2022, it intended to supersede the indictment to add a count of civil disorder pursuant to 18 U.S.C. § 231(a)(3). ECF No. 94 at 1 n.1. The parties' proposed *voir dire* was also due on December 19, 2022. The government timely filed its proposal. ECF No. 94. The defense filed their proposal shortly after the deadline, on December 20. ECF No. 95. The superseding indictment was filed on December 21, 2022, as the government had informed the defendant it would be. ECF No. 96.

While simultaneously preparing for trial, during the holiday season, the government has repeatedly conferred with the current *four*-member defense team. The government provided the defense team with the government's trial exhibits on December 19, three weeks before trial. These exhibits were previously provided to defense counsel as part of discovery. The government also spent considerable time and effort to reconstitute the discovery that it had produced to the defense over the past two years, and made that reconstituted discovery, totaling almost 5,000 files, available to all members of the defense team. The government did this even though the defense never provided any reason or rationale as to why Mr. McBride and Mr. Metcalf could not or would not share the discovery with their own defense team.

The government has multiple out-of-town witnesses who had previously arranged their schedules and prepared to travel to Washington, D.C. for the December 12 trial, and who have again arranged their schedules and made travel arrangements for the January 9 trial. The defendant's request to continue the trial again, just five business days before the trial is set to begin (and despite learning about the superseding indictment 11 days earlier), wastes government resources, inconveniences multiple witnesses, and would likely conflict with the prosecutors' schedules, as members of the prosecution team have other trials already sent, including on January

23, 2023, February 6, 2023, February 14, 2023, February 21, 2023, March 7, 2023, and May 16, 2023, and one member of the prosecution team will be out of the country the week of March 13, 2023.

## II.   Argument

### A.   The Court Should Deny the Defendant's Request to Both Continue the Trial for 60 Days and to Dismiss the Indictment Due to the Lack of Any Demonstrated Prejudice.

The Supreme Court has held that the burden of "assembling witnesses, lawyers, and jurors at the same place at the same time . . . counsels against continuances except for compelling reasons." *Morris v. Slappy*, 461 U.S. 1, 11 (1983). The relevant factors include whether other continuances have been requested and granted, and whether the requested delay is for legitimate reasons. *United States v. Burton*, 584 F.2d 485, 490-91 (D.C. Cir. 1978). As the defense acknowledges, the Speedy Trial Act's 30-day preparation period does not run from a superseding indictment. *United States v. Rojas-Contreras*, 474 U.S. 231 (1985).  Tellingly, it does not even run from the date of the initial indictment, but rather from the date of the defendant's first appearance. *Id*. at 234. In other words, the time provided by the Speedy Trial Act for the defendant to prepare for trial runs from the date that the defendant is on notice that he is facing criminal charges, and not the date that he is informed of the full scope of those charges. A trial judge's decision to deny a continuance is presumed reasonable, and a violation of the right to the effective assistance of counsel only occurs "if the denial of a continuance was unreasoning and arbitrary." *United States v. Poston*, 902 F.2d 90, 97 (D.C. Cir. 1990).

The defendant has failed to meet his burden to identify any compelling reason for the requested continuance. As an initial matter, he cannot show that he has exercised due diligence to prepare for trial because – even before the superseding indictment – he consistently sought

continuances and never once declared that he was ready for trial, even asserting medical justifications while simultaneously traveling to and appearing at multiple events.[2] In other words, the new civil disorder charge is just his latest excuse for repeatedly seeking to delay the inevitable trial. Nor can the defendant show any actual prejudice, for the following three reasons.

