**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES** | ) | |
| | ) | |
| v. | ) | 1:21-cr-38 |
| | ) | |
| **BARNETT** | ) | |
| _____ | ) | |

**DEFENDANT'S MOTION TO DISMISS COUNT ONE OF THE**
**SUPERSEDING INDICTMENT, 18 U.S.C. 231(a)(3)**

Defendant Richard Barnett, by and through counsel, submitted this motion to dismiss

Count One of the Superseding indictment.

**I.    INTRODUCTION**

At a pretrial conference held on January 4, 2023, the defendant requested that the trial be

continued to a later date due to the Government's eleventh hour surprise Superseding Indictment

filed on December 22, 2022, that included a new count, charging the defendant with 18 U.S.C. §

231(a)(3).  ECF No. 96.  The defense argued that the defendant was prejudiced because the new

charge required the defense to reevaluate the evidence with an eye towards the new charge.  When

the Court questioned the Government as to how the addition of this new charge on the eve of trial

does not prejudice the defendant, the Government responded that the charge is based on the same

evidence and conduct that underlies the earlier charges.  On the record, the Court noted that Mr.

Barnett has "not been charged with violence," and the Government did not deny this. At the

hearing, the Government surprised the defense by revealing for the first time that Mr. Barnett, who

is famous for putting his feet on a desk in Congresswoman Nancy Pelosi's office, is not being

charged for putting his feet on a desk in Nancy Pelosi's office.  Instead, Mr. Barnett is being

charged for asking Metropolitan Police Department Officer Terrence Craig to retrieve the flag that

Mr. Barnett said he left in Ms. Pelosi's office.  The Court ultimately denied the request for a

continuance, but granted the defense's request to submit this motion to dismiss the new charge.

## II.   ARGUMENT

### A.  Section 231(a)(3)'s constitutional problem.

18 U.S.C. § 231 states in its entirety:

**(a)**

> **(1)** Whoever teaches or demonstrates to any other person the use, application, or making of any firearm or explosive or incendiary device, or technique capable of causing injury or death to persons, knowing or having reason to know or intending that the same will be unlawfully employed for use in, or in furtherance of, a civil disorder which may in any way or degree obstruct, delay, or adversely affect commerce or the movement of any article or commodity in commerce or the conduct or performance of any federally protected function; or
> **(2)** Whoever transports or manufactures for transportation in commerce any firearm, or explosive or incendiary device, knowing or having reason to know or intending that the same will be used unlawfully in furtherance of a civil disorder; or
> **(3)** Whoever commits or attempts to commit any act to obstruct, impede, or interfere with any fireman or law enforcement officer lawfully engaged in the lawful performance of his official duties incident to and during the commission of a civil disorder which in any way or degree obstructs, delays, or adversely affects commerce or the movement of any article or commodity in commerce or the conduct or performance of any federally protected function—
> Shall be fined under this title or imprisoned not more than five years, or both.

**(b)** Nothing contained in this section shall make unlawful any act of any law enforcement officer which is performed in the lawful performance of his official duties.

18 U.S.C. § 232 defines a "civil disorder" as

> "any public disturbance involving acts of violence by assemblages of three or more persons, which causes an immediate danger of or results in damage or injury to the property or person of any other individual."

The statute's name, "Civil disorders" is deceptive, in that none of its three constituent parts

- hereinafter referred to as "(a)(1)", "(a)(2)", and "(a)(3)" - are directed at participants in a civil

disorder, *i.e.*, the statute does not prohibit "disturbing the public with acts of violence" or

"assembling with three or more persons to cause immediate danger."  Instead, the three parts of

the statute prohibit conduct by third parties incident to a "civil disorder." The statute's intention, on its face, seeks to include individuals who played a secondary role to a civil disorder, but would otherwise evade liability because they were not directly involved.

For example, (a)(1) prohibits teaching others to make or use weapons, explosive devices, or other martial techniques knowing or intending that the students will use what they learned in furtherance of a civil disorder. The statute brings to mind terrorist training camps where teenagers are taught and encouraged to be suicide bombers, while the teachers sit on the sidelines. Part (a)(2) prohibits transporting or manufacturing weapons or explosive devices knowing that they will be used in furtherance of a civil disorder. This brings to mind Yahya Ayyash, the "Engineer" who designed the suicide vests for Hamas terrorists.[1] In both cases, the statute targets individuals who are likely not to be involved in the actual civil disorder.

