## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES** | ) | |
| | ) | |
| v. | ) | 1:21-cr-38 |
| | ) | |
| **RICHARD BARNETT** | ) | |
| _____ | ) | |

### DEFENDANT'S REPLY TO THE GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COUNT ONE OF THE SUPERSEDING INDICTMENT, 18 U.S.C. 231(a)(3)

By and through counsel, Defendant Richard Barnett submits this Brief in Reply to the Government's Opposition to Defendant's Motion to Dismiss Count One of the Superseding Indictment.

### BACKGROUND

On December 22, 2022, days before Christmas and trial, the Government filed a Superseding indictment with the new charge of 18 U.S.C. § 231(a)(3). This charge stems from the Government's playbook on charging and prosecuting thousands of American Citizens who went to the US Capitol to protest the Federal Government for a few hours on January 6, 2021, which has now become an entirely new body of law called January 6 jurisprudence (hereinafter "January 6 jurisprudence").

At a pretrial conference on January 4, 2023, the Government acknowledged that Mr. Barnett is not charged with violent conduct. Mr. Barnett is the first non-violent January 6 defendant charged with violating Section 231(a)(3). The defendant moved to dismiss the charge because an essential element of the offense is that the defendant acted in a "violent manner," and

Mr. Barnett was not violent.  *United States v. Casper*, 541 F.2d 1275, 1276 (8th Cir. 1976) (citing *United States v. Mechanic,* 454 F.2d 849, 852 (8th Cir. 1971)).

## ARGUMENT

**The Government's first argument about overbreadth and vagueness is entirely irrelevant and should be disregarded.**

The Government makes two arguments in its Opposition, but the first is completely irrelevant to the defendant's Motion, and accordingly, the Court should disregard it.  The first argument, Opp. at 4-12, is that "Section 231(a)(3) is Neither Unconstitutionally Vague nor Overbroad."  No doubt, the Government only included this argument by cutting and pasting from the multitude of other motions in opposition it filed in January 6 cases where this poorly drafted and frequently challenged statute was charged and challenged for vagueness and overbreadth.  But what the Government missed is that, unlike those other cases, Mr. Barnett is not challenging the statute.  Mr. Barnett is simply pointing out that he is not accused of conduct that satisfies the elements, and therefore the charge should be dismissed.

A criminal defendant may move for dismissal based on a defect in the indictment, such as a failure to state an offense, *United States v. Knowles*, 197 F. Supp. 3d 143, 148 (D.D.C. 2016). "An indictment that fails to allege each material element of an offense fails to charge that offense." *U.S. v. Dale*, 782 F. Supp. 615, 624 (D.D.C. 1991) (citing *United States v. London,* 550 F.2d 206, 211 (5th Cir. 1977)).  Here, the defendant is not arguing that the statute is overbroad or vague; the defendant is arguing that the charge should be dismissed because it includes the essential element of acting in a "violent manner" and he is not charged with acting in a violent manner.

The fact that Judge's Boasberg, Kelly, Bates, and Nichols have rejected challenges to the statute in *Mostofsky, Nordean, McHugh, and Fischer* is irrelevant, because contrary to the Government's claim that the challenges were "nearly identical" to Mr. Barnett's motion, they are

in fact all completely distinguishable in the most critical and relevant ways because (1) the defendants in those cases challenged the statute, whereas Mr. Barnett does not, and (2) the defendants in those cases were all accused of acts of violence, whereas Mr. Barnett is not. *Mostofsky,* 579 F. Supp.3d at 14 ("According to the Government, he also 'push[ed] individually or with others, against law enforcement officers setting up or adjusting barriers in restricted area near the U.S. Capitol."); *Nordean,* 579 F. Supp.3d at ("storming" past barricades and law enforcement officers); *United States v. McHugh,* 583 F. Supp. 3d 1, 9 (D.D.C. 2022) ("McHugh personally engaged in additional violent conduct during the riot."); *United States v. Fischer,* No. 21-cr-234 (CJN), ECF 52 (Superseding Indictment charging him with 18 U.S.C. § 111(a)(1) Assaulting, Resisting, and Impeding Certain Officers).

