**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Case No. 21-CR-38 (CRC)** |
| **v.** | : | |
| | : | |
| **RICHARD BARNETT** | : | |
| **also known as "Bigo Barnett,"** | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S OPPOSITION TO THE DEFENDANT'S MOTION TO DISMISS**
**COUNT ONE OF THE SUPERSEDING INDICTMENT**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, opposes the Defendant's Motion to Dismiss Count One of the Superseding Indictment (the "defendant's motion" or "Def.'s Mot."), ECF No. 123. Count One of the Superseding Indictment charges the defendant with Civil Disorder, in violation of 18 U.S.C § 231(a)(3). The United Sates respectfully requests that the defendant's motion be denied because, contrary to the defendant's assertions, the statute is neither unconstitutionally vague nor overbroad, and it does not require violent conduct by the defendant *himself*.

**BACKGROUND**

The Court is, at this point, very familiar with the factual background of this case and the broader background of the January 6, 2021 Capitol riot. The Superseding Indictment, returned by the grand jury on December 21, 2022, charges the defendant—along with seven other crimes—with Civil Disorder, in violation of 18 U.S.C. § 231(a)(3). Pursuant to § 231(a)(3):

> Whoever commits or attempts to commit any act to obstruct, impede, or interfere with any fireman or law enforcement officer lawfully engaged in the lawful performance of his official duties incident to and during the commission of a civil disorder which in any way or degree obstructs, delays, or adversely affects

commerce or the movement of any article or commodity in commerce or the conduct or performance of any federally protected function—

Shall be fined under this title or imprisoned not more than five years, or both.

18 U.S.C. § 231(a)(3).  "Civil disorder" for purposes of this statute is defined as "any public disturbance involving acts of violence by assemblages of three or more persons, which causes an immediate danger of or results in damage or injury to the property or person of any other individual." *Id.* § 232(1).

Count One of the Superseding Indictment alleges the following:

On or about January 6, 2021, within the District of Columbia and elsewhere, RICHARD BARNETT, also known as "Bigo Barnett," committed and attempted to commit an act to obstruct, impede, and interfere with a law enforcement officer, that is, an officer from the Metropolitan Police Department, lawfully engaged in the lawful performance of his official duties incident to and during the commission of a civil disorder which in any way and degree obstructed, delayed, and adversely affected commerce and the movement of any article and commodity in commerce and the conduct and performance of any federally protected function.

Superseding Indictment at 1–2, ECF No. 96.

## STANDARD OF REVIEW

Federal Rule of Criminal Procedure 7(c)(1) states, in relevant part, that "[t]he indictment … must be a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1).  An indictment is sufficient under the Constitution and Rule 7 if it "contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend," *Hamling v. United States*, 418 U.S. 87, 117 (1974), which may be accomplished, as it is here, by "echo[ing] the operative statutory text while also specifying the time and place of the offense," *United States v. Williamson*, 903 F.3d 124, 130 (D.C. Cir. 2018).  "[T]he validity of an indictment 'is not a question of whether it could have been more definite and certain.'" *United States v. Verrusio*, 762 F.3d 1, 13 (D.C. Cir. 2014) (quoting *United*

*States v. Debrow*, 346 U.S. 374, 378 (1953)).  And an indictment need not inform a defendant "as to every means by which the prosecution hopes to prove that the crime was committed." *United States v. Haldeman*, 559 F.2d 31, 124 (D.C. Cir. 1976).

Rule 12 permits a party to raise in a pretrial motion "any defense, objection, or request that the court can determine *without a trial on the merits*."  Fed. R. Crim. P. 12(b)(1) (emphasis added). It follows that Rule 12 "does not explicitly authorize the pretrial dismissal of an indictment on sufficiency-of-the-evidence grounds" unless the government "has made a *full* proffer of evidence" or the parties have agreed to a "stipulated record," *United States v. Yakou*, 428 F.3d 241, 246-47 (D.C. Cir. 2005) (emphasis added).  Neither of these things occurred here.

