UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**RICHARD BARNETT**,<br><br>Defendant. | Case No. 21-cr-38 (CRC) |

**OPINION AND ORDER**

Defendant Richard Barnett stands charged in an eight-count superseding indictment for his participation in the events at the U.S. Capitol on January 6, 2021. See Superseding Indictment, ECF No. 96. The superseding indictment, returned on December 21, 2022, added a new count, Count One, charging Mr. Barnett with impeding law enforcement officers during a civil disorder in violation of 18 U.S.C. § 231(a)(3) (the "civil disorder count"). It also clarified the language of an existing count, now denominated Count Two, charging Barnett with obstructing an official proceeding in violation of 18 U.S.C. § 1512(c)(2) (the "obstruction count"). Because the superseding indictment was returned after the deadline for filing pre-trial motions had passed, the Court permitted Barnett to file legal challenges aimed at the revisions made to both counts. Barnett has thus moved to dismiss Count One, Def.'s Mot. Dismiss Count One, ECF No. 123 ("Civil Disorder Mot."), and Count Two, Def.'s Mot. Dismiss Count Two, ECF No. 124 ("Obstruction Mot."). The Court will deny both motions.

I.  **Motion to Dismiss Count One – Impeding Officers During a Civil Disorder**

Barnett moves to dismiss Count One on the grounds that the charging statute, 18 U.S.C. § 231(a)(3), is unconstitutionally vague and overbroad, and that his conduct falls outside the scope of the statute because he is not charged with engaging in violence.[1]

---

[1] In his reply, Barnett asserts that he "does not challenge the statute" and that the government's "argument about overbreadth and vagueness is entirely irrelevant." Civil Disorder Reply at 2, 4. The Court is puzzled by those assertions given that Barnett's motion explicitly

Section 231(a)(3) prohibits "any act to obstruct, impede, or interfere with any fireman or law enforcement officer lawfully engaged in the lawful performance of his official duties incident to and during the commission of a civil disorder [which affects commerce or a federally protected function]." A "civil disorder" is defined as "any public disturbance involving acts of violence by assemblages of three or more persons, which causes [damages or injury]." 18 U.S.C. § 232(1).

Barnett asserts that 18 U.S.C. § 231(a)(3) is unconstitutionally vague because it is unclear "exactly what kind of conduct objectively 'obstructs, impedes, and interferes'" with a police officer. Mot. at 4. A criminal statute is unconstitutionally vague if it is written so imprecisely "that it fails to give ordinary people fair notice of the conduct it prohibits," or is "so standardless that it invites arbitrary enforcement." Johnson v. United States, 576 U.S. 591, 595 (2015).

Barnett has not overcome the strong presumption against finding a statute vague. See United States v. Nat'l Dairy Products Corp., 372 U.S. 29, 32 (1963). Section 231(a)(3) requires an "act to obstruct, impede, or interfere" with the efforts of law enforcement responding to a civil disorder. This Court agrees with several fellow judges in this district that an ordinary person would have an intuitive understanding of what that language proscribes. See United States v. McHugh, 583 F. Supp. 3d 1, 27 (D.D.C. 2022); United States v. Nordean, 579 F. Supp. 3d 28, 57 (D.D.C. Dec. 28, 2021); United States v. Fischer, No. 21-cr-234 (CJN), 2022 WL 782413 at 2-3 (D.D.C. Mar. 15, 2022). Nor does the statute rely on arbitrary and subjective standards. See, e.g., Coates v. Cincinnati, 402 U.S. 611, 614 (1971) (finding "annoying" to be an impermissibly vague standard for a criminal statute). Rather, violation of the statute turns on an objective fact

---

argues that "the phrase 'any act to obstruct, impede, or interfere' is vague," Civil Disorder Mot. at 4, and that the government's "interpretation and application of Section 231(a)(3) is clearly unconstitutional for its overbreadth," id. at 11. In an abundance of caution, the Court will consider both challenges.

of whether an officer was impeded from conducting his or her duties in response to a civil disorder. Barnett identifies edge cases, such as filming an officer, that may prove challenging to evaluate. But marginal factual applications, which exist for many criminal laws, do not make a statute vague. "What renders a statute vague is not the possibility that it will sometimes be difficult to determine whether the incriminating fact it establishes has been proved; but rather the indeterminacy of precisely what that fact is." United States v. Williams, 553 U.S. 285, 306 (2008). Section 231(a)(3) provides sufficient notice to the public as to what conduct is proscribed, so it is not unconstitutionally vague.

