UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Criminal Case No. |
| | : | |
| RICHARD BARNETT, | : | 1:21-cr-0038 (CRC) |
| | : | |
| Defendant | : | |
| | : | |

**RICHARD BARNETT'S MOTION TO STRIKE INVALID VIDEO IDENTIFICATION AND OUT OF COURT IDENTIFICATION OF THE DEFENDANT WITH INCLUDED MEMORANDUM OF LAW**

Defendant RICHARD BARNETT ("Barnett"), through the undersigned counsel, Bradford L. Geyer, moves the Court to exclude by order in limine and to strike any testimony that is improper under these considerations. In support of his motion Barnett states as follows:

**I.  GOVERNING LAW**

**Rule 602. Need for Personal Knowledge**

> A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own testimony. This rule does not apply to a witness's expert testimony under Rule 703.

The governing standard is that an accused is for all purposes at all times presumed innocent until proven guilty beyond a reasonable doubt. *See, e.g., Taylor v. Kentucky*, 436 U.S. 478 (1978).  The Due Process Clause requires the prosecution to prove beyond a reasonable doubt every element of the charged criminal offense. *See, In re Winship*, 397 U.S. 358, 364 (1970). The burden to prove or disprove an element of the offense may not be shifted to the defendant. See *id.;* see also *Patterson v. New York*, 432 U.S. 197, 215 (1977).

1

A motion in limine is one that acts as a "protective order against prejudicial questions and statements... and to avoid injection into trial of matters which are irrelevant, inadmissible and prejudicial. *See Redding v. Ferguson*, Tex.Civ.App. [1973], 501 S.W.2d 717, 724. Rule 403 provides that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice... confusion of the issues and misleading the jury." Although any evidence that is relevant and a "fact of consequence" to the action should be admitted, Rule 403 specifies that, "relevant evidence may be excluded if unfairly prejudicial." *See Huddleston v. United States*, 485 U.S. 681, 687 (1988). Relevant evidence properly admitted over a Rule 404(b) objection always poses the risk of unfair prejudice to some degree, for a jury considering the evidence might draw the inference from character barred under the rule's first sentence. *See United States v. Rogers*, 287 U.S. App. D.C. 1, 918 F.2d 207, 211 (1990). At the same time, "the evidence might also prejudice a defendant if the jury thinks his act particularly repugnant", shocking, or offensive. In either case, Rule 403 protects defendants by requiring that a judge evaluate the risks of harm that would result to the Defendant (unfair prejudice, confusion, misleading) and to balance them against the probative value of the evidence, taking into account, "the probable effectiveness or lack of effectiveness of a limiting instruction." Fed. R. Evid. 403 advisory committee's note. *Id.* citing E. Imwinkelried, *Uncharged Misconduct Evidence* §§ 8:23 to 8:28 (1990)).

Unfair prejudice, as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the fact finder into declaring guilt on a ground different from proof specific to the offense charged. *See Old Chief v. United States*, 519 U.S. 172, 180 (1997). Evidence is "unfairly prejudicial" when it "tends to suggest a decision on an improper basis." *See* United States v. Houston, 813 F.3d 282, 291 (6th Cir. 2016). Evidence is also considered prejudicial if it

"creates a risk that invites an irrational emotional response from the jury." *See United States v. Seals*, 813 F.3d 1038, 1043 (7th Cir. 2016). The inquiry then rests upon whether the undue prejudicial effect of the evidence substantially outweighs its probative value. The function of Rule 403 is to exclude only evidence of "scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect." *See United States v. McRae*, 593 F.2d 700 at 707 (1979).

