UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Criminal Case No. |
| : | |
| RICHARD BARNETT, : | 1:21-cr-0038 (CRC) |
| : | |
| Defendant : | |
| : | |

**RICHARD BARNETT'S REPLY TO
THE GOVERNMENT'S MOTION IN LIMINE TO PRECLUDE IMPERMISSIBLE
ARGUMENT IN THE DEFENDANT'S OPENING STATEMENT**

**WITH INCLUDED MEMORANDUM OF LAW**

Defendant RICHARD BARNETT ("Barnett"), through the undersigned counsel, Bradford L. Geyer, Esq., hereby oppose the Government's Motion In Limine To Preclude Impermissible Argument In The Defendant's Opening Statement.  In support of his motion Barnett states as follows:

**I.  GOVERNING LAW**

The proper use of an opening statement includes identifying for the jury what the case is about, and what it is not about, and what is in dispute.  The opening statement helps the jury know what to be looking for throughout the evidence.

> **Federal Rules of Evidence Rule 403. Excluding Relevant Evidence for Prejudice, Confusion, Waste of Time, or Other Reasons**
>
> The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

1

https://www.law.cornell.edu/rules/fre/rule_403

>Notes of Advisory Committee on Proposed Rules
>
>The case law recognizes that certain circumstances call for the exclusion of evidence which is of unquestioned relevance. These circumstances entail risks which range all the way from inducing decision on a purely emotional basis, at one extreme, to nothing more harmful than merely wasting time, at the other extreme. Situations in this area call for balancing the probative value of and need for the evidence against the harm likely to result from its admission. Slough, Relevancy Unraveled, 5 Kan. L. Rev. 1, 12–15 (1956); Trautman, Logical or Legal Relevancy—A Conflict in Theory, 5 Van. L. Rev. 385, 392 (1952); McCormick §152, pp. 319–321. The rules which follow in this Article are concrete applications evolved for particular situations. However, they reflect the policies underlying the present rule, which is designed as a guide for the handling of situations for which no specific rules have been formulated. Exclusion for risk of unfair prejudice, confusion of issues, misleading the jury, or waste of time, all find ample support in the authorities. "Unfair prejudice" within its context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.

## II.  ARGUMENT

### A.  UNTIMELY MOTION AND LACK OF CONSULTATION

There are times when motions are appropriate during trial, particularly non-dispositive motions such as a motion in limine.  However, Local Rules still require consultation with opposing counsel when feasible.

Moreover, one of the many powerful advantages that prosecutors enjoy is that prosecutors can choose when to bring charges within the statute of limitations (here at least five years and longer for some charges).  The Defendant by contrast must respond without any such flexibility. The fact that the Government could have waited until it was actually ready to bring a criminal case cannot support the same level of accommodation to the Government's untimeliness.

Here, however, even though Defendant reserved his opening statement, thus presumably

giving the Government more time, the Government waited during the entire case until the eve of Defendant's opening statement to the jury to file a Motion in Limine that would restrict the Defendant's opening statement already scripted and planned.

### B.  THE MOTION IN LIMINE IS NOT IMPLEMENTABLE, NOT CLEAR

Despite what may be the best efforts of the Government in this regard, the request of the Motion in Limine is not clear or specific enough to be implemented.

### C.  GOVERNMENT MAY NOT EXCLUDE CONFLICTS IN EVIDENCE

The Government's Motion in Limine seeks to transform a conflict in the evidence into a presumption that the first witness to testify is necessarily the only accurate evidence.

The Government argues that "Such an argument improperly implies that the defendant was not on the West Front of the Capitol during the riot, which is inaccurate."

However, that's what jury instructions are for.  At that level of specificity and detail, the trial judge provides written jury instructions not only read to the jury but available for them to refer to during their deliberations in the jury room.  The Government's theory that mentioning the accurate facts would be changing the law ignores the fact that criminal trials have a mechanism for telling the jury exactly what the law is:  Jury instructions.

But the Government merely declaring that in its opinion it is inaccurate does not make it so.  The Defendant does more than imply he was not on the West Front of the Capitol.  He denies being on the West Front of the Capitol to mean where all the violence occurred: at and around the inaugural stage and scaffolding, which is dead center West.  The Government's attempt to make an improper identification from videos by people who have never met Defendant Barnett and do not know him and would not know him from Elvis if they saw him on the street cannot preclude the Defendant from putting on evidence that the Government is wrong.

3

The Government's MIL claims that Ellen Berrett testified "In *one of the images I saw* yesterday, he was near the inaugural platform, so that would be the West Front." *(Emphasis added.)*  However, Berrett never met Barnett and doesn't know what he looks like.  This is at least double hearsay.

