UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| | : | **Case No: 21-cr-38 (CRC)** |
| v. | : | |
| | : | |
| **RICHARD BARNETT** | : | |
| | : | |
| **Defendant.** | : | |

### DEFENDANT'S OBJECTIONS TO GOVERNMENT'S MENU OF ACTS THAT ALLEGEDLY VIOLATE SECTION 231(a)(3)

TO THE HONORBLE COURT:

At trial on January 19, 2023, the Court narrowed the basis for the charge under Section 231(a)(3) to an act or acts committed by Mr. Barnett in the presence of Metropolitan Police Department Officer Terrance Craig, in the Rotunda, between approximately 2:58 and 3:00 PM. The Court invited the Government to provide a list of acts that the Government intends to argue at closing and incorporate into the jury instructions.

The Defendant has repeatedly argued that Section 231(a)(3) should include a violent act element, or else the statute is unconstitutional. The Government chose to charge Mr. Barnett with this crime after nearly two years, and only after scouring the evidence for any act that can even remotely be considered "obstructing, interfering, or impeding." The reason it was so difficult for the Government to find such an act is because Mr. Barnett's encounters with law enforcement over the course of January 6 was non-violent and could not be interpreted in any way as violating the law. The Government was forced to settle with its best option which was Mr. Barnett obsessively asking Officer Craig to help recover Mr. Barnett's American flag that he left in the office suites, and hope that the jury will find that this somehow violated the statute.

1

The Court's invitation to the Government to provide a menu of acts for the jury to select attempts to solve the constitutional problem of Section 231(a)(3) by protecting Mr. Barnett from being convicted for constitutionally protected actions that may be interpreted by the jury as "obstructing" Officer Craig, such as speaking to Officer Craig or filming Officer Craig. However, if the menu includes options that are themselves constitutionally protected acts, or else the options themselves can be easily interpreted to include constitutionally protected acts, then the Court finds itself in the same constitutional pickle.

If the menu options are too specific, however, the jury instructions will pose another problem, namely that the jury instructions will effectively become the Government's closing argument. The Government has the burden of proving beyond a reasonable doubt that Mr. Barnett's conduct violated Section 231(a)(3). In the normal course, the Government puts forth its evidence and argues that the evidence shows that the statute was violated by certain acts. The Government is free to argue in its closing that certain acts violated the statute – provided that such acts are not constitutionally protected – however, incorporating those acts into the jury instruction give the impression that those acts are *per se* prohibited by law.

For example, Section 231(a)(3) does not prohibit "invading a police officer's personal space," but if the jury is instructed that "You may find the Defendant guilty on this count if the government proves beyond a reasonable doubt that the Defendant committed at least one of these acts/incident," the jury could easily believe that if they saw Mr. Barnett perform any of the acts listed on the menu then he has *per se* violated Section 231(a)(3), even if the jury did not believe that Mr. Barnett's act had the actual effect of obstructing Officer Craig from performing his duties. Accordingly, after considering the Court's proposed cure for Section 231(a)(3)'s constitutional problem, the Defendant submits that it is no cure at all.

Further, the options that the Government included in its menu of alleged acts are themselves problematic because they invite the jury to potentially convict Mr. Barnett for constitutionally protected acts.

The Government menu included the following options:

- Making threats;
- Summoning the crowd;
- Refusing to exit;
- Invading Officer Craig's personal space;
- Brandishing the Hike 'N Strike; and
- Attempting to breach the police line.

For the following reasons each of these options is either overly broad so as to include constitutionally protected acts, or else is not supported by the evidence.

**Making Threats**

The First Amendment limits the authority of the federal government to criminalize speech, and therefore statutes that criminalize threats are subject to First Amendment analysis. *See, e.g., In re Grand Jury* Subpoena No. 11116275, 846 F. Supp. 2d 1, 5 (D.D.C. 2012). "Making threats" in and of itself cannot be the standard without more. The Government must prove that the alleged threat was more than mere puffery or bluster, and instead would objectively inspire in Officer Craig fear of serious bodily harm or death that is likely to be inflicted immediately. *See United States v. Hertular*, 562 F.3d 433, 440 (2d Cir. 2009) (defining a threat in the context of 18 U.S.C. § 111, a law similar to Section 231(a)(3)); *see also Elonis v. United States*, 575 U.S. 723, 731 (2015) ("A statement is a true threat when a defendant intentionally makes a statement in a context or under such circumstances wherein a reasonable person would foresee that the statement would be interpreted by those to whom the maker communicates the statement as a serious expression of an intention to inflict bodily injury or take the life of an individual."). *See also Manorcare of Kingston PA, LLC v. Nat'l Labor Relations*

3

*Bd.*, 823 F.3d 81, 89 (D.C. Cir. 2016) (distinguishing true threats from "bluster and playful profanity"); *U.S. v. Emmert*, 829 F.2d 805, 812 (9th Cir. 1987) (distinguishing between true threats and "bluster" or "puffing"); *United States v. Nickerson*, No. 18-2213, at *5 (6th Cir. July 26, 2019) (distinguishing between true threats and "mere puffery"); *U.S. v. Venable*, 233 F. App'x 313, 315 (4th Cir. 2007) ("Judge Williams specifically determined that the threat in this case was vague, not credible, and amounted to mere puffing.").

