UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES )<br>)<br>v. )<br>)<br>BARNETT )<br>_____) | 1:21-cr-38 |

**DEFENDANT'S FIRST SUPPLEMENT TO RULE 29 MOTION FOR
JUDGMENT OF ACQUITTAL REGARDING COUNT ONE
VIOLATION OF 18 U. S.C. § 231(a)(3)**

Defendant Richard Barnett, by and through counsel, hereby requests leave from the Court to file this First Supplement to his Rule 29 Motion for Judgment of Acquittal (ECF No. 175). The Defendant files this supplement for an acquittal on the charge of violating Section 231(a)(3) based on a recent filing by the Government in another January 6 case, *United States v. Mehaffie,* 1:21-cr-04-7, and based on Supreme Court authority that recently became known to the Defendant. *Parekh v. CBS Corp.*, Case No: 6:18-cv-466-Orl-40TBS, at *3-4 (M.D. Fla. Apr. 11, 2019) ("There is nothing inherently wrong with a motion to supplement that is intended to bring to the Court's attention new information, be it evidence or law, that was not previously available, and which may assist the Court in reaching the right decision in a case.").

**Section 231(a)(3) is unique to January 6th Jurisprudence**

On February 23, 2023, pursuant to a court order, the Government released a spreadsheet setting forth all the cases from each of the 94 federal judicial districts in which the United States Attorney's Office chose to charge a defendant with 18 U.S.C. § 231(a)(3) between January 6, 2020, and January 6, 2022. *United States v. Mehaffie*, 1:21-cr-40-7, ECF No. 538-1, pages 4-6. The spreadsheet is attached as Exhibit A.

The data reveal that in the two-year period, in the 93 federal districts other than the District of Columbia, the USAO charged a total of 65 defendants with Section 231(a)(3). During that same time period, the USAO charged 206 defendants with Section 231(a)(3) in the District of Columbia alone, only two of which were charged prior to January 6, 2021, and both of those were dismissed. In other words, after January 6, 2021, there were more than three times as many defendants charged with Section 231(a)(3) in the District of Columbia as there were in the rest of the country combined in a two-year period.[1]

The sudden pandemic of violations of Section 231(a)(3) in the District of Columbia after January 6, 2021, cannot be attributed to January 6 being a singular event in history. The same two-year period saw the deadly season of Black Lives Matter riots when cities burned for days in federal districts throughout the country. During this very same period, Antifa insurrectionists established an autonomous zone in the District of Oregon and set fire to the Federal Courthouse,[2] but the USAO only charged 19 defendants with Section 231(a)(3).[3] Zero defendants were charged with Section 231(a)(3) in the District of Columbia during the Black Lives Matter riots that lasted from May 29, 2020, through the end of June, and when the president of the United States was forced into a bunker.

In the District of Minnesota, insurrectionists burned a police station during a Black Lives Matter riot. Section 231(a)(3) prohibits interfering with law enforcement while they are responding to a civil disorder. One would expect that setting fire to a police station during a

---

[1] Of the other 93 federal districts, 75 districts (80%) had zero Section 231(a)(3) charges, 12 districts had either one or two charges, and one district had three charges. Five districts had 43 of the 65 charges, almost half of those were in Oregon (19).
[2] Jason Rantz: Antifa attacks federal courthouse in Portland causing 'traditional amount of chaos' | Fox News, www.foxnews.com/media/jason-rantz-only-one-arrested-after-antifa-attacks-federal-courthouse-because-police-cant-do-their-job.
[3] It remains to be seen how many of those insurrectionists were charged with obstructing an official proceeding, until the Court orders a similar study of 18 U.S.C. § 1512(c)(2).

deadly riot would fall within the statute's ambit. But only one man, Matthew Lee Rupert, was charged with Section 231(a)(3), and the charge was dismissed.

CNN provided live coverage of the deadly riots in Minneapolis on May 29, 2020, while the cheering mob gathered and hurled fireworks at the Third Precinct as it burned in flames.[4] CNN's law enforcement expert reported:

> Police had made a calculated decision that they are not going to enforce what we are seeing behind us. There is fire being set to the police department as you can hear what's going on behind us, there are fireworks going off, people climbing up the side of the building. They made the calculated decision that they are not going to stop people from doing that. I think the reason is they know that any type of police presence here is going to be met with aggression and agitation by this crowd that is clearly unhappy. We were just three blocks away at a financial institution that was on fire. The fire department was there but they were keeping a distance, they were not moving in to fight this fire, not wanting to put themselves in jeopardy or danger from this crowd that was clearly agitated. ...They are going to let this building burn…They know the decision right now is you lose a building, or you lose lives, potentially.

If the USAO held the protestors in Minnesota to the January 6 standard, from those reports alone thousands of people could have been arrested and charged with Section 231(a)(3), but only one single man was charged.

Mr. Barnett was charged with violating Section 231(a)(3) - according to the Government prosecutor who chose to charge him - because for one single minute from 2:58 - 2:59 PM on January 6, 2021, he got into one police officer's "personal space," and yelled at him.

