UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES ) | |
| ) | |
| v. ) | 1:21-cr-38 |
| ) | |
| BARNETT ) | |
| _____ ) | |

**BRIEF IN REPLY TO GOVERNMENT'S RESPONSE TO DEFENDANT'S
MOTIONS UNDER RULE 29 AND RULE 33**

Defendant Richard Barnett, by and through counsel, hereby submits this Brief in Reply to the Government's Response to Defendant's Motions Under Rule 29 and 33.

### RESPONSE TO THE GOVERNMENT MISREPRESENTATIONS OF THE TRIAL EVIDENCE

In the Government's Response, the Government made several misrepresentations of the trial evidence.

The Government states that Richard Barnett "prepared to take action to prevent" Joe Biden from becoming president, and on january 6 he followed through on this preparation. No evidence showed this. The Government points to figures of speech posted on social media that together amount to nothing, such as "I ain't going down easy," and "whatever it takes." The Government even cites a quotation from a Darynda Jones novel, "I came into this world kicking and screaming, covered in someone else's blood. I'm not afraid to go out the same way." The Government's desperate search for a smoking gun facebook post to show intent came up empty and left them to scrape the bottom of the barrel, including showing the DC Jury that Mr. Barnett "liked" a picture of a pickup truck with a "Trump" flag on someone else's facebook page. The

Government even quoted as evidence against Mr. Barnett that he considers anyone who does not support the Constitution as his enemy.

The Government also tries to show that Mr. Barnett had "specific knowledge" of the Congressional certification because he shared a flier on facebook - somehow insinuating that everyone who shares a thing on facebook has "specific knowledge" of that thing. The Government absurdly suggests that the event called "Operation Occupy the Capitol" was some hiding-in-plain-sight advertisement for an insurrection. First of all, as Mr. Barnett stated in his testimony, all of Washington DC is the "Capitol." Outside of DC, the Capitol means the District, not the building. Moreover, "Occupy" is a common term for peaceful protests such as "Occupy Wall Street." The Government also cited the event's subtitle, "Taking our country back from corrupt politicians." Apparently, the Government considers that evidence of the intent to commit a crime. The very fact that the very same event advertised that it would occur in all 50 states, shows how this was not a plot to take over the Capitol, and the fact that the event was called for 12:00 PM, which was long before Mr. Barnett's alleged crimes occurred. The Government refers to a quotation attributed to Abraham Lincoln as a "call-to-arms." If these social media posts are the "evidence" that support the Government's convictions, the Court should acquit on all counts.

The Government next points to social media posts where Mr. Barnett seems to be preparing for violence. Yet the Government never alleged, much as they would have liked to, that Mr. Barnett committed any violence on January 6. All of this "evidence" is therefore irrelevant and does not support any charge.

The Government claims that trial evidence showed Mr. Barnett "harass a group of law enforcement officers" outside the Capitol building. There was no such evidence shown at trial. There was a still photo showing him holding his camera and filming officers, which is

constitutionally protected activity, just as it was constitutionally protected activity to film police officers killing George Floyd.  To describe this as "harassment" is  mischaracterisation.  A photo of Mr. Barnett engaging in Constitutionally protected activity is not evidence of any crime.

The Government correctly states that Mr. Barnett ascended the steps by the Columbus doors "which were closed."  The Government showed no evidence that Mr. Barnett knew or could have known that those doors would be opened from the inside, so it proves he had no intent to enter through the Columbus doors.  Mr. Barnett is clearly shown on video being pushed into the building and yelling, "We have no choice! We have no choice!"  The Government falsely states, "He stumbled to the ground as he entered with a fast-moving crowd of rioters behind him, but readily picked himself up."  The video shows that Mr. Barnett, a 60 year old man, is pushed to the ground and nearly trampled to death, but for two good samaritans who picked him up and saved his life.

The Government then makes a legal conclusion that Mr. Barnett "stole" the bloody envelope, despite the fact that he left money for it, and it was for the jury to decide if the envelope was "stolen."  The Government also describes Mr. Barnett and others as "rioters," when the evidence shows that there was no rioting in the office suites, and, on the contrary, all of the so-called "rioters" including Mr. Barnett, followed the instructions to two female police officers without any resistance.

The Government states that "Police officers ordered Barnett to leave the Speaker's suite but he did not comply."  The video shows otherwise.  He was asked by one officer to leave and he began to leave, only to go back to retrieve his flag - which is not in dispute.  But as soon as another officer told him he a second time to leave, he didn't even attempt to get his flag, instead he left and asked officers to retrieve it for him.  The Government cites as evidence of

wrongdoing that he made statements to the officer while complying with her directives. It is a constitutional right to speak to police officers, not evidence of wrongdoing.

