UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Case No. 21-cr-38 (CRC) |
| RICHARD BARNETT | |
| Defendant. | |

**GOVERNMENT'S OPPOSITION TO**
**DEFENDANT'S MOTION FOR RELEASE PENDING APPEAL**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully opposes defendant Richard Barnett's Motion for Release Pending Appeal, ECF No. 220, which seeks release pending appeal in light of the Supreme Court's June 28, 2024 decision in *United States v. Fischer*, 603 U.S. ___, No. 23-5572 (June 28, 2024), (2024).[1] Regardless of the Supreme Court's decision in *Fischer* and its effect, if any, on this case,[2] Barnett cannot overcome the high barrier for release pending appeal required by 18 U.S.C. § 3143(b). Under § 3143(b), Barnett's continued imprisonment is mandatory unless he can establish both (1) by clear and convincing evidence that he does not pose a danger to the community and is not a flight risk, and (2) that the outcome in *Fischer* likely will result in reversal, an order for a new trial, a sentence that does not include a term of imprisonment, or a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected

---

[1] Barnett originally filed his motion on June 18, 2024—prior to the release of *Fischer* on June 28, 2024.

[2] As established by this response, while *Fischer* is contextually important, Barnett's conduct and other charges largely drive the government's opposition.

1

duration of the appeal process. Barnett cannot do so, and his motion should be denied.

## I. BACKGROUND AND PROCEDURAL HISTORY

Barnett spent weeks preparing for his trip to Washington, D.C., during which he (1) made numerous aggressive posts on social media concerning his perceived fight to stop the transition of power to then-President-Elect Biden, (2) attempted to recruit others to disrupt the certification proceedings on January 6, 2021; (3) purchased a stun device concealed inside a walking stick, which he filmed himself experimenting with and showed off to family and friends; and (4) fashioned a ten-pound metal pole into a flagpole that Barnett recognized could be used as a weapon or "freedom implement." In other words, Barnett prepared for violence and disruption on January 6, and he "didn't drive all the way [to D.C.] to sing kumbaya."

On January 6, 2021, Barnett dedicated his time on Capitol grounds and in the Capitol building making good on those preparations. Among many other things, Barnett pursued and harassed police officers on the Capitol's west front, joined rioters that forced their way into the Capitol building's East Rotunda Doors, triumphantly posed for a photo at a desk he believed to belong to then-Speaker Pelosi, wrote a menacing note to then-Speaker Pelosi, stole an envelope from the Speaker's office as a trophy, defied and threatened officers attempting to remove him from the building, and celebrated his triumphs on Capitol grounds until well-after his eventual exit from the building—all while carrying a dangerous weapon.

After the events of January 6, Barnett knew he broke the law and attempted to avoid detection on his way home to Arkansas. He turned off location services on his phone, hid his face with a mask, and paid cash along the way. He also disposed of his phone and the stun device in an unknown manner. And Barnett turned himself into law enforcement when he returned home and learned that authorities had identified him as the man photographed posed at a desk in Speaker

Pelosi's offices. Nevertheless, Barnett treated his crimes as a joke and even attempted to profit from them.

In all, the Court is quite familiar with the situation and tenor of Richard Barnett's participation in the January 6, 2021 attack on the U.S. Capitol. As the Court told Barnett at sentencing:

> [F]or better or worse, you have become one of the faces of January 6th. All right? And I think you kind of enjoy that notoriety. You're not just Richard, but you're Bigo, which you said on the stand was almost an alter ego. You want to be the center of attention. You even tried to profit from your involvement, as Ms. Prout mentioned, by selling autographed copies of *The New York Times* photo to supporters and copyrighting your completely disrespectful message to Speaker Pelosi. And I can see those impulses leading you to answer, if not the next call like this, at least something similar in some respect.

May 24, 2023 Sentencing Tr. at 100–01

As this Court knows, on January 23, 2023, a jury reached a verdict finding Barnett guilty of all eight counts of the superseding indictment, including four felonies (Civil Disorder, Obstruction, Entering or Remaining with a Deadly or Dangerous Weapon, and Disorderly and Disruptive Conduct with a Deadly or Dangerous Weapon) and four misdemeanors. Following his conviction at trial, Barnett repeatedly characterized the jury's determination as political persecution and proliferated false descriptions about the facts and events of his case on social media. He mischaracterized the evidence against him and mocked law enforcement victims, including claiming he merely "hurt[] [their] feelings." ECF No. 199 at 25. Ultimately, Barnett spent a great deal of his time pending sentencing demonstrating his complete lack of remorse for his conduct on January 6, 2021, and distributing the same misinformation that helped spark the Capitol Riot in the first place. *Id.* at 23–26.