First, the addition of the civil disorder charge does not impact the scope of the defendant's behavior that is on trial. There are no surprises here. The defendant has known the full scope of his own conduct on January 6, 2021 since January 6, 2021. The fact that the government has now alleged that that conduct satisfies the legal elements of another charge, civil disorder, does not change the anticipated scope of the government's evidence beyond the need to satisfy the jurisdictional requirement of 18 U.S.C. § 231(a)(3).[3] This is not a case where the government has superseded the indictment to add a charge related to entirely new or different conduct, or similar conduct on another date. Thus the defendant's trial preparations to date should have prepared the him for the full scope of conduct that will be litigated at his trial.[4]

---

[2] Despite these proffered medical justifications, Mr. McBride has also apparently had the capacity to make numerous media appearances in this timeframe. *See, e.g.*, Exhibit 3.

[3] To satisfy the jurisdictional requirement of a violation of 18 U.S.C. 231(a)(3), the government must prove that "the civil disorder in any way or degree obstructed, delayed, or adversely affected either commerce or the movement of any article or commodity in commerce or the conduct or performance of any federally protected function." *United States v. Robertson*, Case No. 21-CR-34 (D.D.C), ECF No. 86. The government will prove this jurisdictional element with business records from Albertson's, Inc./Safeway that have already been produced and testimony about the impact of the civil disorder at the Capitol on two federally protected functions: Congress's certification of the Electoral College vote and the U.S. Secret Service's protection of the Vice President and his immediate family.

[4] The defendant offhandedly argues that the modifications to the 18 U.S.C. § 1512(c)(2) charge are also somehow "material[] change[s]" that support a continuance or dismissal. Def. Mot. at 2. This makes no sense. The only change to that charge is the added language that specifies that the relevant official proceeding is "specifically, Congress's certification of the Electoral College vote as set out in in the Twelfth Amendment of the Constitution of the United States and 3 U.S.C. §§ 115-18." *Compare* ECF Nos. 19 & 96. If anything, this change only narrows the charge, as it specifies exactly what official proceeding the defendant is charged with obstructing.

Second, the government has no new discovery to provide that is specific to the civil disorder count.[5] The government will use evidence already in the defendant's possession to prove it. Indeed, the government provided the defense with both its exhibit list and its actual exhibits on December 19. That list has not changed as a result of the new charge. Thus the defense has had complete access to the government's anticipated exhibits for the entire time contemplated by the deadline that the defense agreed to when the parties conferred and jointly proposed dates and deadlines for the amended pretrial scheduling order.[6] *See* ECF No. 91.

Finally, two defense counsel appeared in this case less than three weeks before the January 9 trial date (and after the superseding indictment was filed). Since they were apparently already planning to join the trial team and come up to speed on the case in less than three weeks, they have not lost any time in their preparations, and can show no prejudice whatsoever, as a result of the new charge. ECF No. 98 (12/22/2022 Stewart Notice of Appearance); ECF No. 102 (12/23/2022 Geyer Motion for Leave to Appear Pro Hac Vice).[7]

Courts have affirmed the denial of trial continuances where the defendant has similarly failed to make the required showing of prejudice. In *United States v. Saoud*, 595 F. App'x 182 (4th Cir. 2014) for instance, the government superseded the indictment eight days before trial with eight new health care fraud charges and a related charge of aggravated identity theft. *Id.* at 184. The

---

[5] On December 29, 2022, the government received two discovery letters from the defendant seeking 17 categories of documents. The government is still reviewing these requests, but believes that most of them seek irrelevant information. Equally important, the majority, if not all, of these request have no apparent connection to the civil disorder charge. Thus there is no reasonable basis for the defense to have waited until less than two weeks before trial to make these requests.

[6] The government reserves the right to make the usual last minute changes and additions to exhibits as it finalizes its trial preparations.