Similarly, part (a)(3), the part that the defendant here is charged with, targets an individual who is not part of the civil disorder, but instead commits an act intended to obstruct an officer who is attempting to respond to an ongoing civil disorder. Part (a)(3) stands apart from the other two parts in that unlike the other two parts that in most cases occur prior to the civil disorder, part (a)(3) must occur "during the commission of a civil disorder."

Accordingly, the "civil disorder" referenced in part (a)(3) is an underlying act that must exist at the time of the alleged conduct. While according to Section 232, the civil disorder must involve "acts of violence," it seems from a plain reading of Section 231(a)(3), on its face, the alleged conduct that interferes with the law enforcement officer responding to the civil disorder may not necessarily be violent, and can even include speech. The obvious problem with the statute

---

[1] Serge Schmemann, Killing of Bomb 'Engineer' Unites Palestinian Factions, The New York Times (nytimes.com), www.nytimes.com/1996/01/10/world/killing-of-bomb-engineer-unites-palestinian-factions.html

is that to an ordinary person reading the statute, the phrase "any act to obstruct, impede, or interfere" is vague because, on its face, the statute's plain meaning can fairly include pure speech or expressive nonphysical conduct protected by the First Amendment.

### B.  Part (a)(3) requires a "conduct"

This poorly written statute is frequently challenged in federal courts, including at least eight times in the last two years. *See United States v. Mostofsky,* No. 21-cr-138 (JEB), at *8–9 (D.D.C. Jul. 27, 2021); *United States v. Nordean*, 21-cr-175 (TJK), 579 F. Supp. 3d 28, 60 (D.D.C. 2021); *United States v. Howard*, No. 21-cr-28, 2021 WL 3856290, at *11–12 (E.D. Wis. Aug. 30, 2021); *United States v. Phomma*, No. 3:20-cr-00465-JO, 561 F.Supp.3d 1059, 1066 – 68 (D. Or. 2021); *United States v. Wood*, No. 20-56 MN, 2021 WL 3048448, at *7–8 (D. Del. July 20, 2021); *United States v. Williams,* Case No. 1:21-0618 (ABJ), at *4-13 (D.D.C. Jun 22, 2022); *United States v. McHugh,* No. 21-cr-453 (JDB), 583 F. Supp. 3d 1, 10 (D.D.C. 2022); *United States v. Fischer,* No. 21-cr-234 (CJN), at *3-4 (D.D.C. Mar. 15, 2022).

To rescue the statute, court's have pointed to the words "any act" which implies that "the statute is directed towards conduct, not speech." *Phomma*, 561 F. Supp.3d at 1068.  But even when speech is excluded, there is still the problem of protected conduct getting caught in the statute's dragnet.  Courts have said that the statute's scope is limited to capture only unprotected conduct, because it is limited to conduct that "obstructs, impedes, or interfere's" with a law enforcement officer who is performing official duties at a specific time, namely, during the commission of a civil disorder. *Williams*, 21-0618, at *9.  In other words, part (a)(3) only prohibits conduct that is prohibited by part (a)(3).

Aside from the court's circular reasoning, the court's lack of standard leaves unanswered the question of exactly what kind of conduct objectively "obstructs, impedes, and interferes" such

that it can be said that the conduct does the same to a police officer in a given situation?  By what

coherent, measurable, workable standard can the conduct be evaluated to determine that it is

"obstructing, impeding, and interfering" with law enforcement?  In response to this question, the

Court in *Williams* says there is no standard, but rather, "I know it when I see it."  *Cf. Jacobellis v.*

*Ohio*, 378 U.S. 184, 197 (1964) ("I shall not today attempt further to define the kinds of material

I understand to be [hard-core pornography]; and perhaps I could never succeed in intelligibly doing

so. But I know it when I see it, and the motion picture involved in this case is not that.").  The

Court in *Williams* stated:

> As other courts in this district have recently held, "[a]n ordinary person would have
> ***an intuitive understanding*** of what is proscribed by a ban on obstructing, impeding,
> or interfering with law enforcement." *McHugh*, 2022 WL 296304, at *16. Further,
> "there are specific fact-based ways to determine whether a 'defendant's conduct
> interferes with or impedes others,' or if a law enforcement officer is performing his
> official duties 'incident to and during' a civil disorder." *Nordean*, 2021 WL 6134595,
> at *15-16.