The Government also cites *United States v. Phomma*, where a violent member of the radical leftists terrorist group antifa assaulted several police officers during a Black Lives Matter protest, *United States v. Rupert,* where a Black Lives Matter protestor set fire to a store in Minneapolis, *United States v. Pugh,* where another Black Lives Matter protestor used a bat to break out the window of a police car, *United States v. Wood,* where another Black Lives Matter protestor threw a brick through the back window of a police car, and *United States v. Howard*, where yet another Black Lives Matter protestor in Kenosha, Wisconsin threw a brick, but instead of throwing it at a police car he threw it at a police officer. These cases all occurred during the months-long season of Black Lives Matter riots that, as both the Court and Government well know, dwarf the few hours on January 6 in violence, lawlessness, theft, destruction, devastation, and tragic loss of life.[1] But

---

[1] This is true even within this District. According to the New York Times, on May 29-31, crowds of violent Black Lives Matter rioters "surged forward against lines of riot police with plastic shields as the two sides vied for control of Lafayette Square across from the White House. Protestors threw water bottles, set off fireworks and burned a pile of wood and at least one car," causing a fire in the historic Church of the Presidents…Hundreds of people surged towards the White House as Secret Service and United States Park Police officers sought to block them. Brick

these cases also have in common that they, unlike Mr. Barnett's case, involve challenges to the statute and acts of violence. Mr. Barnett's case has neither, so the Government's pages about "The Vagueness and Overbreadth Doctrines" are inapplicable because Mr. Barnett does not challenge the statute.

**Section 231 requires an act of violence as an essential element, and Mr. Barnett has never been accused of engaging in violence.**

To reiterate the defendant's argument, the defendant argues that the charge fails because violence is an essential element of Section 231(a)(3), and the Government to date has not accused Mr. Barnett of engaging in violence.

The Government's second argument in its Opposition is that "Section 231(a)(3) Is Not Limited to Violent Conduct by the Defendant." But the defendant, in his Motion, clearly showed the Court that the bevy of January 6 cases involving Section 231(a)(3) all involved violent acts and did not establish a coherent, measurable, workable standard for non-violent acts. By contrast, the Eighth Circuit has recommended a simple coherent, measurable, workable standard, namely, only violent acts are prohibited by the statute.

As explained clearly in the defendant's Motion, all courts agree that Section 231(a)(3) does not prohibit constitutionally protected conduct because if it did, the statute would be unconstitutional. It is also generally agreed that the statute only prohibits certain "conduct" not

---

and bottles were thrown, and the police responded with pepper spray. At one point, an official said, a barricade near the Treasury Department next door to the White House was penetrated..." As the rioters threatened to take the White House, the President of the United States was whisked by the Secret Service to the underground bunker known as the Presidential Emergency Operations Center, where he spent the night. The Presidential Bunker had not been used since September 11, and never since, even on January 6th. "Businesses far from the White House boarded up to guard against vandalism, and Mayor Muriel E. Bowser ordered an 11 p.m. curfew." This all occurred as violent riots were coordinated simultaneously around the country in at least 75 other cities. Peter Baker and Maggie Haberman, *As Protests and Violence Spill Over, Trump Shrinks Back*, New York Times, May 31, 2020.

speech, which accords with the language of the statute, which expressly says, "any act."  *See Phomma*, 561 F. Supp.3d at 1068.[2]  Once established that only conduct is prohibited, it must then also be established that only certain types of conduct are prohibited so as to exclude constitutionally protected non-violent conduct.  It is not sufficient to simply say that conduct that "obstructs, impedes, or interferes" because, as the defendant pointed out, that would include broad swaths of constitutionally protected conduct.

The Eighth Circuit addressed this issue by narrowing the scope of conduct to violent acts, thereby solving the problem by eliminating all non-violent conduct.  The January 6 jurisprudence has not created a similar or different standard from the Eighth Circuit, nor has it had an opportunity to do so because this Court has only seen charges under Section 231(a)(3) that involve violent conduct.  As Mr. Barnett is a true case of first impression as he is the first January 6 defendant charged under Section 231(a)(3) but not accused of violent conduct, the Court must either adopt the only standard available - the non-violent standard recommended by the Eighth Circuit - or else the Court must create from whole cloth a new standard for charging non-violent protestors with Section 231(a)(3) based on the facts of Mr. Barnett's case.