A criminal defendant may move for dismissal based on a defect in the indictment, such as a failure to state an offense.  *United States v. Knowles*, 197 F. Supp. 3d 143, 148 (D.D.C. 2016). Whether an indictment fails to state an offense because an essential element is absent calls for a legal determination.   But criminal cases have no mechanism equivalent to the civil rule for summary judgment.  *United States v. Bailey*, 444 U.S. 394, 413, n.9 (1980) (motions for summary judgment are creatures of civil, not criminal trials); *Yakou*, 428 F.2d at 246-47 ("There is no federal criminal procedural mechanism that resembles a motion for summary judgment in the civil context"); *United States v. Oseguera Gonzalez*, No. 20-cr-40-BAH at *5, 2020 WL 6342940 (D.D.C. Oct. 29, 2020) (collecting cases explaining that there is no summary judgment procedure in criminal cases or one that permits pretrial determination of the sufficiency of the evidence). Accordingly, dismissal of a charge does not depend on forecasts of what the government can prove. Indeed, "[i]f contested facts surrounding the commission of the offense would be of *any* assistance in determining the validity of the motion [to dismiss], Rule 12 doesn't authorize its disposition before trial."  *United States v. Pope*, 613 F.3d 1255, 1259 (10th Cir. 2010) (Gorsuch, J.).

Thus, when ruling on a motion to dismiss for failure to state an offense, a district court is limited to reviewing the face of the indictment and more specifically, the language used to charge the crimes. *United States v. Bingert*, No. 21-cr-91 (RCL), 2022 WL 1659163, at *3 (D.D.C. May 25, 2022) (a motion to dismiss challenges the adequacy of an indictment on its face and the relevant inquiry is whether its allegations permit a jury to find that the crimes charged were committed); *United States v. McHugh*, 583 F. Supp. 3d 1, 10 (D.D.C. 2022) (a motion to dismiss involves the Court's determination of the legal sufficiency of the indictment, not the sufficiency of the evidence); *United States v. Puma*, No. 21-cr-454 (PLF), 2020 WL 823079 at *4 (D.D.C. Mar. 19, 2022) (quoting *United States v. Sunia*, 643 F. Supp. 2d 51, 60 (D.D.C. 2009)).

## ARGUMENT

The defendant's motion lacks merit. The Superseding Indictment provides sufficient notice to the defendant as to the charge against him, so it is not unconstitutionally vague. Furthermore, § 231(a)(3) is not unconstitutionally overbroad on its face; violent conduct by the defendant *himself* is not required to violate it, and the statutory definition of "civil disorder" is not overbroad either. Accordingly, the Court should deny the defendant's motion.

## I.   Section 231(a)(3) Is Neither Unconstitutionally Vague nor Overbroad

By isolating various statutory terms, *see, e.g.*, Def.'s Mot. at 2 ("civil disorder," "disturbing the public with acts of violence," and "assembling with three or more persons to cause immediate danger"), 3 ("civil disorder" and "acts of violence"), and 4 ("any act to obstruct, impede, or interfere"), the defendant attempts to argue that § 231(a)(3), the civil disorder statute, is either unconstitutionally vague or overbroad. Def.'s Mot. at 2–7, 10–11. At least four judges in this district—Judge Boasberg, Judge Kelly, Judge Bates, and Judge Nichols—have recently rejected nearly identical challenges to § 231. *See United States v. Mostofsky*, No. 21-cr-138 (JEB) 2021

WL 6049891, at \*8–9 (D.D.C. Dec. 21, 2021) (rejecting overbreadth challenges); *United States v. Nordean*, No. 21-cr-175 (TJK), 2021 WL 6134595, at \*16–17 (D.D.C. Dec. 28, 2021) (rejecting vagueness and overbreadth challenges); *McHugh,* 583 F. Supp. 3d at 23–29 (rejecting vagueness and overbreadth challenges); *United States v. Fischer*, No. 21-cr-234 (CJN), 2022 WL 782413, at \*2–4 (D.D.C. Mar. 15, 2022) (rejecting vagueness and overbreadth challenges).[1]  This Court should too because, reading the statute as a whole, it passes muster.  Vagueness and overbreadth are not judged according to whether a litigant might identify a hypothetical case on the edge where application of a law might be questionable, yet the defendant erroneously urges the Court to do so. Instead, the defendant must demonstrate either that the statute fails to provide sufficient notice of what conduct constitutes a violation or that the statute could be unconstitutionally applied in a significant segment of cases.[2]  *See Fischer*, 2022 WL 782413, at \* 3–4.  The defendant fails to meet both of these high bars.