Barnett also argues that section 231(a)(3) is overbroad. As with his vagueness argument, Barnett points to protected First Amendment conduct such as filming a police officer or peacefully protesting as examples of the statute's impermissible overreach. But this misreads the statute. First, a peaceful protest is not a civil disorder, which the statute defines as "any public disturbance involving acts of violence" by an assembly of three or more people. 18 U.S.C. § 232(1). The requirement of violence ensures that protected free assembly is not targeted by the statute. Further, an individual is not guilty of violating section 231(a)(3) simply by being present at a protest that turns violent. While a protest-turned-riot would likely constitute a civil disorder, individuals present would only fall under the statute if they engaged in an act to obstruct or impede officers responding to the disorder. Both of those requirements keep the statute, in the vast majority of its applications, from criminalizing protected First Amendment conduct. Similar arguments have been considered and rejected by judges in this district, and this Court concurs with the holdings in those cases that section 231(a)(3) is not overbroad. See United States v. Mostofsky, 579 F. Supp. 3d 9, 22 (D.D.C. 2021); McHugh, 583 F. Supp. 3d at 28-29; Nordean, 579 F. Supp. 3d at 57-58.; Fischer, 2022 WL 782413 at 3-4.

Finally, Barnett argues that Count One should be dismissed because he is not accused of violent conduct. The government appears to disputes the premise, but the Court need not resolve

that debate because an individual need not commit a violent act to be culpable under the statute. A plain reading of the statute reveals that while "acts of violence" are required to constitute a civil disorder as defined by § 232(1), engaging in violence is not required for a violation of § 231(a)(3). Instead, as noted above, that provision penalizes "*any* act to obstruct, impede, or interfere" law enforcement's response to a civil disorder. § 231(a)(3) (emphasis added). Requiring that the obstruction occur through violent means would add an extra element to the offense. Interpreting the statute to encompass non-violent acts also makes sense. It is entirely understandable that Congress would penalize non-violent acts that prevent police from responding to a violent riot. A historic prosecution from this district illustrates the point. United States v. Hoffman, 334 F. Supp. 504, 509 (D.D.C. 1971) (noting charge against anti-war activist Abbie Hoffman under section 231(a)(3) for erecting a barricade to obstruct police during the 1971 May Day protests). The Court thus declines Barnett's invitation to adopt the Eight Circuit's apparent reading of the statute to require obstruction of an officer "in a violent manner." See United States v. Mechanic, 454 F.2d 849, 852 (8th Cir. 1971); United States v. Casper 541 F.2d 1275, 1276 (8th Cir. 1976). Instead, the Court will follow the plain text of the statute and adopt the holdings of several fellow judges in this district who have rejected the identical arguments Barnett raises here. See Nordean, 579 F. Supp. 3d at 58 n. 14; McHugh, 583 F. Supp. 3d at 28-29 & n.26; Mostofsky, 579 F. Supp. 3d at 23-24.

Accordingly, the Court will deny Barnett's motion to dismiss Count One.

## II. Motion to Dismiss Count Two - Obstruction of an Official Proceeding

The superseding indictment modified the obstruction count, now Count Two, by adding the underlined language and removing the stricken language indicated below:

> On or about January 6, 2021, within the District of Columbia and elsewhere, RICHARD BARNETT, also known as "Bigo Barnett," attempted to, and did, corruptly obstruct, influence, and impede an official proceeding, that is, a proceeding before Congress, specifically Congress's certification of the Electoral College vote as set out in the Twelfth Amendment of the Constitution of the United States and 3 U.S.C. §§ 15-18 by

4

~~entering and remaining in the United States Capitol without authority and engaging in disorderly and disruptive conduct.~~

<u>Compare</u> Indictment, ECF No. 19 (Count One) <u>and</u> Superseding Indictment, ECF No. 96 (Count Two).

Barnett moves to dismiss this count on the theories that (1) the indictment mischaracterizes Congress's role as "certifying" the electoral vote rather than simply "counting" votes that had already been "certified" by the States, (2) the offense requires interference with tangible evidence, and (3) Congress's electoral count is not an official proceeding for purposes of 18 U.S.C. § 1512(c)(2).  Obstruction Mot.