> **Federal Rules of Evidence Rule 403. Excluding Relevant Evidence for Prejudice, Confusion, Waste of Time, or Other Reasons**
>
> The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

**https://www.law.cornell.edu/rules/fre/rule_403**

> Notes of Advisory Committee on Proposed Rules
>
> The case law recognizes that certain circumstances call for the exclusion of evidence which is of unquestioned relevance. These circumstances entail risks which range all the way from inducing decision on a purely emotional basis, at one extreme, to nothing more harmful than merely wasting time, at the other extreme. Situations in this area call for balancing the probative value of and need for the evidence against the harm likely to result from its admission. Slough, Relevancy Unraveled, 5 Kan. L. Rev. 1, 12–15 (1956); Trautman, Logical or Legal Relevancy—A Conflict in Theory, 5 Van. L. Rev. 385, 392 (1952); McCormick §152, pp. 319–321. The rules which follow in this Article are concrete applications evolved for particular situations. However, they reflect the policies underlying the present rule, which is designed as a guide for the handling of situations for which no specific rules have been formulated. Exclusion for risk of unfair prejudice, confusion of issues, misleading the jury, or waste of time, all find ample support in the authorities. "Unfair prejudice" within its context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.

## II. ARGUMENT

As with all or nearly all cases related to events on or related to January 6, 2021, here the Government proposes to have persons with no personal knowledge of the Defendant purport to identify the Defendant. However, the witness or witnesses cannot identify the Defendant because they do not know him.

In fact, the one witness who last week had a brief encounter with the defendant, _____, struggled to identify the Defendant in court. _____ seemed to initially think that attorney Joe McBride, who has frequently appeared on television and in the news, was Defendant Richard Barnett.

The Government is routinely allowing analysts who have never met the various defendants to assume they know what he or she looks like from observing one video and then claiming that in their opinion another video also shows the same person as the other video, even though they have no personal knowledge or foundation to testify about either video. Not only do they have no knowledge of the defendant, but they have no knowledge of the video recording either. They did not take the video nor were they present when it was recorded.

The Acting Chief of Police of the U.S. Capitol Police estimated that there were "thousands" and in another part of her testimony 10,000 demonstrators [1] who were present at, around, and in many cases inside the U.S. Capitol building on the early afternoon of January 6, 2021.

In a crowd of 10,000 people, the likelihood is very high that more than one person will

---

[1] In a statement by Acting Chief of the U.S. Capitol Police, found at **https://twitter.com/MikevWUSA/status/1354104955553067010/photo/1** , Yogananda D. Pittman documents during a topic otherwise *not* relevant to this motion nor adopted by the Accused that the U.S. Capitol Police estimated that "tens of thousands" of demonstrators were at the U.S. Capitol. Elsewhere Pittman estimates the crowd at 10,000.

4

appear on low-quality video (made so by the large number of people included in each scene) to look alike, even though on closer examination they might not be the same person.

Given the low quality of video recordings (even with high quality equipment viewing hundreds of people at once, jammed in together and jostling, so that an individual's greatly-magnified face on the screen may be difficult to discern) and the large quantity of people, the presence of COVID-inspired masks, and a propensity for attendees to often wear similar clothes suitable to the cold January day, informal styles, often from certain regions or cultures concentrating certain kinds of clothing like hunting clothing or camouflage, active review and analysis of thousands of hours of video actually shows in reality, not just in possibility, seeing many people who appear at first glance to be the same person but on closer examination they are actually different people.

In fact with crowds estimated by then Deputy Chief, later Acting Chief, of the U.S. Capitol Police Pittman, at around 10,000, many people at and around the U.S. Capitol look alike. For example, photographs and videos of two different people from January 6, 2021, appear to show Proud Boys member Zachary Rehl until one carefully examines their different clothing.

The identification problem with the Government's claims about Richard Barnett appearing in different places on January 6, 2021, is not a question of disputed facts. The problem is a defective process. Just as the Government has produced many court reporter transcripts prepared by transcribers who were not present during the events covered but can only guess from the voices who is talking and how they talk, the Government is often using second or third-hand supposition about video recordings.

The procedure is for Government staff who do not know Richard Barnett to look at poor-

quality video[2] and guess that someone they see on a video – with many people on the scene wearing masks, wearing similar clothing, or jammed into small spaces – might be someone whom they don't actually know in the first place.

### III. MOTION TO STRIKE TESTIMONY

The Government contends that witnesses Ellen Berrett and Captain Mendoza testified to Defendant Barnett being seen at the West side of the U.S. Capitol not only on the East side. None of Barnett's Counsel recall such a part of those witness' testimony.[3]

However, both witnesses have no knowledge of Richard Barnett. They do not know what he looks like and cannot identify him from videos. Ellen Barnett never met, saw, or interacted with Barnett. Neither did Captain Mendoza.