Here, the Government contends that because – it claims – Government witnesses supposedly testified that they saw Richard Barnett on the West side of the U.S. Capitol, therefore that must be established truth, received wisdom.  The Government seeks to prohibit testimony or evidence contradicting the early witnesses.

The Government asserts a novel, unheard-of "first to testify" rule in which the jury may not hear conflicting evidence.

This is especially concerning where the Government's witnesses lack the evidentiary capacity to be able to know what they claim to know or to have seen.

The Government's witnesses are simply wrong.

And the jury is entitled to – and instructed to in jury instructions – withhold judgment until the jury has heard all of the evidence.  Yet the Government wants the judge to leap to conclusions while instructing the jury not to do so.

The Defendant is entitled to introduce both argument and evidence that the Government's witnesses are simply wrong, by producing contrary and conflicting witnesses and testimony.

### D. PROPER TO DESCRIBE WHAT THE GOVERNMENT CONCEDES, INCLUDING THAT DEFENDANT BARNETT COMMITTED NO VIOLENCE

The Government's Motion in Limine argues that the Defendant's counsel should not mention to the jury that the Government does not accuse Barnett of committing any violence.

The Government offers a strained, novel, and convoluted theory that the already

4

convoluted statute 18 U.S.C. 231 does not require that the Defendant commit violence, and therefore mentioning that the Defendant Barnett committed no violent act would be changing the requirements of the statute.

The statute requires the Government to prove beyond a reasonable doubt that the Defendant Barnett "Obstruct[ed], impede[d], or interfere[d] with" a police officer. Because words cannot qualify, only some physicality can "obstruct, impede, or interfere with" a police officer in the conduct of his or her duties. Words cannot.

Here, the Government's factual allegations are that Defendant Richard Barnett asked Officer Terrance Craig to go back and retrieve his flag from the Speaker's office suite so that he could leave. ***That is the Government's account of what happened***.[1]

Though the court has ruled that Section 231 can be violated without committing violence, since words alone cannot be a violation of section 231, the Government is left with no choice but to allege that somehow Mr. Barnett's conduct was perceived by Officer Craig as violent and therefore somehow obstructed, interfered, or impeded his duties.[2]

Furthermore, the Government concedes that the Defendant committed no violence, except in terms of the nonsense that words may be thought of as violence.

Thus the opening argument serves the proper and necessary purpose of advising the jury what is in dispute and what is not in dispute. The jury is responsible to decide disputed facts and ultimate guilt or lack of guilt. The jury is entitled to be advised what is not disputed and need

---

[1]   Even if Barnett interrupted the officer, asking him for permission to go back and get his flag would not be a distraction from the officer's duties.

[2] The same rational applies to the Government's witness, officer Carey. Those were the only two Metropolitan Police Department officers that testified at trial that they interacted with Mr. Barnett, however, the indictment states that he only interfered with one male Metropolitan Police Department officer, and at the pretrial conference on January 4, 2023, the Government identified the officer as Terrance Craig and made no mention of Officer Carey.

not be decided. The jury is entitled to search for evidence during the trial that may be relevant to the disputes they must decide.

The Defendant is entitled to dispel false assumptions that may have crept in to the jury's understanding of the case, especially given the massive corrupting pre-trial publicity, including condemnations by the Attorney General, the President of the United States, and most of Congress. Explaining the Defendant's situation to the jury is not changing the law but accurately alerting the jury to the facts of the case that the evidence is expected to show.

Of course, the Defendant does strongly disagree with the Court's ruling including for jury instructions that a violation of 18 U.S.C. 231 does not require proof of a violent act by a defendant. The Defendant here preserves that issue for appeal. Upon the Court being advised that the Eighth Circuit has for over 50 years saved 18 U.S.C. 231 from unconstitutionality by interpreting it as requiring a violent act by a defendant, this trial judge frankly declared that we are not going to do things that way in this Circuit. Thus, this Court clearly set up a conflict among the Circuits and did so without deferring to the extensive reasoning of the 8th Circuit. Defendant wishes to and counsel must preserve this issue for appeal.

To preserve the unconstitutionality of 18 U.S.C. 231 without a factual allegation of violence, Defendant's counsel must make sure that the record contains the fact that Barnett committed no violence. (Again, words not being violence.) Otherwise, an appeals court might rule that Barnett is correct about the interpretation of 18 U.S.C. 231 but has not established in the appeals court that the scenario applies.