Further, they must show how Mr. Barnett's "making threats" in anyway interfered or obstructed with Officer Craig's official duties which were to "hold the line."

**Summoning the Crowd**

Summoning the crowd by itself is likewise not sufficient. The defense has submitted evidence that Mr. Barnett was summoning the crowd to film the police, which is clearly constitutionally protected activity. The Government must specify and provide evidence that Mr. Barnett subjectively intended to summon a crowd to commit an act that is not constitutionally protected. For instance, it cannot be sufficient for the Government to allege that Mr. Barnett summoned the crowd to chant or come observe the police activity, even if that would interfere with Officer Craig's official duties. All the Court needs to do is to use the example of George Floyd's death and imagine a crowd that formed around the tragic incident. If the crowd were summoned to chant "stop!" or to film the incident, or to even just move closer to observe or implore the officer to stop, this cannot be criminalized, even if it is incident to or during a civil disorder.

Further, they must show how Mr. Barnett's summoning the crowd" in anyway interfered or obstructed with Officer Craig's official duties which were to "hold the line."

**Refusing to exit**

The Government must demonstrate that Mr. Barnett was given clear directions to exit by Officer Craig and clear directions as to how to exit, and that it was possible for him to exit at all. The Government has only shown that Mr. Barnett was told to leave the office suites. The defenses' position is that he complied and exited the office suites and entered the Rotunda as he was directed. From there he was shuttled into a crowd of people with no clear way to exit. Officer Craig was wearing a gas mask, it was noisy, and Mr. Barnett can be seen on video saying to Officer Craig, "I can't hear you." Officer Craig was wearing a tactical face shield on top of a gas mask and is a head taller than Mr. Barnett.

Further, they must show how Mr. Barnett's refusal to exit in anyway interfered or obstructed with Officer Craig's official duties which were to "hold the line."

**Invading Officer Craig's "Personal Space."**

Invading "personal space" is a running theme in this case, as Ms. Berret also testified that Mr. Barnett invaded her "personal space" by sitting at her desk. This standard of "personal" space is completely subjective and differs from person to person, and there is no way Mr. Barnett could know what space Officer Craig considered to be "personal." Further, the Government must show how invading his personal space interfered with Officer Craig's official duty which was to "hold the line."

**Brandishing the Hike N' Strike**

The Sentencing Guidelines commentary defines "brandishing" as follows: "Brandished" with reference to a dangerous weapon (including a firearm) means that all or part of the weapon was displayed, or the presence of the weapon was otherwise made known to another person, in

5

order to intimidate that person, regardless of whether the weapon was directly visible to that person." *United States v. Reyna-Esparza*, 777 F.3d 291, 293 (5th Cir. 2015).

The use of the word brandishing calls for a legal conclusion that he had a dangerous weapon, which is not an element of Section 231(a)(3). Accordingly, the Government cannot include this word in the jury instruction for Count One without a more specific definition. The plain meaning definition of brandishing is to "wave or flourish (something, especially a weapon) as a threat or in anger or excitement." There is no evidence that Mr. Barnett did anything like that with his Hike N' Strike.

Further, they must show how Mr. Barnett's "brandishing the Hike N' Strike" in anyway interfered or obstructed with Officer Craig's official duties which were to "hold the line."

**Attempting to breach the police line**

The Government has charged Mr. Barnett not only with violating Section 231(a)(3), but the Government has also charged him with attempted violation of Section 231(a)(3). With this jury instruction, the jury can find that Mr. Barnett "attempted to attempt to breach the line," which is obviously absurd.

## CONCLUSION

For the foregoing reasons, a menu of options is an unworkable solution to Section 231(a)(3)'s constitutional problem, and the Defendant respectfully requests that the Court adopt the Eighth Circuits solution which is to require a violent act in order to convict.


Dated: January 20, 2023
Washington, DC

Respectfully submitted,

| | |
|---|---|
| /s/ Jonathan S. Gross | /s/ Joseph D. McBride, Esq |
| Jonathan S. Gross | Joseph D. McBride, Esq. |
| Bar ID: MD0162 | Bar ID: NY0403 |
| 2833 Smith Ave, Suite 331 | THE MCBRIDE LAW FIRM, PLLC |
| Baltimore, MD 21209 | 99 Park Avenue, 6th Floor |
| p: (443) 813-0141 | New York, NY 10016 |
| e: jon@clevengerfirm.com | e: jmcbride@mcbridelawnyc.com |
| | |
| /s/ Bradford L. Geyer | /s/ Carolyn Stewart |
| Bradford L. Geyer | Carolyn Stewart |
| FormerFedsGroup.com, LLC | Stewart Country Law, PA |
| 141 I Route 130, Suite 303 | 1204 Swilley Rd |
| Cinnaminson, NY 08077 | Plant City, FL 33567 |
| e: Brad@FormerFedsGroup.com | e: Carolstewart_esq@protonmail.com |

## **CERTIFICATE OF SERVICE**

I hereby certify on this 20th day of January 2023, a copy of the foregoing was served upon all parties as forwarded through the Electronic Case Filing (ECF) System.

/s/ Jonathan Gross, Esq
Jonathan Gross, Esq.