> The defendant's presence up in Officer Craig's face, belligerent, yelling at him, all of that impeded or interfered with Officer Craig's ability to hold that line, because all of his attention had to be focused on the man in his personal space right in front of him. And because he can't focus - if he's distracted from the defendant, if he's looking somewhere else, there's a whole mob of people trying - ready to surge past him, or the defendant's ready to surge past him. The defendant wants to go get his flag. So if Officer Craig opens up a window, the defendant's gone.

Transcript 1844-45:17-1.

---

[4] CNN reporter says 'zero' police presence as Minneapolis precinct burns - YouTube, www.youtube.com/watch?v=505lAvIGCj0.

Mr. Barnett argued several times in pretrial motions and motions submitted during trial that the charge should be dismissed because he was not accused of violent conduct. He urged the Court to adopt the Eighth Circuit's standard for Section 231(a)(3) which held that the statute is unconstitutional unless the violent conduct standard is applied.  *See* ECF Nos. 123, 147, but the Court, relying on the Government's arrest and prosecution of famous political activist Abbie Hoffman in the 1970s, adopted a standard that permits the Government to charge even non-violent January 6 defendants with Section 231(a)(3).  ECF. No. 130.

Ironically, in Rupert's case, the Government agreed with Mr Barnett.  Rupert argued that the statute was unconstitutional because it captured violent and non-violent conduct. But the Government, like Mr. Barnett, urged the United States District Court for the District of Minnesota to adopt the Eighth Circuit's violent conduct standard, which it did.  *United States v. Rupert,* Crim No. 20-104, Doc. 39, at 21 (citing United States v. Mechanic, 484 F.2d 849 (8th Cir. 1971)).

> The importance of public confidence in the integrity of judges stems from the place of the judiciary in the government. Unlike the executive or the legislature, the judiciary "has no influence over either the sword or the purse; ... neither force nor will but merely judgment." The Federalist No. 78, p. 465 (C. Rossiter ed. 1961) (A. Hamilton) (capitalization altered). The judiciary's authority therefore depends in large measure on the public's willingness to respect and follow its decisions. As Justice Frankfurter once put it for the Court, "justice must satisfy the appearance of justice." *Offutt v. United States,* 348 U.S. 11, 14, 75 S.Ct. 11, 99 L.Ed. 11 (1954). It follows that public perception of judicial integrity is "a state interest of the highest order." *Caperton,* 556 U.S., at 889, 129 S.Ct. 2252 (quoting *White,* 536 U.S., at 793, 122 S.Ct. 2528 (KENNEDY, J., concurring)).

*Williams-Yulee v. Fla. Bar*, 575 U.S. 433, 445-46 (2015).

Even if the Government is sincere in its belief that January 6 is the single worst event in all of American history, the new data released by the Government creates the "public perception" that the Government is using a rarely applied and sufficiently broad statute to unfairly and unjustly punish non-violent January 6 defendants with a felony crime carrying a long prison

sentence. "At some point, prosecutors must encounter boundaries to discretion, so that no American prosecutor can say, "Show me the man and I'll find you the crime.""  *United States v. Marinello*, 855 F.3d 455, 459 (2d Cir. 2017). This is especially true of Mr. Barnett, who is not accused of committing any violence, yet was designated as a Tier One Terrorist[5] because he had his feet up on Nancy Pelosi's staffer's desk. Accordingly, for that reason, Count One should be dismissed.

**Supreme Court Authority**

The Defendant discovered Supreme Court authority that is directly on point and suggests that Section 231(a)(3) is unconstitutional. In *Houston v. Hill,* 482 U.S. 451 (1987), the Supreme Court considered the constitutionality of a local municipal ordinance making it unlawful "to assault, strike or in any manner oppose, molest, abuse or interrupt any policeman in the execution of his duty." The Court held that an ordinance that makes it unlawful to interrupt a police officer in the performance of his duty is substantially overbroad and therefore invalid on its face under the First Amendment, because:

> [The] ordinance criminalizes a substantial amount of constitutionally protected speech, and accords the police unconstitutional discretion in enforcement. The ordinance's plain language is admittedly violated scores of times daily, App. 77, yet only some individuals — those chosen by the police in their unguided discretion — are arrested. Far from providing the "breathing space" that "First Amendment freedoms need . . . to survive," *NAACP* v. *Button*, 371 U.S. 415, 433 (1963), the ordinance is susceptible of regular application to protected expression.

*Id.* at 466-67. *Houston v. Hill* is exactly analogous and indistinguishable from Mr. Barnett's case. According to Supreme Court precedent, Section 231(a)(3) is unconstitutional, and therefore the charge against Mr. Barnett should be dismissed.

---

[5] ECF No. 174-1

## CONCLUSION

For the foregoing reasons, Count One should be dismissed with prejudice.

Dated: February 24, 2023

Respectfully submitted,

/s/ Jonathan S. Gross /s/
Jonathan S. Gross
The Clevenger Firm
Bar ID: MD0162
2833 Smith Ave, Suite 331
Baltimore, MD 21209
p: (443) 813-0141
e: jon@clevengerfirm.com

## CERTIFICATE OF SERVICE

I hereby certify on this 24th day of February 2023, a copy of the foregoing was served upon all parties as forwarded through the Electronic Case Filing (ECF) System.

/s/ Jonathan Gross, Esq

Jonathan Gross, Esq.