The most significant mischaracterisation made by the Government is when they say that he "entered in the Rotunda, where - rather than following officer directives to leave the Capitol building - he joined a mob confronting a line of officers." This is false. The video shows protestors peacefully meandering in the Rotunda. Mr. Barnett was not given any instructions to leave the Capitol, in fact, later, it was shown on video that he had to get special permission to leave the Capitol.

Barnett did incessantly ask the officers to retrieve his flag, but at no time did he "insist that he needed to return to the office to collect his flag" as the Government states. Barnett also at no point "flashed his stun device at Officer Craig" as the Government states. The video shows otherwise. Barnett waved his hand once. Mr. Barnett testified he did so to get the attention of a man with a camera. The Government claims that he was trying to draw the mob, but they presented no evidence that the single wave of his hand was seen by anyone or that it had any impact on the situation.

The Government states that "some members of the mob, including Barnett, did breach the police line." That is not what the video shows. The police sprayed the people and Mr. Barnett was dragged across the line.

The Government adds that after the events in the Rotunda, Mr. Barnett, "still carrying his stun device," approached a line of police officers and shouted at them. It was clearly established at trial that stun devices are legal in the District.

The Government points to the fact that he turned off his location services on his phone, hid his face, and paid cash as evidence of wrongdoing, as if it was unreasonable for Mr. Barnett to keep a low profile at the time that his picture was going viral.

## RULE 29

**COUNT I: CIVIL DISORDER, 18 U.S.C. 231(a)(3)**

In Defendant's supplement to his Rule 29 Motion, Defendant brought to the Court's attention the United States Supreme Court's decision in *Houston v. Hill,* 482 U.S. 451 (1987). In that case, the Supreme Court held that an ordinance that is indistinguishable from 18 U.S.C. 231(a)(3) was unconstitutional because "the ordinance criminalizes a substantial amount of constitutionally protected speech, and accords the police unconstitutional discretion in enforcement." *Hill,* 482 U.S. at 466-67. The supplement also showed how the Government has disproportionately targeted January 6 defendants, including Mr. Barnett, with this "sweeping" statute that is "violated scores of time daily … yet only some individuals - those chosen by the police in their unguided discretion - are arrested." *Id.*

The Government rests on the fact that Mr. Barnett didn't find *Houston v. Hill* earlier. Mr. Barnett was too slow, so too bad. He missed his "bite at the constitutional apple." It is worth noting that the Government charged Mr. Barnett with Section 231(a)(3) in a superseding indictment filed days before trial, and the Court denied his motion for a continuance which gave Mr. Barnett only a few days to research the new charge before he had to go to trial. Further, the Supreme Court has firmly held for well over a century that a court has no jurisdiction to indict or try a citizen on a charge that arises upon an unconstitutional law. *Ex Parte Siebold*, 100 U.S. 371, 377 (1879).

> The validity of the judgments is assailed on the ground that the acts of Congress under which the indictments were found are unconstitutional. If

> this position is well taken, it affects the foundation of the whole proceedings. An unconstitutional law is void, and is as no law. An offense created by it is not a crime. A conviction under it is not merely erroneous, but is illegal and void, and cannot be a legal cause of imprisonment.

*Id.* If the Court holds that the Civil Disorder Statute is unconstitutional, then the charge against Mr. Barnett must be dismissed because the Court does not have jurisdiction to try a man for a statute that violates the Constitution. In the context of the Rule 29 Motion, no evidence produced by the Government at trial is sufficient for a jury to convict a man of violating a statute which the Constitution forbids.

Moreover, Defendant's Supplement was filed after the Government revealed that the Government charged zero Black Lives Matter protestors with Section 231(a)(3) when they burned the District of Columbia for a few weeks in the summer of 2020, but charged hundreds of January 6 defendant when they rioted for a few hours, and the government continues to this day to hunt down and arrest new January 6 defendants and charge them with Section 231(a)(3). There is no comparable ongoing investigation to hunt down Black Lives Matter protestors for the same crime.

The significance of the Government's revelation is that it affirms the reasoning in *Houston v. Hill,* that the statute allows the Government to use "unguided" and "unconstitutional" discretion to give favored political groups like Black Lives Matter a pass, while targeting unfavored groups like January 6 defendants.

In the past, this Court has rejected the argument that *Houston v. Hill* is inapplicable because in *Houston v. Hill* the ordinance at issue was unconstitutional because it prohibited "opposing, molesting, abusing, or interrupting" police, while Section 231(a)(3) prohibits "obstructing, impeding, or interfering," police which according to the Court is distinguishable and not unconstitutional. *See, e.g. United States v. McHugh,* 583 F.Supp 3d 1, 29 (D.D.C. 2022).