On May 24, 2023, the Court sentenced Barnett to 54 months' total incarceration: 54 months each on Counts One through Four and 6 months each on Counts Five through Eight—all to run concurrently.

Barnett filed a notice of appeal on June 5, 2023. ECF No. 206. On appeal, Barnett challenges "his final judgment, conviction, and sentencing[.]" *Id.* On May 3, 2024, Barnett filed an unopposed motion to hold his appeal in abeyance pending the Supreme Court's ruling in *Fischer*. On May 7, 2024, the D.C. Circuit granted Barnett's motion and ordered the parties to file motions to govern future proceedings within 30 days of the Supreme Court's disposition in *Fischer*. This appeal remains pending and will be litigated in the Circuit.

On June 18, 2024, Barnett filed the instant motion for release pending his appeal. ECF No. 220. Ten days later, on June 28, 2024, the Supreme Court released its decision in *Fischer*. In its decision, the Supreme Court did not reject the application of 18 U.S.C. § 1512(c)(2) to the events of January 6, 2021, whole cloth. Rather, the Supreme Court explained that the government must establish that the defendant impaired the availability or integrity for use in an official proceeding of records, documents, objects, or other things used in the proceeding—such as witness testimony or intangible information—or attempted to do so. *Fischer*, No. 23-5572, at 8-9. The Supreme Court has remanded the case to the D.C. Circuit for further proceedings. Through those further proceedings, the Court of Appeals will interpret the scope of the statute in light of *Fischer*. The government is actively assessing the impact of *Fischer* on all cases involving § 1512(c)(2). In the meantime, we respond to this motion.

## II. LEGAL STANDARD

Under 18 U.S.C. § 3143(b), a defendant who has been sentenced to a term of imprisonment "shall . . . be detained" unless the court finds that two separate requirements are met:

> (1) "clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released," and
> (2) that the appeal "raises a substantial question of fact or law likely to result in—(i) reversal, (ii) an order for a new trial, (iii) a sentence that does not include a term of imprisonment, or (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process."

18 U.S.C. § 3143(b)(1)(A)-(B). The requirements for "reversal" and "an order for a new trial" encompass all counts, not just a single count. *United States v. Perholtz*, 836 F.2d 554, 557 (D.C. Cir. 1988) (explaining that defendants "cannot be released unless the appeal raises a substantial question likely to result in reversal of *all counts* on which imprisonment is imposed") (emphasis supplied). If a judicial officer finds that a defendant is eligible for release because the appeal is "likely" to result in "a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process," the remedy is not immediate release; rather, "the judicial officer shall order the detention terminated at the expiration of the likely reduced sentence." 18 U.S.C. § 3143(b)(1)(B). It is Barnett's burden to make the requisite showing under 18 U.S.C. § 3143(b)(1)(B). *Perholtz*, 836 F.2d at 555-56 (referring to "the required showing on the part of the defendant"); *United States v. Libby*, 498 F. Supp. 2d 1, 3 (D.D.C. 2007).

## III. ARGUMENT

Even assuming that the Supreme Court's remand of *Fischer* to the Circuit raises a "substantial question" in this case, Barnett nevertheless cannot overcome the high barrier to justify his release. Barnett has been found guilty of multiple offenses, including multiple felonies, and he

5

has not shown that a favorable decision[3] on his appeal deriving from *Fischer* would result in a reduced term of imprisonment less than the total of the expected duration of his appeal plus the time he has already served. Moreover, Barnett fails to demonstrate by clear and convincing evidence that he is unlikely to flee or pose a danger to the safety of any other person or the community if released. For each of these reasons, Barnett's motion should be denied.

### a. Barnett Cannot Show that He Is Not Likely to Flee or Pose a Danger

Barnett fails to show by clear and convincing evidence that he is both not likely to flee and does not pose a danger to the community. This is a required showing for release, regardless of the nature of any appeal.

Regarding his likelihood to flee, Barnett knew after January 6 that he broke the law and took extensive efforts to conceal his travel back to Arkansas. He also disposed of devices relevant to his case: his phone and the stun device. Additionally, Barnett's likely inclination to avoid responsibility for his crimes are suggested by his blatantly false testimony at trial on material issues in the case and repeated assertions of his lack of remorse.