[7] Mr. McBride informed the government in a December 19, 2022 that Mr. Geyer was joining the defense team, and the parties conferred the same day, including with Mr. Geyer.

defendant sought a continuance on the ground that, among other reasons, "having only eight days to review the new charges would prejudice his defense because he would have insufficient time to (1) review the 200,000 pages of discovery for evidence related to the new charges." *Id*. The Court of Appeals affirmed the trial court's denial of the continuance, holding that "[the defendant] does not explain, as he must, how his inability to do these things specifically prejudiced his defense. Our precedent establishes that an appellant cannot demonstrate prejudice with 'a general allegation of 'we were not prepared.'''" *Id*. at 186 (citation omitted); *see also United States v. Gantt*, 140 F.3d 249, 257 (D.C. Cir. 1998) (affirming denial of motion to continue trial where defense counsel claimed that learning nine days before trial of a statement by the defendant "totally destroy[ed] the trial strategy [he] had prepared," but he "made no specific proffer justifying a need for more time").[8]

**B. The Court Should Deny the Defendant's Motion to Dismiss the Indictment for Alleged Vindictive Prosecution Due to the Defendant's Failure to Make the Required Showing.**

1. The Standard for Vindictive Prosecution

Federal courts have long recognized that enforcement of the nation's criminal laws is "a 'special province' of the Executive." *United States v. Armstrong*, 517 U.S. 456, 464 (1996). Prosecutors have "broad discretion to enforce the law, and their decisions are presumed to be proper absent clear evidence to the contrary." *United States v. Slatten*, 865 F.3d 767, 799 (D.C. Cir. 2017) (*citing Armstrong*, 517 U.S. at 464).

---

[8] To the extent the Court can discern any genuine material prejudice to the defendant resulting from the superseding indictment, the government would prefer, based on the defendant's proffer of readiness, ECF No. 91, that the parties proceed to trial on all of the other charges, and sever the civil disorder charge to be dealt with after trial. This would entirely address the defendant's alleged concerns over his surprise by this additional charge. Nonetheless, for the reasons described above, the government submits that such severance is unnecessary and unwarranted.

"'Prosecutorial vindictiveness' is a term of art with a precise and limited meaning." *United States v. Meyer*, 810 F.2d 1242, 1245 (D.C. Cir. 1987) (citing *United States v. Goodwin*, 457 U.S. 368, 372 (1982)). The doctrine "precludes action by a prosecutor that is designed to penalize a defendant for invoking any legally protected right available to a defendant during a criminal prosecution . . .." *United States v. Safavian*, 649 F.3d 688, 692 (D.C. Cir. 2011). Thus, it is traditionally seen in cases in which the prosecution adds additional charges after the defendant successfully appeals. *Id.*

"[T]o succeed on a claim of vindictive prosecution, a defendant must establish that the increased charge was 'brought *solely* to "penalize" [him] and could not be justified as a proper exercise of prosecutorial discretion.'" *United States v. Slatten*, 865 F.3d 767, 799 (D.C. Cir. 2017) (quoting *Goodwin*, 457 U.S. at 380 n.12). There are two ways a defendant may make this showing: "through objective evidence showing actual vindictiveness, or through evidence 'indicat[ing] a "realistic likelihood of vindictiveness,"' which gives rise to a presumption that the government must then attempt to rebut." *Id.* (quoting *Meyer*, 810 F.2d at 1245).

"'To prove actual vindictiveness requires objective evidence that the prosecutor's actions were designed to punish a defendant for asserting his legal rights. Such a showing is normally exceedingly difficult to make.'" *United States v. Gary*, 291 F.3d 30, 34 (D.C. Cir. 2002) (quoting *Maddox v. Elzie*, 238 F.3d 437, 446 (D.C. Cir. 2001).

In *Goodwin*, the defendant was charged with misdemeanors. When he requested a jury trial, the government indicted him for a felony. *Goodwin*, 457 U.S. at 370. The Supreme Court declined to apply a presumption of vindictiveness, explaining, "[t]here is good reason to be cautious before adopting an inflexible presumption of prosecutorial vindictiveness in a pretrial setting. In the course of preparing a case for trial, the prosecutor may uncover additional

information that suggests a basis for further prosecution *or he simply may come to realize that information possessed by the State has a broader significance.*" *Id.* at 381 (emphasis added). The Court found that:

> [T]he timing of the prosecutor's action in this case suggests that a presumption of vindictiveness is not warranted. A prosecutor should remain free before trial to exercise the broad discretion entrusted to him to determine the extent of the societal interest in prosecution. An initial decision should not freeze future conduct. As we made clear in *Bordenkircher* [434 U.S. 357, 364 (1978)], the initial charges filed by a prosecutor may not reflect the extent to which an individual is legitimately subject to prosecution.