*Williams*, 21-0618, at *7 (emphasis added).  In other words, if a citizen performs some "conduct"

at the same time that a law enforcement officer is performing duties "incident to and during and

civil disorder," then we can somehow "intuitively" understand which conduct is prohibited and

which is permitted.  The court alludes to "fact-based" factors to determine whether the conduct

"obstructs, impedes or interferes" with others, but mentions none.  The court's "intuitive" standard

is no standard at all.

A perfect example of where the *Williams* "intuitive" standard fails is the Constitutionally

protected right of the public to openly film police officers lawfully carrying out their duties.  *ACLU*

*v. Alvarez,* 679 F.3d 583, 599–600 (7th Cir. 2011), *cert. denied,*133 S.Ct. 651, 184 L.Ed.2d 459

(2012) (holding that an Illinois eavesdropping statute did not protect police officers from a civilian

openly recording them with a cell phone); *Glik v. Cunniffe,* 655 F.3d 78, 79 (1st Cir. 2011) (holding

there is an "unambiguous[ ]" constitutionally protected right to videotape police carrying out their

duties in public); *Smith v. Cumming,* 212 F.3d 1332, 1333 (11th Cir. 2000) (finding plaintiffs "had a First Amendment right, subject to reasonable time, manner and place restrictions, to photograph or videotape police conduct"); *Fordyce v. City of Seattle,* 55 F.3d 436, 439 (9th Cir. 1995) (recognizing plaintiff's videotaping of police officers as a "First Amendment right to film matters of public interest"); *Crawford v. Geiger*, 996 F. Supp. 2d 603, 615 (N.D. Ohio 2014) ("Thus I find there is a First Amendment right to openly film police officers carrying out their duties."). *See also* Seth F. Kreimer, *Pervasive Image Capture and the First Amendment: Memory, Discourse, and the Right to Record,* 159 U. Pa. L.Rev. 335, 367, 369 (2011) (noting, "In the last decade, a solid line of courts has recognized that image capture can claim protection under the First Amendment" and any doubts as to "whether prohibitions of image capture should raise First Amendment objections ... are ultimately unsustainable.").

It is well documented and "intuitive" that citizens who film police officers "obstruct, impede, and interfere," with lawful police duties.  When spectators film police engaging with citizens, citizens become noncompliant and aggressive with officers, and police officers hesitate before performing even their lawful duties for fear of being taunted, embarrassed, or scrutinized online.[2]   A citizen peacefully filming a police officer for the express purpose of distracting the police or encouraging citizens participating in a civil disorder by ensuring them that their and the police's actions are being recorded, thereby "obstructing, impeding, or interfering" with the officer's performance of lawful duties, is in violation of part (a)(3) by the *Williams* "intuitive" standard.  This is not a rare exception; filming law enforcement is ubiquitous, especially in the January 6 context.  And there is no exception for the press in part (a)(3).  Obviously, part (a)(3)

---

[2] *See generally,* Michael J. Derek Mallett, Effects of Cell Phone Cameras on Police Working Behavior, Walden University Dissertation and Doctoral Studies Collection, 2019, http://scholarworks.waldenu.edu/cgi/viewcontent.cgi?article=7735&context=dissertations

cannot apply, because it would make the constitutionally protected right to film police meaningless in the case of a civil disorder.  By this standard, had George Floyd been arrested with two other people, filming him would have violated part (a)(3).

In sum, courts have repeatedly rescued Section 231(a)(3) from constitutional challenges by limiting the scope of the statute's dragnet to certain kinds of conduct. However, the statute requires an objective standard by which to measure the conduct to act as constitutional guardrails to prevent the statute from prohibiting protected conduct.