The defense's challenge to the Government and the Court is not about the statute.  The defense posits, based on an analysis of case law of Section 231(a)(3) - both traditional case law and the new January 6 jurisprudence - that the standard for prohibited conduct under 231(a)(3) requires violence as an essential element.  To meet this challenge, the Government needed to counter with case law showing that courts have established an alternative coherent, measurable, workable standard for which the statute prohibits non-violent conduct.  The Government does not

---

[2] The Government cites Fischer, 2022 WL 782413, at *4 suggesting that verbal threats are included, but Fischer is an outlier, and the conclusion contradicts the express language of the statute that says "any acts."  Fischer also does not include a standard for non-violent acts.

address this central argument at all in its Opposition.  Nowhere in its Opposition does the Government even suggest a standard for nonviolent conduct prohibited by Section 231(a)(3) or cite a single case that does the same.

The Government wants the Court to believe that the conclusion in *Casper* setting forth the non-violent standard is "at best, dicta" because, according to the Government, when *Casper* approved a jury instruction that expressly included a violent act as an essential element of Section 231(a)(3), the Eighth Circuit erred.  According to the Government, the judges on the Eighth Circuit Court of Appeals misunderstood and misapplied their own ruling in a different case, *Mechanic*, from just a few years earlier.  The Government incorrectly wants this Court to believe that the Eighth Circuit's Judges only included violence as an essential element of Section 231(a)(3)'s approved jury instructions because that specific case dealt with violent acts.  The Government is wrong because "there was no question before the court as to whether nonviolent conduct that obstructed, impeded, or interfered with the police during a civil disorder fell within the ambit of 231(a)(3)," the conclusion that violence is an essential element should be understood as "at best, dicta."  Opp. at 14.

The notion that the Government understands the Eighth Circuit's ruling better than the Eighth Circuit's Judges is absurd.  The Government is also demonstrably incorrect because the district court's in the Eighth Circuit, to this very day, come to the same conclusion as the defendant, namely, that violence is essential.  *See Rupert,* 2021 U.S. Dist. LEXIS 46798, at *23 ("The civil disorder statute, Section 231(a)(3), applies 'only to violent physical acts,' … the Court must apply Eighth Circuit precedent in *Mechanic*.").

Further, even if this Court is to accept the Government's premise, namely that the standard for nonviolent acts set in *Mechanic* and *Casper* is "at best, dicta" because those cases were dealing

with violent acts, then the Court must also consider the holdings in the new January 6 jurisprudence as "at best, dicta" because those cases were also dealing only with violent acts. And that is the defendant's point. The January 6 cases have only spoken about applying Section 231(a)(3) to non-violent acts *in theory,* but the Court has never, until this case, been faced with doing so *in practice.*

It is well established that Mr. Barnett has never been accused of engaging in violence. Yet the Government falsely states that Casper's case is somehow similar to Mr. Barnett's because "Casper and his co-defendants were apprehended while hiding inside a 'patrolled perimeter [in the village of Wounded Knee] that had been established by law enforcement officials,' with two firearms and ammunition on or near them." In fact, Casper and his co-defendants were charged with "attempting to interfere with United States Marshals and FBI agents during a civil disorder at Wounded Knee, South Dakota." The "ammunition" found on or near him that the Government suspiciously neglected to mention included "1 sealed tin of 800 rounds, 7.62 millimeter cartridges; 1 bolt action, 12 gauge shotgun with two shells in the magazine; 1 M1 Carbine,.30 caliber, Serial No. 7845, containing two magazines taped together with twenty-nine,.30 caliber rounds in each magazine and one.30 caliber round in the chamber. 1 cartridge belt containing eleven 12 gauge shotgun shells; 1 military type jacket containing several hundred.30 caliber cartridges; 1 cartridge belt containing twenty 12 gauge shotgun shells; 1 box containing six hundred nineteen.30 caliber cartridges." *United States v. McArthur,* 419 F. Supp. 186, 191 (D.N.D. 1975). The idea that Mr. Barnett's case is even remotely similar is laughable. In *Casper*, the arsenal of weapons, and other facts showing that they intended to use the weapons to engage in acts of violence against law enforcement, were sufficient to convict Casper and his co-defendants of an attempted violation of Section 231(a)(3). The Government has never alleged that Mr. Barnett intended to use a weapon or commit any act of violence against anyone and has conspicuously neglected to charge him with