        *a.   The Vagueness and Overbreadth Doctrines*

An outgrowth of the Due Process Clause of the Fifth and Fourteenth Amendments, the "void for vagueness" doctrine prevents the enforcement of a criminal statute that is "so vague that

---

[1] A number of courts outside this circuit have also recently rejected similar challenges to § 231. *See United States v. Phomma*, No. 20-465, 2021 WL 4199961, at \*5 (D. Or. Sept. 15, 2021); *United States v. Rupert*, No. 20-cr-104 (NEB/TNL), 2021 WL 1341632, at \*16–\*20 (D. Minn. Jan. 6, 2021) (Report & Recommendation), *adopted*, 2021 WL 942101 (D. Minn. Mar. 12, 2021); *United States v. Pugh*, No. 1:20-cr-73-TFM, slip op. (S.D. Ala. May 13, 2021); *United States v. Wood*, No. 20-cr-56 MN, 2021 WL 3048448 (D. Del. July 20, 2021); and *United States v. Howard*, No. 21-cr-28-pp, 2021 WL 3856290 (E.D. Wis. Aug. 30, 2021).

[2] A more stringent standard applies to non-First Amendment cases because the defendant must show that no set of circumstances exists under which the [law] would be valid," or the litigant must "show that the law lacks a plainly legitimate sweep." *Americans for Prosperity Found. v. Bonta*, 141 S. Ct. 2373, 2387 (2021) (quotation omitted). Several of the defendant's arguments that do not implicate the First Amendment are in fact subject to the more stringent standard. But because the defendant's arguments fail under both standards, the government applies the more permissive standard throughout its Response.

it fails to give ordinary people fair notice of the conduct it punishes" or is "so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595 (2015). To ensure fair notice, "generally, a legislature need do nothing more than enact and publish the law, and afford the citizenry a reasonable opportunity to familiarize itself with its terms and to comply." *United States v. Bronstein*, 849 F.3d 1101, 1107 (D.C. Cir. 2017) (citation omitted).

A statute is not unconstitutionally vague simply because its applicability is unclear at the margins, *United States v. Williams*, 553 U.S. 285, 306 (2008), or because reasonable jurists might disagree on where to draw the line between lawful and unlawful conduct in particular circumstances, *Skilling v. United States*, 561 U.S. 358, 403 (2010). A provision is impermissibly vague only if it requires proof of an "incriminating fact" that is so indeterminate as to invite arbitrary and "wholly subjective" application. *Williams*, 553 U.S. at 306; *see Smith v. Goguen*, 415 U.S. 566, 578 (1974). A statutory provision is "not rendered unconstitutionally vague because it 'do[es] not mean the same thing to all people, all the time, everywhere.'" *Bronstein*, 849 F.3d at 1107 (quoting *Roth v. United States*, 354 U.S. 476, 491 (1957)). A statute is instead vague where it fails to specify any "standard of conduct . . . at all." *Coates v. Cincinnati*, 402 U.S. 611, 614 (1971). A law is not vague because it "call[s] for the application of a qualitative standard . . . to real-world conduct; 'the law is full of instances where a man's fate depends on his estimating rightly . . . some matter of degree.'" *Johnson*, 576 U.S. at 603–04 (quoting *Nash v. United States*, 229 U.S. 373, 377 (1913)).