As an initial matter, the Court permitted Barnett only to challenge the changes made to Count Two, not to renew prior objections to parts of the count that have not changed.  Barnett has previously raised, and the Court has rejected, the second and third arguments proffered for dismissal.  See Op. & Order at 5-8, ECF No. 90 (rejecting arguments that § 1512 applies only to tangible evidence and is unconstitutionally vague).  So, the Court again rejects those arguments as both untimely and contrary to its prior rulings.[2]

The only novel and timely challenge raised is that Count Two must be dismissed because it charges Barnett with a non-existent offense.  As the argument goes, the description of the relevant official proceeding as "Congress's certification of the Electoral College vote" is fatal to the new count because, under the Twelfth Amendment, Congress does not "certify" the Electoral College vote; it rather counts the votes that were already certified by the States.  "There can be no crime," Barnett posits, "because there is no such proceeding" as the one identified in the indictment.  Obstruction Mot. at 10.

---

[2] Barnett suggests in reply that he raised the arguments only to preserve them for appeal. Perhaps, although the Court doubts that was necessary.

This argument misses the mark in at least two respects. Barnett is correct that the Twelfth Amendment directs Congress, through a Joint Session, to count the electoral votes reflected on certified ballots received from the States. U.S. Const. amend. XII. But he ignores Congress's role in making and resolving objections to the validity of State ballot certificates and in announcing the overall results. See 3 U.S.C. § 15 (requiring the President of the Senate to call for objections from both bodies whereupon "the two Houses concurrently may reject the vote or votes when they agree that such vote or votes have not been so regularly given by electors whose appointment has been so certified" and directing the President of the Senate to announce the results). Through these actions, Congress can fairly be said to "certify" both the overall results and the validity of contested State ballot certificates. See Certify, Oxford English Dictionary Online, https://www.oed.com/view/Entry/29995?redirectedFrom=certify#eid (last visited Jan. 9, 2022) ("to make a thing certain" or "attest in an authoritative manner"). Indeed, Congress's own research arm describes the Joint Session in precisely those terms. See Elizabeth Rybicki et al., Cong. Rsch. Serv., RL32717, Counting Electoral Votes: An Overview of Procedures at the Joint Session, Including Objections by Members of Congress 1 (2016) (explaining that the joint session convenes "for the purpose of opening the . . . electoral votes submitted by state government officials, **certifying** their validity, counting them, and declaring the official result of the election . . . ." and summarizing the report as a description of "the steps which precede the joint session and the procedures set in the Constitution and statute by which the House and Senate jointly **certify** the results of the electoral vote" (emphasis added)). So has Congressional leadership. See Congressman Kevin McCarthy, McCarthy Supports Electoral College Challenge and Condemns Violence at Capitol (Jan. 7, 2021), https://kevinmccarthy.house.gov/media-center/press-releases/mccarthy-supports-electoral-college-challenge-and-condemns-violence-at (press release on "the Joint Session to **certify** the Electoral College votes and the violence by a mob in breaching the U.S. Capitol" (emphasis added)).

More importantly, even if Barnett were correct that Congress does not explicitly "certify" the election, he still would not be entitled to dismissal of the charge. The purpose of an indictment is to "inform the defendant of the nature of the accusation against him." Russell v. United States, 369 U.S. 749, 767 (1962). The indictment must be "a plain, concise, and definite written statement of the essential facts constituting the offense charged," Fed. R. Crim. P. 7(c)(1), so that the defendant is aware of the charges and may prepare his defense. United States v. Verrusio, 762 F.3d 1, 13 (D.C. Cir. 2014).

Regardless of its exact phrasing, Count Two surely placed Barnett on notice that the official proceeding he is charged with obstructing—i.e., "Congress's certification of the electoral College"—was the Joint Session of Congress taking place at the U.S. Capitol on January 6, 2021. Indeed, as noted above, Barnett knew enough to renew his argument that the same proceeding does not constitutes an "official proceeding" under 18 U.S.C. § 1512 (c)(2) in this very motion. Regardless of the precise description used in the indictment, Barnett was on notice of the nature of accusation against him and the essential facts of the charge, so he offers no grounds for dismissing Count Two.

### III. Conclusion

For the foregoing reasons, it is hereby

**ORDERED** that [123] Defendant's Motion to Dismiss Count One is DENIED. It is further

**ORDERED** that [124] Defendant's Motion to Dismiss Count Two is DENIED.

**SO ORDERED**.

CHRISTOPHER R. COOPER
United States District Judge

Date: January 10, 2023