If the prosecutor slid by a mention that Barnett's counsel missed, the testimony is invalid under Rule 602 of the Federal Rules of Evidence for lacking in the witness' personal knowledge. The testimony should be stricken from the record.

Having been assured in a pre-trial conference that what occurred inside the rotunda was

---

[2]  At least when enlarged to show individuals from dozens or hundreds crowded into a scene.

[3] "(Emily Berret: "In one of the images I saw yesterday, he was near the inaugural platform, so that would be the West Front."); id. at 284-94 (Captain Carneysha Mendoza: identifying the location of photos and videos containing the defendant as being on the "west front"). The defendant should not be permitted to suggest to the jury that any distinction between the overall level of violence on the West and East Fronts has relevance in this case because the defendant was on both sides of the Capitol grounds. In a separate footnote, the government explained:

> Among others, Captain Mendoza identified a video of the defendant approaching the Capitol building from the West Front (Daily Tr. at 284-85, Gov't Ex. 741), a video of the defendant speaking to an officer on the West Front at 3:22 PM (Daily Tr. at 292; Gov't Ex. 208), and a video of the defendant speaking to another officer on the West Front at 3:52 PM (Daily Tr. at 294; Gov't Ex. 209)." ECF 124 p. 3-4.

the government's case in the context of an 11th hour indictment, we now learn that what occurred in the "west front" was indeed very important to the Government's case. In terms of the video and photographic information confirming Mr. Barnett was in the West, the photographic information the Government refers to was actually in the North West and North, to be distinguished from the inaugural stage in the West—directly to the West of the inaugural stage-- which was much further South and is where the vast majority of the violence raged throughout the day. Ms. Berret was being called upon to identify a man whom she never met from a beardless photo of Mr. Barnett wearing a hat and compare it to video/photographic evidence of him when he was nowhere near the inaugural stage except in the same sense that Mr. Barnet was "near" the House or "near" the Senate or "near" the Supreme Court. The Government prepped its witnesses to erroneously tie the Defendant to the violence at the inaugural stage, presumably because the Government views proximity to violence as being helpful to obtain convictions and the inaugural stage at that time involved dramatically more violence. The Government now seeks through a variety of means to shut down most any defense.

## IV. CONCLUSION

The Court should by order require that only those with personal knowledge or valid evidentiary foundation may testify to the identity of people in photographs or videos.

Dated: January 17, 2023          RESPECTFULLY SUBMITTED, By Counsel
                                 /s/ Brad Geyer

                                 Bradford L. Geyer, PHV
                                 PA 62998
                                 NJ 022751991
                                 Suite 141 Route 130 S., Suite 303
                                 Cinnaminson, NJ 08077
                                 Brad@FormerFedsGroup.Com
                                 (856) 607-5708

**CERTIFICATE OF SERVICE**

      I hereby certify that on January 17, 2023, a true and accurate copy of the forgoing was electronically filed and served through the ECF system of the U.S. District Court for the District of Columbia.

      MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar No. 481 052

ALISON B. PROUT
Assistant United States Attorney
Georgia Bar No. 141666
Ted Turner Drive, SW
Atlanta, Georgia 30303
alison.prout@usdoj.gov
 (404) 581-6000

MICHAEL M. GORDON
Assistant United States Attorney
Florida Bar No. 1026025
400 N. Tampa St., Suite 3200
michael.gordon3@usdoj.gov
(813) 274-6370

NATHANIEL K. WHITESEL
Assistant United States Attorney
D.C. Bar No. 1601102
601 D Street, NW
Washington, DC 20530
nathaniel.whitesel@usdoj.gov
(202) 252-7035

      Respectfully submitted
/s/ Brad Geyer
Bradford L. Geyer, PHV
PA 62998
NJ 022751991
Suite 141 Route 130 S., Suite 303
Cinnaminson, NJ 08077
Brad@FormerFedsGroup.Com
(856) 607-5708