### E. ARGUMENT THAT OTHER RIOTERS WERE MORE VIOLENT THAN THE DEFENDANT.

Once again, the Government seems oddly fixated on assuming that the Defendant is guilty and then showing an inability to think outside of that assumption. The government on the

one hand concedes that Mr. Barnett was not violent, but with the other hand tries to assert without evidence that he was violent, just not as violent as other protestors. The Government is required at all stages of the criminal case to presume that the defendant is innocent until proven guilty beyond a reasonable doubt, as to each element of the crime charged.

An accused is for all purposes at all times presumed innocent until proven guilty beyond a reasonable doubt. *See, e.g., Taylor v. Kentucky*, 436 U.S. 478 (1978). The Due Process Clause requires the prosecution to prove beyond a reasonable doubt every element of the charged criminal offense. *See, In re Winship*, 397 U.S. 358, 364 (1970). The burden to prove or disprove an element of the offense may not be shifted to the defendant. See *id.;* see also *Patterson v. New York*, 432 U.S. 197, 215 (1977).

Neither the Government nor the Court may assume that the Defendant is guilty.

The issue is that the Defendant is not guilty, including that he committed no violence. The Defendant's counsel will advise the jury that Defendant intends to prove that he committed no violence at all.

Counsel does not understand where the idea came from that there is an issue with playing a game of who is more violent. The Defendant was not violent at all. Again, speech is not violence.

The Motion in Limine argues that "While the presence of a violent civil disorder is relevant to Count One … argument that the defendant's conduct was less physical or less violent than others present at the Capitol is not exculpatory and misleadingly implies that violence is a required element of the charges against the defendant."

This actually shows the considerable confusion written in to the convoluted 18 U.S.C. 231 and perhaps cooler heads should have counseled against 11th hour superseding ventures where there was no violence present. **Only one thing is clear about the statute: The existence of a civil**

7

*disorder does not establish a violation of 18 U.S.C. 231.* The Government must show that the Defendant obstructed or interfered with a police officer engaged in duties incident to a civil disorder. This the Government cannot do in this case. The Defendant did not in any way obstruct or interfere with a police officer.

This issue misstates the issues of the case, the charges against the Defendant, and the Defendant's case. There is no relevance to whether a person who was not violent at all was less violent than others.

None of the Government's witnesses had or have any personal knowledge of the Defendant. Two of them had brief interactions with him on January 6th. None of them were qualified as expert witnesses to give opinion testimony. No videos were introduced but snippets in violation of the "Rule of Completeness" expressed under Federal Rules of Evidence Rule 106. The Government has failed to establish any violation of 18 U.S.C. 231.

### F. Argument that the Government is Attempting to Hold the Defendant Responsible for the Violent Conduct of Others.

The Defendant's opening statement will correctly argue that the Government must prove the *individual* guilt of Defendant Barnett by presenting proof in the form of admissible evidence that Barnett *personally* committed acts which constitute all of the elements of each crime charged. The Government must prove each element beyond a reasonable doubt.

But continuing to confuse this core, fundamental foundation of all criminal law in the United States, the Government's MIL argues that "This is related to the above anticipated defense argument asserting that the defendant is not guilty because he was nonviolent."

No, it is not. The Defendant contends and will argue and prove that the Government cannot convict crowds or argue collective guilt. The jury must find the Defendant guilty or not guilty as an individual, not as a member of a crowd.

8

The Defendant was nonviolent.

But the issue about the Government attempting to hold the Defendant Barnett responsible for the violent conduct of others is that the Government cannot prove guilt "in the air" or hovering around Capitol Hill.  Guilt does not pass to people nearby like the flu.  The Defendant cannot be guilty of what other people did.  The Defendant's intent cannot be shown from what other, unidentified people in a crowd yelled out, which Barnett may have disagreed with.

The reality is that the Government is attempting to hold the Defendant Barnett responsible for the violent conduct of others because the Government cannot prove its case.

The Government is clearly trying to scapegoat Defendant Barnett for the underlying civil disorder itself.  This is not mere conjecture, but observation of how the Government has tried every January 6 related case so far.

### G. ARGUMENT THAT THE DEFENDANT WAS A "PROTESTOR" AND NOT A "RIOTER."

The Government's MIL argues that **"**There is no legal distinction between a protestor and a rioter.**"**  But of course there is a legal distinction.

A rioter conveys one committing one or more illegal acts.  A protestor conveys a legal act consistent with our nation's founding, core, and traditions of the exercise of First Amendment rights.  One suggests a crime.  The other suggests a constitutional right.  Rioter conveys violence.

"Rioter" is a conclusion for the jury to decide, to reach or not, not evidence.  The jury must decide if someone is a rioter.