Prior to the Government's recent revelation it was "obvious" to the Court that a prohibition on committing an act to obstruct, impede or interfere with law enforcement is completely different from a law imposing criminal penalties for abusing or molesting police.  But now that the Court has the new vantage point and can see the stark difference in Government enforcement based on political ideology - zero charges against Black Lives Matter and 204 and counting against January 6 - it is appropriate for the Court to revisit the reasoning behind *Houston v. Hill*, and to dismiss the charges against nonviolent January 6 defendants like Mr. Barnett.

**COUNT II: OBSTRUCTING A CIVIL PROCEEDING, 18 U.S.C. 1512(c)(2)**

The argument put before the jury at Mr. Barnett's trial was that Mr. Barnett could not have obstructed the official proceeding because he entered the building after the proceeding had been obstructed, he exited the building minutes later, and according to the Government's own witnesses, it would have been impossible for the proceeding to resume until long after Mr. Barnett had left the building, indeed the District.

The Government has no response to this strong argument.  The Government's entire response is as follows:

> Indeed, the evidence and testimony introduced through multiple witnesses, including Speaker Pelosi's then-Director of Operations Emily Berret, Captain Mendoza, SA Glavey, and former assistant parliamentarian Kyle Jones, demonstrated overwhelmingly that the defendant's participation in the riot did, in fact, contribute to the disruption of Congress's certification of the Electoral College vote. Testimony established that the defendant's presence in the building contributed to the prolonged suspension of the proceedings. Both Captain Mendoza and SA Glavey provided testimony to this effect. See, e.g., Tr. at 498:4-20 ("Q. If there was still one member of the public in the building, would you have considered it secure? A. No."). In addition, Ms. Berret and Mr. Jones both testified about how the mob immobilized the administrative functioning of the legislative offices that were central to the operation of the certification. See, e.g., Tr. at 101:3-15; 975:8-982:20. As Judge Kollar-Kotelly explained in United States v. Rivera, No. 21-cr-60 (CKK), "proceedings could not recommence until the entire building was secured and cleared of rioters[, and] even the presence of

one unauthorized person in the Capitol is reason to suspend Congressional proceedings." 2022 WL 2187851, at *6 (D.D.C. June 17, 2022).

Special Agent Glavey's testimony supported Mr. Barnett's argument because she testified that it would have taken hours to sweep the building before allowing the proceeding to presume, even if a single person were in the building.

The Government states in a conclusory manner that "former assistant parliamentarian Kyle Jones, demonstrated overwhelmingly that the defendant's participation in the riot did, in fact, contribute to the disruption of Congress's certification of the Electoral College vote." Perhaps the "riot" writ large "contributed to the disruption," but the question is whether Mr. Barnett's entrance into the building "obstructed the official proceedings," but Mr. Jones don't know why and don't know how Mr. Barnett did so.

Captain Mendoza and Special Agent Glavey stated that if there was even one person left in the building they could not have conducted the proceeding, which only goes to Mr. Barnett's point. So long as there was one person in the building after Mr. Barnett, and there were many thousands, the proceeding, that Mr. Barnett could not obstruct, could not resume. Accordingly, he clearly had no impact on the obstruction, or the delaying of the resumption.

The jury was tasked with deciding if Mr. Barnett "obstructed the proceeding." The evidence showed that he was not the cause that the proceeding ceased, and he was not the reason it did not resume. No evidence showed that he obstructed it so he should be acquitted.

**COUNT III - VII**

Defendant rests on the arguments in his motion.

**COUNT VIII**

Incredibly, the Government points to the fact that Mr. Barnett left 25 cents (actually 27 cents) as evidence that Mr. Barnett should be convicted of stealing the envelope, because the Government shows the fact that he left 25 cents as evidence that the envelope had some value.

Mr. Barnett maintains that the Government does not seriously believe that Mr. Barnett should be charged with 18 U.S.C. 641, a crime punishable up to one year in prison. The absurdity of charging Mr. Barnett with stealing a single envelope undermines the Government's contention that January 6 is the single worst day in American history. The fact that the jury so quickly unanimously convicted Mr. Barnett on this charge supports Mr. Barnett's and hundreds of other January 6 defendant's contention that venue in the District is not proper for January 6 defendant's because the juries are not impartial.

## RULE 33

Mr. Barnett rests on the arguments in his motion. The video speaks for itself.

## **CONCLUSION**

For the foregoing reasons, the Court should grant Mr. Barnett's Motions under Rule 29 and 33.

Dated: March 27, 2023                    Respectfully submitted,

*/s/ Jonathan Gross*
Jonathan Gross
Bar ID: MD0162
2833 Smith Ave, Suite 331
Baltimore, MD 21209
(443) 813-0141
jon@clevengerfirm.com