Regarding his danger to the community, Barnett's felonious conduct on January 6, 2021, was part of a massive riot that almost succeeded in preventing the certification vote from being carried out, frustrating the peaceful transition of Presidential power, and throwing the United States into a Constitutional crisis. Barnett was an active member of the violent mob at the Capitol that day. It is apparent from Barnett's own statements that he anticipated violence that day, and his

---

[3] Nothing in this submission should be construed as an admission that the defendant has a meritorious *Fischer* claim, or that a *Fischer* claim in this case is likely to result in reversal or retrial on all counts, or even in a shorter sentence. Any claim under *Fischer* should be considered in the first instance by the court of appeals, and any questions relating to the defendant's sentence should be considered if and when jurisdiction returns to this Court.

intent was to support it. He brought a weapon, breached the Capitol, and afterwards basked in the glory he felt his actions gained him. Against these facts, Barnett cannot show that he is not a danger to the community. Given his conduct on January 6, 2021, rhetoric, and behavior throughout the criminal justice process, Barnett cannot show that now, as we are immersed another hotly contested presidential election year, he would not encourage and engage in such conduct again. The current political climate speaks volumes about the developed frailty that now attends the Court's assessment at sentencing that Barnett did not pose a risk of flight or danger for the purposes of self-surrender. As the Court acknowledged, Barnett is primed to "answer . . . the next call[.]" Sentencing Tr. at 101.

### b. A Decision Favorable to Barnett in *Fischer* Is Not Likely to Result in a Sufficiently Reduced Sentence.

Barnett claims that if his conviction under Count Two were to be vacated, his "sentence will almost certainly be lower." ECF No. 220 at 8. Barnett then calculates his expected guidelines range at 18 to 24 months and assumes that he has already served the sentence that would be imposed if his Count Two conviction is vacated. But Barnett's calculation is mistaken, his assumption is flawed, and he fails to show that—even assuming *Fischer* results in a favorable outcome in his appeal—he can satisfy his burden under § 3143(b) to demonstrate his appeal is "likely" to result in "a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process[.]" § 3143(b)(1)(B).

As a threshold matter, Barnett has been convicted for conduct going well-beyond that implicated by Count Two. Indeed, Barnett was convicted of three additional felonies and four misdemeanors in connection with his extensive criminal conduct on January 6. While Barnett characterizes this as "only three felonies," the fact is that Count Two represents only the tip of the

iceberg for his criminal behavior, which included bringing a dangerous weapon to a violent mob, opposing and disobeying police during a chaotic riot, defying the security of the Capitol for hours as he attempted to disrupt government business and sow disorder, parading through the building as Congressional staff hid in fear, and stealing an envelope as a trophy from the offices of the Speaker of the House.

With that, Barnett's assumed sentence is flawed. First, he takes for granted that Counts One and Four—each having a final offense level of 15—drive a possible guidelines range. However, it is, in fact, Count Eight that produces the highest offense level of 19. *See* ECF No. 199 at 32.[4]

Additionally, the advisory guideline range is not the end of the calculus. After reviewing the full record, the Court could properly impose an upward variance based on the applicable 18 U.S.C. § 3553(a) factors. In the absence of Count Two, the Court may find, for example, that the new advisory guideline range does not adequately reflect either the seriousness of Barnett's conduct, his lack of remorse, or the risk of recidivism. Indeed, the Court could determine, considering all the circumstances, that its original 54-month sentence remains appropriate.

For these reasons, Barnett has not demonstrated that it is "likely" he would be resentenced to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.

---

[4] Barnett also assumes that all Counts of conviction would continue to group. They would not. Without Count Two and its specific offense characteristics, there could be at least three groups based on the different victims of and harms caused by the various offenses: (1) Count One; (2) Counts Three, and Four; and (3) Count Eight. *See* ECF No. 199 at 32–33. Thus, the applicable total offense level could be 22, yielding a guidelines range of 41 to 51 months

IV.     **CONCLUSION**

For all the above reasons, Barnett—regardless of *Fischer*—has failed to meet his burden under 18 U.S.C. § 3143(b), and his motion for release pending appeal should be denied.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY

BY:     */s/ Nathaniel K. Whitesel*
NATHANIEL K. WHITESEL
Assistant United States Attorney
DC Bar No. 1601102
601 D Street NW
Washington, DC 20530
nathaniel.whitesel@usdoj.gov
(202) 252-7759