*Id.* at 381-82. "[T]he mere fact that a defendant refuses to plead guilty and forces the government to prove its case is insufficient to warrant a presumption that subsequent changes in the charging decision are unjustified." *Id.* at 382-83. The Court thus declined to presume vindictiveness simply because the government brought additional/greater charges after the defendant made a pretrial demand for a jury trial. *Id.* At 384. As the *Goodwin* court explained, "a change in the charging decision made after an initial trial is completed is much more likely to be improperly motivated than is a pretrial decision." 457 U.S. at 381.

Notwithstanding *Goodwin*, the D.C. Circuit has found that a defendant can still attempt to establish a presumption of vindictiveness based upon the charges against him being increased pretrial. In such a scenario, the defendant "must show the prosecutor's action was 'more likely than not' attributable to vindictiveness." *Safavian*, 649 F.3d at 692 (quoting *Gary*, 291 F.3d at 34 (quoting *Alabama v. Smith*, 490 U.S. 794, 801 (1989))). This is a difficult showing to make: "In a pre-trial setting, 'the prosecutor's assessment of the proper extent of prosecution may not have crystallized,' so an increase in charges may be the result of additional information or further consideration of known information, rather than a vindictive motive." *Slatten*, 865 F.3d at 799 (quoting *Goodwin*, 457 U.S. at 381). Indeed, "[t]he routine exercise of many pre-trial rights also

11

weakens any inference of vindictiveness, *i.e.*, that a prosecutor would retaliate simply because a defendant sought a jury trial or pleaded an affirmative defense." *Id.* "Moreover, 'so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion.'" *United States v. Meadows*, 867 F.3d 1305, 1313 (D.C. Cir. 2017) (quoting *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978)). Therefore, "in the pre-trial context, a defendant must provide additional facts sufficient to show that 'all of the circumstances, when taken together, support a realistic likelihood of vindictiveness.'" *Slatten*, 865 F.3d at 799 (quoting *Meyer*, 810 F.2d at 1245-46).

In *Meyer*, the Park Police arrested 200 demonstrators outside the White House. *Meyer*, 810 F.2d at 1243. The demonstrators were cited and given the opportunity to pay a $50 fine or proceed to trial. *Id.* at 1243-44. Those who decided to proceed to trial were charged with an additional crime. *Id.* at 1244. The court of appeals applied a presumption of vindictiveness, emphasizing that "the most important of the circumstances peculiar to this case is the government's disparate treatment of the defendants who elected to go to trial and the defendants who elected to forego their trial rights. . .. This disparate treatment must give rise to a suspicion that the government discriminated among the defendants on the basis of their divergent decisions whether to exercise their right to trial." *Id.* at 1246. The court further found that "[t]he simplicity and clarity of both the facts and law underlying these prosecutions heightens the suspicion of prosecutorial vindictiveness." *Id.* It found that the government's motion to drop the new charge at the beginning of the hearing on prosecutorial vindictiveness evidenced "a disturbing willingness to toy with the defendants" that further supported a presumption of vindictiveness. *Id.* at 1247. Finally, the court

of appeals found that this case involved "something other than routine invocations of procedural rights on the part of individual defendants." *Id.*

Even where a court finds that a defendant has met his burden of establishing a presumption of vindictiveness, the government may overcome the presumption "with 'objective information in the record justifying the increased sentence [or charges].'" *Maddox*, 238 F.3d at 446 (quoting *Goodwin*, 457 U.S. at 374). "That burden is 'admittedly minimal -- any objective evidence justifying the prosecutor's actions will suffice.'" *Meadows*, 867 F.3d at 1312 (quoting *Safavian*, 649 F.3d at 694)).