### C.  Section 231(a)(3) only prohibits violent conduct.

When presented with this very problem fifty years ago, the Eighth Circuit Court of Appeals adopted a simple, coherent, measurable, workable solution.  In *United States v. Casper*, 541 F.2d 1275, 1276 (8th Cir. 1976), the Court included as one of the elements of the crime "That the Defendant attempted to commit an act for the intended purpose of obstructing, impeding, or interfering, either by himself or with someone else, ___*in a violent manner*___ with such law enforcement officer or officers;" *Casper*, 541 F.2d 1275, 1276.  *See also United States v. Mechanic,* 454 F.2d 849, 852 (8th Cir. 1971); *United States v. Rupert,* No. 20-CR-104 (NEB/TNL), 2021 U.S. Dist. LEXIS 46798, at \*23 (D. Minn. Mar. 12, 2021); *United States v. Jaramillo*, 380 F. Supp. 1375, 1376 (D. Neb. 1974); *United States v. McArthur,* 419 F. Supp. 186, 190 (D.N.D. 1975); *United States v. Banks-Means*, 383 F. Supp. 368 (D.S.D. 1974); *United States v. Red Feather*, 392 F. Supp. 916 (D.S.D.1975).  This simple solution looks to the broader context of the statute: just as the underlying civil disorder requires "acts of violence," the obstruction, impediment, or interference with a responding law enforcement officer must also be "in a violent manner."

Further, this solution is not inconsistent with the other January 6 cases in this court that have set forth no standard, in that those cases involved acts of violence, unlike Mr. Barnett's.  *See*

*United States v. Phomma*, 561 F. Supp. 3d at 1068 ("I note that the recent district court decisions cited here concern allegations of violent conduct. For example, Defendant here allegedly sprayed police officers with bear spray; in *Wood*, the defendant allegedly threw brick that shattered the back window of a police vehicle; in *Pugh* , the defendant allegedly used a baseball bat to break out the window of a police cruiser; and in *Howard* , the defendant allegedly threw an object at a police officer, hitting the officer in the head and knocking him unconscious. *Wood* , 2021 WL 3048448, at *1 ; *Pugh* , at *2; *Howard* , 2021 WL 3856290, at *2. ")*. See also Mostofsky,* 579 F. Supp.3d at 14 ("According to the Government, he also 'push[ed] individually or with others, against law enforcement officers setting up or adjusting barriers in restricted area near the U.S. Capitol."); *Nordean,* 579 F. Supp.3d at 37 ("storming" past barricades and law enforcement officers).

The "violent manner" standard is coherent, measurable, and workable, and has been expressly adopted by the Eight Circuit and applied in cases as recently as 2021.  *See Rupert,* 2021 U.S. Dist. LEXIS 46798, at *23 ("The civil disorder statute, Section 231(a)(3), applies 'only to violent physical acts,' … the Court must apply Eighth Circuit precedent in *Mechanic*.").

The only case where a court expressly rejected the Eighth Circuit Court of Appeals solution was *United States v. Wood,* from the District of Delaware. *Wood*, 2021 U.S. Dist. LEXIS 134774, at *18 ("The act need only be one that obstructs, impedes, or interferes with law enforcement engaged in the performance of duties incident to, and during a civil disorder. Although it may be likely that violent conduct will be at issue with a defendant charged under the statute, it is possible for nonviolent acts to also fall within the statute's prohibition.").  But *Wood* - much like *Fermat's Last Theorem* - only suggests an alternative standard exists in theory. There the Court did not need to provide a theory for how the statute could capture non-violent conduct because the defendant in *Wood,* a violent Black Lives Matter protestor, threw a brick that shattered the back window of a

police car amidst a civil disorder in the wake of George Floyd's death.  So there is, in fact, no alternative to the Eighth Circuit's standard.

As recently as the pretrial conference on January 3, 2023, the Court acknowledged that Mr. Barnett is not accused of any violent conduct.  Accordingly, for the Court to hold that he can be charged with part (a)(3), the Court must invent a new standard to include non-violent conduct, specially tailored for the exact factual circumstances of Mr. Barnett's conduct on January 6.  And because the indictment is bare bones and provides no factual basis - in fact, the Court and defense learned only yesterday for the first time that the act that the Government seeks to charge Mr. Barnett for is limited to an interaction with a single officer in the Rotunda - the Court can only evaluate the video footage for itself and create the new standard by arguing for the Government why Mr. Barnett's admittedly non-violent conduct should be included in the dragnet of part (a)(3), when there exists no precedent that says it is.

The choice before the Court, therefore, is to invent from whole cloth a new standard that specifically targets Mr. Barnett's conduct in the Rotunda based upon the court's pretrial factual evaluation of the video evidence, or to adopt a half-century-old simple, coherent, measurable, workable standard developed by one of the Federal Circuits that is easily applied by other district courts and is consistent with January 6 jurisprudence.