any violence and assault-related charges - yet did not hesitate to charge him with stealing a single envelope.

The Government also wants the Court to believe that this case is like *Robertson*.  But this case is clearly distinguishable from *Robertson* because, in that case, the Government alleged that the defendant used a wooden stick in a violent manner and made contact with police officers. *Robertson,* No. 21-cr-34, ECF 147, transcript of the sentencing hearing, page 12, lines 3-4; *see also* page 10, lines 12-20.  The fact that the Court in *Robertson* allowed the Government's jury instructions that misstated the essential elements of Section 231(a)(3) by omitting the element of violent conduct does not mean that the jury instructions were proper. It only means that Robertson's counsel did not object.  But they should have.

In its Opposition, the Government finally reveals what it intends to show at trial after two years of hiding the ball.

> The government's evidence will show that the defendant was not some bystander yelling at police to desist. The government anticipates that officers will testify that one of their objectives, broadly, was to safely clear the Capitol building of rioters, and the government's evidence will show that the defendant acted with specific intent to hinder this and other objectives.

Opp at 11.  In other words, the conduct Mr. Barnett is accused of is "yelling at police to desist," which is pure speech, but the Government will show that the one police officer he was yelling at, Officer Terrence Craig, was "broadly" directed to "clear the Capitol building of rioters," and the Government will show other evidence that Mr. Barnett, by yelling at Officer Craig, actually intended to hinder Officer Craig from "this and other objectives."

To meet the burden of violent conduct that Section 231(a)(3) requires, the Government, in its opposition, seeks to reserve the right to accuse Mr. Barnett of violence at trial, which would be breaking news to both the Court and the defense if it happened. To this point, the Government

writes in its Opposition that it "does not concede that the defendant's conduct was entirely nonviolent, as his conduct parallel's Casper's." This is a disingenuous attempt the reinvent the fact record, and this Court must expressly reject this notion.

The Government just days ago filed a Superseding indictment, yet conspicuously neglected to charge him with the charges reserved for violent defendants in January 6 cases, including but not limited to 18 U.S.C. § 111(a)(1) and (b) Assaulting, Resisting, or Impeding Certain Officers Using a Dangerous Weapon, and 40 U.S.C. § 5104(e)(2)(F) Acts of Physical Violence in the Capitol Grounds or Buildings. The Government has provided no evidence of violent conduct and has not indicated in over two years that Mr. Barnett was accused of violent conduct. Until just days ago, for two years, the defendant and the whole country thought that Mr. Barnett, a retired fireman with no criminal history, was charged with putting his feet on a desk in Nancy Pelosi's office and stealing an envelope. At the pretrial conference, the Government revealed to the Court and to the defense that Mr. Barnett was not being charged for that. Now we know for sure that he is being charged for yelling at Officer Craig. If the Government wishes to bring a new accusation that he acted violently, let them bring a new indictment, provide new evidence if it has any, and let it agree to a continuance because, pursuant to the Court's standard, this new revelation two days before trial would certainly constitute prejudice to the defendant. But as of this filing, the indictment does not mention violent conduct, the Government has acknowledged in the past that there was no violent conduct, and there is no evidence of violent conduct.