There is a strong presumption that a statute is not vague. *See United States v. Nat'l Dairy Products Corp.*, 372 U.S. 29, 32 (1963). Other courts in this district have recognized that high bar. *See, e.g.*, *United States v. Gonzalez*, No. 20-cr-40 (BAH), 2020 WL 6342948, at *7 (D.D.C. Oct. 29, 2020); *see also United States v. Harmon*, No. 19-cr-395 (BAH), 2021 WL 1518344, at *4

(D.D.C. Apr. 16, 2021) (finding that the defendant did not meet the "stringent standard" to prevail on a Rule 12 vagueness motion).

Facial overbreadth challenges—in which a defendant asserts that a statute, constitutionally applied to him, is nevertheless invalid because it would be unconstitutional in a "substantial number" of *other* cases, *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 n.6 (2008)--are even more exceptional. Overbreadth can invalidate a criminal law only if "'a substantial number' of its applications are unconstitutional, 'judged in relation to the statute's plainly legitimate sweep,'" and no limiting construction is available. *Id.* (quoting *New York v. Ferber*, 458 U.S. 747, 769–771 (1982)); *see also City of Houston v. Hill*, 482 U.S. 451, 458 (1987). The Supreme Court has "vigorously enforced the requirement that a statute's overbreadth be *substantial*, not only in an absolute sense, but also relative to the statute's plainly legitimate sweep." *Williams*, 553 U.S. at 292.

 "[T]he mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge." *Members of the City Council v. Taxpayers for Vincent*, 466 U.S. 789, 800 (1984). Rather, a defendant must show a "realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court . . . ." *Id.* at 801. "Rarely, if ever, will an overbreadth challenge succeed against a law or regulation that is not specifically addressed to speech or to conduct necessarily associated with speech (such as picketing or demonstrating)." *Virginia v. Hicks*, 539 U.S. 113, 124 (2003).

Invalidating a statute for overbreadth is "strong medicine" to be applied "sparingly and only as a last resort." *Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973). If the statute is "readily susceptible" to a narrowing construction that would make it constitutional, it must be upheld.

*Virginia v. American Booksellers Ass'n*, 484 U.S. 383, 397 (1988); *accord Broadrick*, 413 U.S. at 613; *United States v. Rundo*, 990 F.3d 709, 714 (9th Cir. 2021) ("we construe [the riot statute, 18 U.S.C. §§ 2101–2102] as constitutional if we can reasonably do so").

  b. *Section 231(a)(3) is not void for vagueness.*

   The defendant argues that "to an ordinary person reading the statute, the phrase 'any act to obstruct, impede, or interfere' is vague because, on its face, the statute's plain meaning can fairly include pure speech or expressive nonphysical conduct protected by the First Amendment." Def. Mot. at 4.  But federal legislation enjoys a presumption of constitutionality that may only be overturned "upon a plain showing that Congress has exceeded its constitutional bounds." *United States v. Morrison,* 529 U.S. 598, 607 (2000).  Ultimately, the defendant cannot overcome this presumption because § 231(a)(3) is not constitutionally vague. *See McHugh*, 583 F. Supp. 3d at 24; *Nordean*, 2021 WL 6134595, at *17.  It provides sufficient notice of the conduct it prohibits.

   The terms the defendant attacks, such as "any act to obstruct, impede, or interfere," Def.'s Mot. at 4, do not carry the potential for misunderstanding or make the statute "so standardless that it invites arbitrary enforcement[,]" *Johnson v. United States*, 576 U.S. 591, 595 (2015); *see also Nordean*, 2021 WL 6134596, at *16 (observing that "there are specific fact-based ways to determine whether a 'defendant's conduct interferes with or impedes others,' or if a law enforcement officer is performing his official duties 'incident to and during' a civil disorder[]").  Like a similar challenge rejected by Judge Bates, the defendant's motion "misunderstand[s]" vagueness: "There is a crucial difference between reasonable people differing over the *meaning* of a word and reasonable people differing over its *application* to a given situation—the latter is perfectly normal, while the former is indicative of constitutional difficulty."  *McHugh,* 583 F. Supp. 3d at 27 (emphasis in original).  Indeed, § 231(a)(3) does not prohibit mere presence

at a civil disorder but rather, "acts performed with the intent to obstruct, impede, or interfere with a law enforcement officer" in the course of that disorder. *See id.* at 25.  It punishes intentional conduct, not "mere inadvertent conduct." *United States v. Featherston,* 461 F.2d 1119, 1122 (5th Cir. 1972).