The Government contends – but forgets whenever useful – that people who gathered at or near the U.S. Capitol on January 6, 2021, all did different things that day.  When useful, the Government is fixated on the idea that everyone is collectively identical, part of a hive mind, and guilty as a collective crowd.

The U.S. Department of Justice has forgotten the constitutional and traditional concepts of criminal law including individual guilt and the necessity to prove that an individual Defendant is personally guilty of every element of a charged crime.

The U.S. Capitol Police estimates that there were 10,000 protestors at or around the U.S. Capitol on January 6, 2021. In a statement by Acting Chief of the U.S. Capitol Police, found at https://twitter.com/MikevWUSA/status/1354104955553067010/photo/1 , Yogananda D. Pittman documents during a topic otherwise *not* relevant to this motion nor adopted by the Accused that the U.S. Capitol Police estimated that "tens of thousands" of protestors were at the U.S. Capitol. Elsewhere Pittman estimates the crowd at only 10,000.

However, the Government concedes that some of those people were protestors exercising their First Amendment rights (including the right to petition their government for redress of grievances), while a few misbehaved and descended to the status of rioters.

According to the Government itself, about 980 persons have been accused of various crimes, including some crimes that were non-violent and do not qualify as rioters.

According to the Government itself, only 980 persons at most have been identified as committing any crime although there were 10,000 protestors present at the Capitol.

Thus, according to the Government itself, about 90.2% of the 10,000 protestors committed no crime. They were protestors, not rioters.

Only about 9.8% of those 10,000 qualify as rioters (maybe, if that, since there are different categories within that 980).

Thus, the Government by its own official statements concedes that RIOTERS and PROTESTORS are not the same thing. A PROTESTOR conveys the long historical reality in our country of free speech and protest, even where protestors may sometimes border on unruly or

loud.  A RIOTER implies guilt of breaking the law.

This is all the more important because of the Government's penchant for spending much of every trial giving an overview having nothing to do with the particular defendant at bar.  The Government is intent upon showing videos that do not contain the defendant in question before the court and explaining what other people – not the defendant at bar – did.

Most significantly, officer Craig and Captain Mendoza both testified that there is a difference between rioters and protestors.  Officer Craig repeatedly referred to Mr. Barnett and everyone in the Rotunda as rioters.  Therefore, Mr. Barnett has every right to present evidence that he was a protestor not a rioter.

The Defendant can argue that there were protestors / demonstrators and there were rioters.  Over 90% of the people present were not rioters.  The Defendant can argue that the evidence will show that this particular Defendant Barnett was not a rioter based on the actual facts and the evidence. The Defendant can explain that there were protestors / demonstrators (roughly 90% by the Government's own statements) and some whose conduct deteriorated into the status of rioter, based upon violent acts, property damage, etc.

### III. CONCLUSION

The Court should deny the Motion in Limine in each of its sub-parts.

Dated:  January 17, 2023          RESPECTFULLY SUBMITTED, By Counsel
                                  /s/ Brad Geyer

                                  Bradford L. Geyer, PHV
                                  PA 62998
                                  NJ 022751991
                                  Suite 141 Route 130 S., Suite 303
                                  Cinnaminson, NJ 08077
                                  Brad@FormerFedsGroup.Com
                                  (856) 607-5708

**CERTIFICATE OF SERVICE**

    I hereby certify that on January 17, 2023, a true and accurate copy of the forgoing was electronically filed and served through the ECF system of the U.S. District Court for the District of Columbia.

        MATTHEW M. GRAVES
        UNITED STATES ATTORNEY
        D.C. Bar No. 481 052

        ALISON B. PROUT
        Assistant United States Attorney
        Georgia Bar No. 141666
        Ted Turner Drive, SW
        Atlanta, Georgia 30303
        alison.prout@usdoj.gov
        (404) 581-6000

        MICHAEL M. GORDON
        Assistant United States Attorney
        Florida Bar No. 1026025
        400 N. Tampa St., Suite 3200
        michael.gordon3@usdoj.gov
        (813) 274-6370

        NATHANIEL K. WHITESEL
        Assistant United States Attorney
        D.C. Bar No. 1601102
        601 D Street, NW
        Washington, DC 20530
        nathaniel.whitesel@usdoj.gov
        (202) 252-7035

                Respectfully submitted
                /s/ Brad Geyer
                Bradford L. Geyer, PHV
                PA 62998
                NJ 022751991
                Suite 141 Route 130 S., Suite 303
                Cinnaminson, NJ 08077
                Brad@FormerFedsGroup.Com
                (856) 607-5708