2. The Defendant Has Not Alleged a Supportable Theory of Vindictive Prosecution.

The defendant's apparent theory of vindictive prosecution rests on his unfounded claim that the government retaliated against the defendant for adding additional lawyers to the defense team "because Mr. Barnett was exercising his Sixth Amendment right to counsel in forming a defense team." Def. Mot. at 14. But the timing of the relevant events contradicts the defendant's theory. The defendant had repeatedly exercised his Sixth Amendment right to form his defense team long before the government superseded the indictment, having at different times added Mr. Siano (January 26, 2021), Mr. McBride (March 4, 2021), Mr. Metcalf (March 4, 2021), and Mr. Gross (September 23, 2022).[9] None of those additions led the government to add charges against the defendant, undermining the defendant's theory. And defense counsel only notified the government by email on December 21, 2022, *after* the government had already superseded the indictment, that they would be adding Ms. Stewart to their team. So that addition could not have

[9] The dates in the parentheticals reflect the first time the attorney appeared on the docket on behalf of the defendant. The government does not know when each attorney was retained by the defendant.

driven the government's action. Only the defendant's addition of Mr. Geyer, which the government learned about on December 19, 2022, occurred close in time to the superseding indictment, but the theory that the defendant's addition of one out of his six attorneys spurred the government to vindictively add a charge makes no sense. "The routine exercise of many pre-trial rights also weakens any inference of vindictiveness, *i.e.*, that a prosecutor would retaliate simply because a defendant sought a jury trial or pleaded an affirmative defense," or in this case, retain another lawyer. *Slatten*, 865 F.3d at 799.

More importantly, the government made the decision to supersede the indictment on December 16, *i.e.*, *before* it learned about the addition of Mr. Geyer. *See* Exhibits 4 & 5. Therefore, the superseding indictment could not have been a vindictive reaction to Mr. Geyer's addition to the defense team. Instead, in reviewing the evidence and preparing for trial, the trial team came to believe that the defendant's conduct violated 18 U.S.C. § 231(a)(3) (civil disorder), and thus sought the grand jury's approval of that charge.[10] As *Goodwin* expressly recognizes, "[i]n the course of preparing a case for trial, the prosecutor may uncover additional information that suggests a basis for further prosecution *or he simply may come to realize that information possessed by the State has a broader significance.*" 457 U.S. at 381 (emphasis added). That is what occurred here, plain and simple.

## CONCLUSION

For the reasons stated above, the defendant's motion lacks any merit. The Court should reject the defendant's latest delay tactic and deny his motion in its entirety.

---

[10] As this Court knows, civil disorder has a statutory maximum term of imprisonment of five years, whereas the defendant's exposure, without substantial sentencing guidelines analysis, is higher (20 years) with respect to the charge of obstruction of an official proceeding. It would stand to reason that the additional of a lesser charge could hardly suffice as 'vindictiveness,' particularly when it appropriately captures what the defendant did.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar Number 481052


*/s/ Alison B. Prout*
ALISON B. PROUT
Assistant United States Attorney
Georgia Bar No. 141666
75 Ted Turner Drive, SW
Atlanta, Georgia 30303
alison.prout@usdoj.gov
(404) 581-6000

MICHAEL M. GORDON
Assistant United States Attorney
Florida Bar No. 1026025
400 N. Tampa St., Suite 3200
michael.gordon3@usdoj.gov
(813) 274-6370

NATHANIEL K. WHITESEL
Assistant United States Attorney
D.C. Bar No. 1601102
601 D Street, NW
Washington, DC 20530
nathaniel.whitesel@usdoj.gov
(202) 252-7035

15