As the obvious choice is to adopt the Eighth Circuit's standard - namely, Section 231(a)(3) requires that the conduct be done in a "violent manner" - and because Mr. Barnett, by the Government's admission is not accused of being violent, the Court must dismiss Count One in its entirety.[3]

---

[3] The Court must not allow the Government to rescue Count One by arguing that Mr. Barnett is also accused of "attempting" to obstruct, impede, or interfere.  Just as Mr. Barnett is not accused of committing a violent act in the Rotunda, he is likewise not accused of performing an act that was a substantial step towards performing a violent act in the Rotunda.

**D. In the alternative, Mr. Barnett is not accused of conduct during a "civil disorder" as defined by the statute.**

The fact that Mr. Barnett is not accused of violent conduct is sufficient grounds to dismiss Count One. But in the alternative, the Court must also consider the overbreadth of Section 231(a)(3) based on the definition of "civil disorder" found in Section 232. January 6 jurisprudence has unfairly applied "civil disorder" in a way that has allowed the Government to use Section 231(a)(3) as a catch-all charge for any peaceful protestor who exercised the First Amendment right to peacefully protest at the Capitol on January 6, 2021. The Government simply defined the entire day of January 6 as one gigantic "civil disorder" based on evidence that sales were down at a Safeway store somewhere in Washington, DC, and thereby created a license to charge any otherwise peaceful protestor with "obstructing, interfering, or impeding" with law enforcement simply based upon the protestors presence at the Capitol. The Government makes Section 231(a)(3) a strict liability crime for peaceful protestors if the peaceful protestor has the misfortune of being at a protest that turns violent through no fault of his own.

Had this same unfair and unconstitutional standard for a "civil disorder" been applied during the season of Black Lives Matter protests in 2020 that lasted several months and included dozens of violent protests that devastated entire cities, the Government could have charged tens of thousands of people in Minneapolis, Atlanta, New York, Washington, Portland, and other cities across the Country with Section 231(a)(3), and would still be making arrests to this very day by the thousands, which is not the case. By contrast, at a recent status conference in another January 6 case before the Honorable Judge Hogan, Judge Hogan said on the record that the Government intends to bring another thousand January 6 cases, two years after a one-time event that lasted no more than a few hours.

The standard that the Government wishes to apply allows the Government to criminalize peaceful protestors like Mr. Barnett based on the fact that somewhere else, someone else, wholly unrelated to Mr. Barnett and without Mr. Barnett's knowledge, acted violently, simply because the Government decided that January 6, writ large, is one big gigantic "civil disorder."

This interpretation and application of Section 231(a)(3) is clearly unconstitutional for its overbreadth. The alternative that the Court should adopt is that a "civil disorder" is a local event, not a global event, and the statute can only be applied under narrowly tailored circumstances where the defendant was in some reasonable proximity to overt acts of violence and his interference directly prevented a specific identifiable law enforcement officer from responding to the violence and preventing damage to property or injury to another person. This is consistent with the other parts of the statute, parts (a)(1) and (a)(2), which prohibits conduct that is directly related to violent acts, such as teaching another a technique to inflict damage or injury, or manufacturing an explosive device that causes damage or injury.

As for Mr. Barnett's case, the Court should reject the Government's unfair application of Section 231(a)(3) that is an unprecedented targeting of a certain group who exercised their First Amendment rights on one particular day in history, and dismiss Charge One of the Superseding Indictment.

## CONCLUSION

For the foregoing reasons, the Government should dismiss Count One of the Superseding Indictment in its entirety.

Dated: January 5, 2023
Washington, DC

Respectfully submitted,


/s/ Jonathan S. Gross                     /s/ Joseph D. McBride, Esq
Jonathan S. Gross                     Joseph D. McBride, Esq.
Bar ID:  MD0162                     Bar ID: NY0403
2833 Smith Ave, Suite 331        THE MCBRIDE LAW FIRM, PLLC
Baltimore, MD 21209           99 Park Avenue, 6th Floor
p: (443) 813-0141                New York, NY 10016
e: jon@clevengerfirm.com      e: jmcbride@mcbridelawnyc.com

## CERTIFICATE OF SERVICE

I hereby certify on this 5th day of January 2023, a copy of the foregoing was served upon all

parties as forwarded through the Electronic Case Filing (ECF) System.

/s/ Jonathan Gross, Esq.
Jonathan Gross, Esq.