Regarding this Motion to Dismiss, the Court is faced with a decision. Mr. Barnett is being charged with a crime that has until now only been applied to violent acts. The Court can choose to adopt the existing standard that is coherent, measurable, and workable, as well as elegant in its simplicity. The alternative is to add to the ever-expanding corpus of new January 6 jurisprudence

by charging a nonviolent, peaceful protestor with a crime that has until now only been applied to violent protestors.  This is a special standard that has never been applied before, as can be readily shown from the fact that no similar FBI manhunt and DOJ prosecution is being conducted for the tens if not hundreds of thousands of protestors in cities across the country who obstructed police during months of violent Black Lives Matter protests that adversely affected commerce by looting and burning businesses, and obstructed official proceedings by shutting down court houses.  The application of this special standard is a violation of the spirit, if not the letter, of the guarantee of Equal Protection under the law.

If created and applied broadly, the standard of including non-violent conduct into the dragnet of Section 231(a)(3) would effectively outlaw peaceful protests.  Citizens will have to fear that if they attend a "mostly peaceful protest" that turns into a riot, through no fault of their own, if a single police officer alleges that the protestor in "any way" obstructed, impeded, or interfered with the police officer's "objectives" the Government may arrest the protestor, charge them with Section 231(a)(3), and leave the protestor to the mercy of a jury, as Mr. Barnett is now.  The chilling effect is enough to make any citizen with a grievance against the Government choose to stay at home instead.

## CONCLUSION

For the last two years, the Government has charged hundreds of peaceful protestors with the nebulous and amorphous charge of 18 U.S.C. 1512(c)(2), and because of the new January 6 jurisprudence, it has become an unbeatable charge that now creates strict liability for virtually all January 6 protestors that the Government wishes to hunt down and prosecute, including peaceful protestors like Mr. Barnett.  But just as the Circuit Court of Appeals is in the midst of deciding

whether to allow this Government prosecutorial tactic to continue, the Government invents a new unbeatable nebulous strict liability charge in Section 231(a)(3).

As the defense pointed out in its Motion to Dismiss, up until Mr. Barnett, Section 231(a)(3) has been reserved for those January 6 defendants who were charged with violence, not peaceful protestors like Mr. Barnett.  Denying this Motion to Dismiss will give the green light to the Government to charge thousands of peaceful protestors that it is now planning to hunt down and arrest with an additional unbeatable strict liability felony charge.  Granting this Motion to Dismiss will properly prevent this statute from capturing constitutionally protected activity in its already dangerously broad and frequently challenged dragnet.  More importantly, denying this Motion will allow this August Court to turn its attention to the truly significant and historic cases that typically appear before it and spare the Court from additional years of parsing split-second images of body camera footage in the Rotunda and reviewing Facebook posts in the Government's unprecedented and insatiable lust to hunt down and prosecute a group of political protestors, much as *Javert* hunted *Jean Val Jean* for the crime of stealing a loaf of bread, or in this case a single envelope.

Accordingly, for the foregoing reasons, the Court should dismiss Count One.

Dated: January 8, 2023
Washington, DC


Respectfully submitted,


/s/ Jonathan S. Gross                         /s/ Joseph D. McBride, Esq
Jonathan S. Gross                             Joseph D. McBride, Esq.
Bar ID:  MD0162                               Bar ID: NY0403
2833 Smith Ave, Suite 331                     THE MCBRIDE LAW FIRM, PLLC
Baltimore, MD 21209                           99 Park Avenue, 6th Floor
p: (443) 813-0141                             New York, NY 10016
e: jon@clevengerfirm.com                      e: jmcbride@mcbridelawnyc.com


/s/ Bradford L Geyer                          /s/ Carolyn Stewart
Bradford L. Geyer                             Carolyn Stewart
FormerFedsGroup.com, LLC                      Stewart Country Law, PA
141 I Route 130, Suite 303                    1204 Swilley Rd
Cinnaminson, NY 08077                         Plant City, FL 33567
e:  Brad@FormerFedsGroup.com                  e:  Carolstewart_esq@protonmail.com


**CERTIFICATE OF SERVICE**

I hereby certify on this 8th day of January 2023, a copy of the foregoing was served upon all

parties as forwarded through the Electronic Case Filing (ECF) System.

/s/ Joseph D. McBride, Esq
Jonathan Gross, Esq.