Contrary to defendant's arguments, the statute's terms are thus quite different from statutory terms that courts have found to be vague, like statutes that turn on subjective judgments of whether a defendant's conduct was "annoying" or "indecent," or those that depend on the victim's state of mind. *See Nordean,* 2021 WL 6134595, at *16; *see also Williams*, 553 U.S. at 306.  "An ordinary person would have an intuitive understanding of what is proscribed by a ban on obstructing, impeding, or interfering with law enforcement." *McHugh,* 583 F. Supp. 3d at 27. In addition, § 231(a)(3) is not unique; many state and federal statutes likewise criminalize "obstructing," "impeding," or "interfering with" the government's efforts to enforce the law and maintain public order, and they have been upheld. *See, e.g.,* 26 U.S.C. § 7212(a) (prohibiting obstructing or impeding the administration of the tax laws); 18 U.S.C. § 2237 (making it unlawful to "oppose, prevent, impede, intimidate or interfere with" a maritime investigation); *United States v. Brice,* 926 F.2d 925, 930–31 (9th Cir. 1991) (rejecting overbreadth and vagueness challenges to 41 C.F.R. § 101-20.305, regulation prohibiting impeding or disrupting government duties); *see also* Cal. Penal Code § 148 (prohibiting resisting, delaying, or obstructing any peace officer or emergency medical technician); *State v. Illig-Renn,* 341 Or. 228 (2006) (rejecting constitutional attacks leveled against O.R.S. 162.247(1)(b), which prohibits interference with a police officer); *State v. Steen,* 164 Wash. App. 789, 808 (2011) (rejecting as-applied constitutional challenge to RCW 9A.76.020(1), which criminalizes obstructing police officers).

The defendant's vagueness assertions also ignore the fact that § 231(a)(3) requires *criminal intent*, which narrows its scope. *See McHugh*, 583 F. Supp. 3d at 25. Indeed, the requirement that a defendant who violates § 231(a)(3) act with the intent to obstruct, interfere or impede squarely addresses the defendant's overbreadth concerns. *See United States v. Gilbert*, 813 F.2d 1523, 1529 (9th Cir. 1987) (intent requirement prevents application of statute to protected speech). Taking a step back from the defendant's mischaracterizations, the statute plainly requires proof that the "act" was done with the specific criminal intent "to obstruct, impede, or interfere" with a firefighter or police officer. *See McHugh,* 583 F. Supp. 3d at 25 ("[Section] 231(a)(3) is a specific intent statute[.]")

The defendant's vagueness argument also fails because his conduct falls plainly within the ambit of § 231(a)(3). The Court must consider vagueness "as applied to the particular facts at issue, for a [defendant] who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applies to the conduct of others." *Nordean,* 2021 WL6134595, at *17 (citing *Holder v. Humanitarian Law Project*, 561 U.S. 1, 18–19 (2010)); *see generally Wood*, 2021 WL 3048448, at *9 ("Defendant does not have standing to bring a facial vagueness challenge" to § 231(a)(3) because he failed to "demonstrate that [the statute] is vague as applied to his conduct"). The conduct at issue here squarely satisfies § 231(a)(3). The January 6, 2021 attack on the United States Capitol by a mob of thousands, some of whom assaulted law enforcement officers, was clearly a "civil disorder," not just "citizen[s] peacefully[3] filming a police

---

[3] The violence that occurred in the course of the January 6, 2021 civil disorder is apparent. *See, e.g.*, *United States v. Fitzsimons*, No. 21-cr-158 (RC); *United States v. Robertson*, No. 21-cr-34 (CRC); *United States v. McCaughey, et al.*, No. 21-cr-40 (TNM); *United States v. Palmer*, No. 21-cr-328 (TSC); *United States v. Thompson*, No. 21-cr-461 (RCL); *United States v. Languerand*, No. 21-cr-353.

officer."[4]  And there is no question that the defendant participated in the disorder.  The only real question for trial on Count One is whether the defendant's conduct "obstruct[ed], impede[d], or interfere[d] with" law enforcement officers who were engaged in their official duties in response to that civil disorder. ECF No. 96 at 1.  The government's evidence will show that the defendant was not some bystander yelling at police to desist.  The government anticipates that officers will testify that one of their objectives, broadly, was to safely clear the Capitol building of rioters, and the government's evidence will show that the defendant acted with specific intent to hinder this and other objectives. To this end, the statute sufficiently "provide[s] people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits." *Hill v. Colorado*, 530 U.S. 703, 732 (2000).  Despite the defendant's complaints, "the terms [he] attacks do not carry the potential for misunderstanding[.]" *United States v. Fischer*, Case No. 21-CR-234 (CJN), 2022 WL 782413, at *3 (D.D.C. Mar. 15, 2022).

   c.  *Section 231(a)(3) is not unconstitutionally overbroad.*

   Many of the defendant's arguments and, most explicitly, his argument concerning the term "civil disorder," Def.'s Mot. at 10 (subsection "D"), are appropriately understood as an overbreadth argument—he contends that the statute criminalizes too wide an array of activity, including protected activity.  *See* Def.'s Mot. at 10–11.  "[T]his exact argument has been heard and rejected by at least five different federal judges all within the last year." *McHugh*, 583 F. Supp. 3d at 28 (citing *Mostofsky*, 2021 WL 6049891, at *8–9; *Nordean*, 2021 WL 6134595, at *17;

---

[4] The defendant attempts to support his point by claiming that "[i]t is well documented and 'intuitive' that citizens who film police officers 'obstruct, impede, and interfere,' with lawful police duties." Def.'s Mot. at 6.  But the defendant offers no such "documentation" for this false assertion.  The mere act of filming police does not "obstruct, impede, and interfere" with police activity.  However, the additional acts injected by the defendant of "becom[ing] noncompliant and aggressive with officers" during a civil order, *id.*, coupled with the required criminal intent, could certainly rise to that level.

*Howard*, 2021 WL 3856290, at *11–12; *Phomma*, 2021 WL 4199961, at *4–5; *Wood*, 2021 WL 3048448, at *7–8, and adding, "[t]his Court joins them.").

Section 231(a)(3) is not overbroad because "the statute's potentially unconstitutional applications are few compared to its legitimate ones." *Mostofsky,* 2021 WL 6049891, at *8. The plain text supports this reading. *See Nordean*, 2021 WL 6134595, at *17. An overbreadth challenge faces a steep uphill climb when the statute focuses mainly on conduct, as § 231(a)(3) does. *See Hicks*, 539 U.S. at 119, 124 (noting the "substantial social costs created by the overbreadth doctrine when it blocks application of a law to . . . constitutionally unprotected conduct" and observing that laws "not specifically addressed to speech or to conduct necessarily associated with speech" are far less likely to be overbroad).

The defendant contends that "civil disorder," as defined at § 232(1), without any specificity as to how that term would be overbroadly read, creates a "catch-all charge for any peaceful protester who exercised the First Amendment right to peacefully protest at the Capitol on January 6, 2021." Def.'s Mot. at 10. The text of the statute contradicts this contention because it "shows that § 231(a)(3) covers primarily, if not exclusively, conduct or unprotected speech, such as threats." *Fischer*, 2022 WL 782413, at *4 (internal quotation marks omitted). Indeed, "civil disorder's 'fulsome statutory definition' makes plain that to constitute a 'civil disorder,' the "gathering' must 'involve acts of violence' and either cause or 'immediate[ly]' 'threaten bodily injury or property damage[,]'" and "[t]he definition, in other words, 'limits the application of civil disorder to a small (obviously unlawful) subset of public gatherings.'" *Id.* at *3 (alterations in original) (quoting *McHugh*, 583 F. Supp. 3d at 27 n. 22).

## II.    Section 231(a)(3) Is Not Limited to Violent Conduct by the Defendant

Placing unwarranted emphasis on a single phrase from a jury instruction approved in *United States v. Casper*, 541 F.2d 1275, 1276 (8th Cir. 1976), the defendant asserts that § 231(a)(3) requires that the defendant engage in an act of "violence" in order for him to be found guilty. Def.'s Mot. at 7. According to the defendant, this means that dismissal of the charge is warranted because he is not alleged to have committed violence. The defendant's reliance on *Casper* is misplaced and his interpretation of it is meritless.

*Casper* involved a both a different procedural posture and a different legal question than those presented to this Court by the defendant's motion. *Casper* was charged with violating § 231(a)(3), among other crimes. After a trial, the court found that the defendant "did carry, on foot, surreptitiously, through a patrolled perimeter, arms and ammunition which had a substantial capacity to reach out and wound or kill[, and that he] . . . intended it for a center from which ammunition was being fired at law enforcement officers, which did wound." *United States v. McArthur*, 419 F. Supp. 186, 191 (D.N.D. 1975), *aff'd sub nom. Casper*, 541 F.2d 1275. The trial court instructed the jury that the government had the burden to prove that "the defendant attempted to commit an act for the intended purpose of obstructing, impeding, or interfering, either by himself or with someone else, in a violent manner with [a] law enforcement officer or officers[,]" 541 F.2d at 1276. The jury convicted Casper of the § 231(a)(3) count. On appeal, Casper challenged the sufficiency of the evidence on the § 231(a)(3) charge. In affirming the defendant's conviction, *Casper* included a brief determination that the district court, *inter alia*, properly instructed the jury. *See id.* But there was never any argument as to either whether the phrase "in a violent manner" was required to satisfy § 231(a)(1), nor whether the conduct at issue satisfied that phrase, and

consequently, neither *Casper*, nor the underlying district court decisions using that instructional phrase, analyze or explain how or why the "in a violent manner" phrase was included.

*Casper*'s approval of that jury instruction likely derived from the earlier Eighth Circuit case *United States v. Mechanic*, which stated that § 231(a)(3) "applies only to violent physical acts." 454 F.2d at 852. But *Mechanic*'s statement on this point arose in the context of the court's conclusion that the statute "has no application to speech[.]" *Id.* Thus, to the extent *Mechanic* actually concludes that § 231(a)(3) violations always require the defendant to commit a violent physical act, that conclusion is, at best, dicta. But that is likely *not* what *Mechanic* concluded, because courts do not take this to mean that it imposed such a limitation on the statute; rather, "it appears that the Eighth Circuit was considering the specific 'acts' committed by the defendants in that case—throwing cherry bombs at police officers and firemen—when it referenced "violent acts." *Howard,* 2021 WL 3856290, at *11; *Nordean,* 2021 WL 6134595 at *17 n.14. Instead, in *Mechanic*, there was no question before the court as to whether nonviolent conduct that obstructed, impeded, or interfered with the police during a civil disorder fell within the ambit of § 231(a)(3), because the conduct at issue was throwing cherry bombs.

Regardless of *Mechanic*, "[m]any more potential applications would fall within the statute's plainly legitimate sweep." *Mostofsky,* 2021 WL 6049891, at *8 (citation omitted). The statute prohibits both violent acts (which are not protected by the First Amendment), and non-violent conduct that is not expressive, such as "creating a barricade to prevent officers' movement." *See id.* Contrary to the defendant's assertion that only the District of Delaware has rejected a violence requirement, Def.'s Mot. at 8, other courts have also recognized that the statute is not limited to "violent" acts for the simple reason that the statute is not overbroad, as explained above, and so no limiting construction is required. *See, e.g., Mostofsky,* 2021 WL 6049891 at *9

(finding that "the Court need not adopt a limiting construction such that § 231(a)(3) reaches only violent conduct" to uphold the statute and collecting cases); *see also McHugh*, 583 F. Supp. 3d at 29 n.26, *Wood*, 2021 WL 3048448, at *7 (rejecting overbreadth challenge to § 231(a)(3) while recognizing that it is possible for nonviolent acts to also fall within the statute's prohibition.); *Howard*, 2021 WL 3856290, at *11 (rejecting overbreadth claim while noting that "because the statute does not require a violent act or an assaultive act, the government perhaps could charge someone who yelled at an officer during a civil disorder and could argue that the yelling was an 'act' that 'attempted to obstruct' an officer performing her lawful duties"). This very Court has also not limited the reach of § 231(a)(3) to only "violent" act of a defendant. *See* Final Jury Instructions, *United States v. Robertson*, No. 21-cr-34 (CRC), ECF No. 86, at 16 (requiring—on this charge and issue—the jury simply to consider whether "the defendant knowingly committed an act or attempted to commit an act with the intended purpose of obstructing, impeding, or interfering with one or more law enforcement officers").

Indeed, a plain reading of sections 231(a)(3) and 232(1) reveals a clear separation between (1) the recitation of the defendant's required conduct for a violation of the statute and (2) the definition for a "civil disorder" as utilized in that recitation. The definition for "civil disorder" requires that the "public disturbance" alleged "involv[e] acts of violence by assemblages of three or more persons[,]" 18 U.S.C. § 232(1), but the defendant himself need only have committed an "act to obstruct, impede, or interfere[,]" *id.* § 231(a)(3). That "act" need not have been violent, and reading a phrase from the definition for "civil disorder" into "act" defies the definitional separation and improperly restricts what can constitute that "act." Had Congress intended to criminalize only acts "of violence" by a defendant, it would have added that phrase to § 231(a)(3),

just as it did to the definition of "civil disorder" in § 232(1). Therefore, the defendant's "violent act" argument fails.

Finally, the holding of *Casper* further highlights the flaw in the defendant's attempt to dismiss Count One. Casper's conduct was strikingly similar to the defendant's. Casper and his co-defendants were apprehended while hiding inside a "patrolled perimeter [in the village of Wounded Knee] that had been established by federal law enforcement officials," with two firearms and ammunition on or near them. 541 F.2d at 1277. When apprehended, Casper claimed that "he wanted to enter Wounded Knee in order to assist the Indians." *Id.* The court held that this evidence sufficiently satisfied the requirements of § 231(a)(3). Like Casper, the defendant is alleged to have entered and remained in a restricted area with a dangerous or deadly weapon. Of course, as described above, the defendant's conduct here was more extensive than just entering a restricted area with a weapon.[5] But if Casper's conduct satisfied the requirements of § 231(a)(3), then the defendant's conduct easily does so as well, and his motion should be denied.[6]

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court deny the defendant's motion to dismiss Count One of the Superseding Indictment.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar Number 481052

---

[5] To the extent that the defendant's motion simply challenges the sufficiency of the evidence of his conduct, dismissing the § 231(a)(3) charge in the Superseding Indictment is not the proper remedy, and the United States should have the opportunity to present its evidence to the jury.

[6] Contrary to the defendant's claim in his motion, the United States does not concede that the defendant's conduct was entirely nonviolent, as his conduct parallels Casper's. But the Court does not have to parse whether such acts are violent because, as the government's response illustrates, the defendant's own conduct does not have to be violent to violate § 231(a)(3).

By:     _/s/ Alison B. Prout_
        ALISON B. PROUT
        Assistant United States Attorney
        Georgia Bar No. 141666
        75 Ted Turner Drive, SW
        Atlanta, Georgia 30303
        alison.prout@usdoj.gov
        (404) 581-6000

        MICHAEL M. GORDON
        Assistant United States Attorney
        Florida Bar No. 1026025
        400 N. Tampa St., Suite 3200
        michael.gordon3@usdoj.gov
        (813) 274-6370

        NATHANIEL K. WHITESEL
        Assistant United States Attorney
        D.C. Bar No. 1601102
        601 D Street, NW
        Washington, DC 20530
        nathaniel.whitesel@usdoj.gov
        (202) 252-7035