UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | |
| v. | ) ) | Case. No. 21-cr-00038 (CRC) |
| RICHARD BARNETT, | ) ) ) | |
| Defendant. | ) ) | |

### DEFENDANT'S REPLY IN SUPPORT OF HIS MOTION
### FOR RELEASE PENDING APPEAL

Release pending appeal is warranted in Mr. Barnett's case. Indeed, there is a very serious risk that Mr. Barnett is already overserving the sentence he would receive if his appeal succeeds.

The government contends, contrary to this Court's previous finding, that Mr. Barnett is a flight risk and a danger to the community. But the conclusion that Mr. Barnett does not present a risk of flight or a danger to the community has only gotten stronger since this Court's initial decision. Mr. Barnett voluntarily self-surrendered to serve his term of incarceration, has not picked up a single violation of BOP's rules while imprisoned, and has participated extensively in BOP programming.

The government also disputes whether, given that *Fischer* was resolved in Mr. Barnett's favor, he is likely to receive a reduced sentence of imprisonment that would expire before his appeal concludes. In contesting this latter point, the government misunderstands this Court's initial sentence and incorrectly calculates the Guidelines.

### ARGUMENT

**1. Mr. Barnett is not a flight risk or a danger to the community.**

Mr. Barnett had perfect compliance on pretrial release. Following his sentencing, this Court, over the government's objection, permitted him to voluntarily self-surrender after it found

1

by clear and convincing evidence that Mr. Barnett did not pose a flight risk or a danger to the community. Sentencing Tr., Dkt. 210. at 109. This Court was correct when it reached that conclusion at the time, and the reasons for it have only gotten stronger since. Following this Court's decision to allow Mr. Barnett to self-surrender, he did so without incident. Since beginning his term of incarceration, Mr. Barnett's perfect compliance has continued. He has not incurred a single rule violation while imprisoned—no small feat in BOP's rule-filled and heavily monitored facilities. He has also made productive use of BOP's internal programming, as his accumulation of earned time credit demonstrates.

The government does not contest any of this. Instead, it retreads Mr. Barnett's actions on and immediately following January 6.[1] But, as noted, this Court already decided that this conduct did not make Mr. Barnett flight risk or a danger to the community. The mere fact an election is upcoming does not change that and certainly does not justify keeping him incarcerated beyond the sentence he is likely to receive following *Fischer*. Mr. Barnett has no desire to return to Washington, DC, and this Court is free to make staying away from the city a condition of his release in order to reduce any concerns about recidivism.[2]

2. **Following *Fischer*, the sentence Mr. Barnett is likely to receive is shorter than the length of time his appeal is expected to take.**

The government does not dispute that *Fischer* presents a substantial question in Mr. Barnett's case. However, it disagrees with Mr. Barnett's calculation of his guidelines range without his § 1512 conviction (Count 2). The government does not claim that Count 1—§ 321

---

[1] The government's effort to paint Mr. Barnett as someone on the run following January 6 is unpersuasive. As it admits, Mr. Barnett voluntarily turned himself in when he learned law enforcement was looking for him. There is no reason to think Mr. Barnett is a flight risk.

[2] Mr. Barnett requests that he still be allowed to appear in person for any court dates in this case.

felony offense for interference with a law enforcement officer during a civil disorder—drives his Guidelines range. It does not claim that Counts 3 and 4— the § 1752 felony offenses for entering or remaining in a restricted building with a dangerous weapon and disorderly and disruptive conduct in a restricted building with a dangerous weapon—drive his Guidelines range. Instead, it claims that Count 8—the misdemeanor count associated with Mr. Barnett's theft of an empty envelope—now drives his Guidelines. The government also claims, in a footnote, that Mr. Barnett's counts of conviction no longer group. Finally, it implies that a dramatically above Guidelines sentence is appropriate. Mr. Barnett takes these arguments in turn.

First, the government's claim that Count 8 should drive Mr. Barnett's sentence operates from a fundamental misunderstanding about his original sentencing. This Court did not, as the government claims, sentence Mr. Barnett to 6 months on Count 8. Probation recommended Mr. Barnett be sentenced to the statutory maximum on that count. *See* Sentencing Tr. at 14. But defense counsel argued for a lower sentence than that and specifically drew this Court's attention to Emily Hernandez—a woman who received a 30-day sentence after taking items during January 6. *Id.* at 80 (explaining how Mr. Hernandez took signs that said, "Keep off the Fence" and "Please Do Not Touch."). In response, this Court gave the probation-recommended sentence on all of the counts except the theft offense. For Count 8, this Court went out of its way to give Mr. Barnett only 60 days. *Id.* at 105. In other words, this Court has already looked at the theft offense and concluded not only that it should not drive his sentence, but that it is deserving of a shorter term of incarceration than every single other count of conviction. As a result, even if the government were right that Count 8 will drive Mr. Barnett's new Guidelines, that would be a reason for a downward departure or variance to a lower range because this Court has already determined that Count 8 is deserving of the shortest sentence of all. *See* 2B1.1, comment. (n.21(C)) (explaining

3

that a downward departure is warranted in a case in which the offense level substantially overstates the seriousness of the offense).

In any event, the government is also mistaken about the proper Guidelines calculation. At Mr. Barnett's initial sentencing, probation concluded that all of Mr. Barnett's offenses grouped. Pursuant to USSG § 3D1.2(b), Counts 2, 3, 4 and 8 were grouped because the offenses (1) involved the same victim: "Congress/Government"; and (2) two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme/plan: to "impede or disrupt the orderly conduct of Government business." PSR ¶ 49. Pursuant to USSG §3D1.2(c), Counts 2, 3, 4 and 8 were then grouped with Count 1 because the defendant's interaction with MPD Officer Craig was what triggered Count 2's eight-point "obstruction of justice" specific offense characteristic for "causing or threatening to cause physical injury to a person." PSR ¶ 50.[3]

Without the Count 2 conviction for violating § 1512, the grouping analysis remains largely the same. Counts 3, 4 and 8 continue to group because of the common victim (the Congress/Government) and common criminal object/ scheme or plan (impeding or disrupting the orderly conduct of Government business.) *See* USSG § 3D1.2(b). Counts 3, 4 and 8 are then grouped with Count 1 because Mr. Barnett's interaction with MPD officer Craig is a specific offense characteristic of Count 4. *See* USSG § 3D1.2(c). More specifically, Mr. Barnett's interaction with MPD officer Craig is what triggers Count 4's three-level enhancement for threatening someone with a dangerous weapon under USSG § 2A2.4(b)(1)(A).

---

[3] This enhancement was incorrectly applied. *See United States v. Brock*, 94 F.4th 39, 51 (D.C. Cir. 2024) (holding that the term "administration of justice" in USSG § 2J1.2 "does not encompass Congress's role in the electoral certification process"). However, since *Fischer* requires vacating Mr. Barnett's Count 2 conviction entirely, *Brock* does not matter for the purposes of this motion.

Because all the counts group, the highest offense level among them applies. *See* USSG §3D1.3(a). As explained in Mr. Barnett's motion, Counts 1 and 4 give the highest offense level: 15. The government disagrees, claiming that Count 8 gives the highest offense level of 19. It contends that Count 8's adjusted based offense level is 14 per USSG § 2B1.1(b)(16)(B), has 3-level increase for an offense where the victim was a government employee per USSG § 3A1.2(a), and has a 2-level increase for obstructing or impeding the administration of justice per USSG § 3C1.1. Mr. Barnett does not contest the 2-level increase under USSG § 3C1.1 but disputes the remainder of the government's calculation.

The three-level increase under USSG § 3A1.2(a) applies when "specified individuals" are victims of the offense and not "when the only victim is an organization, agency, or the government." USSG § 3A1.2 cmt. 1. Mr. Barnett's conviction under Count 8 is for theft of government property. *See* Dkt. 208 at 2 (citing 18 U.S.C. § 641). The victim of that offense—as the statute of conviction makes plain and the PSR reiterates—is the government. Accordingly, the three-level enhancement does not apply.

The adjusted based offense level of 14 under USSG § 2B1.1(b)(16)(B) applies if "the offense involved . . . possession of a dangerous weapon (including a firearm) in connection with the offense." However, Mr. Barnett's stun device was not possessed "in connection" with the theft offense. Mr. Barnett did not steal the envelope by taking it out of someone's hand, or even by taking it in the presence of someone on Pelosi's staff. Instead, he took it from off an empty desk. Because the stun device did not facilitate his theft offense, the base offense level of 6, rather than the adjusted offense level of 14, applies to this offense. *See* USSG § 2B1.1(a)(2).

Properly calculated, the offense level for Count 8 is 8. Because that offense level is lower than offense level for Counts 1 and 4, it does not alter Mr. Barnett's Guidelines range. Instead, as

explained in Mr. Barnett's motion, his offense level of 15 and zero criminal history points result in a Guidelines range of 18 to 24 months.

Mr. Barnett began serving his sentence of incarceration on August 1, 2023. *See* Motion, Ex. 1. He received 110 days of credit from his trial in pretrial detention. *Id.* He has also earned, as of May 31, 2024, 54 days of good time credit and 90 days of FSA earned time credit.[4] *Id.* This brings his total time served plus credit earned to 611 days or approximately 20 months.

During his initial sentence, this Court varied below Mr. Barnett's Guidelines range. In addition to its conclusion that his earlier offense level overstated the seriousness of Mr. Barnett's conduct, this Court explained that it understood Mr. Barnett was "a good family man" and "a close friend to many." Sentencing Tr. at 102. It "was particularly struck by the letters from [Mr. Barnett's brother John and [his] nieces." *Id.* And it recognized that there is "good in [Mr. Barnett's] heart" and that he is "generous with [his] time and with [his] money." *Id.*

For these reasons, and in recognition of Mr. Barnett's good behavior while incarcerated, this Court should conclude that the sentence Mr. Barnett is likely to receive is shorter than the expected duration of his appeal. We have a decision in *Fischer*, but the government continues to drag its feet about what that means for Mr. Barnett and the numerous other January 6 defendants convicted under 18 U.S.C. § 1512(c)(2). Furthermore, even if a resolution is reached in *Fischer*, Mr. Barnett's appeal is likely to drag on for many months after that. His appeal remains stayed and, even once it is resumed, it will take many months to brief, argue, and decide the complex issues arising from his trial.

---

[4] It is undersigned counsel's understanding that Mr. Barnett has continued to earn good time and earned time credit since May 31. Counsel intends to update the Court with a renewed calculation as soon as possible.

6

Thus, the vacatur of Mr. Barnett's § 1512 conviction is likely to result in a sentence less than the total of the time he has already served plus the expected duration of the appeal process. In fact, as of today, Mr. Barnett has already served the length of time he would likely receive if he were to be sentenced under the Guideline range that would apply if his § 1512 conviction is vacated.

The government asserts that this Court "*could* properly impose an upward variance" up to and including Mr. Barnett's original sentence of 54 months. Gov. Opp. at 8. But it takes no position on what exact sentence would be appropriate. "To sustain an upward variance," this Court would have to "state the specific reason why the defendant's conduct was more harmful or egregious than the typical case represented by the relevant Sentencing Guidelines range." *United States v. Murray*, 897 F.3d 298, 308–09 (D.C. Cir. 2018) (internal quotation marks and brackets omitted). A review of the sentences in January 6 cases show that the vast majority of similarly situated defendants (i.e., those with convictions under 18 U.S.C. §§ 231 and/or 1752(b)(1)(A) but not §§ 111 and/or 1512) received sentences at or shorter than the more 20 months that Mr. Barnett has already served and received credit for. *See Sentences Imposed in Cases Arising Out of the Events of January 6*, https://www.justice.gov/usao-dc/media/1331746/dl?inline. Thus, a grant of Mr. Barnett's motion for release pending appeal that results in his immediate release is appropriate.

## CONCLUSION

Accordingly, Mr. Barnett respectfully asks this Court to grant his motion for release pending appeal.

Respectfully Submitted,
A. J. KRAMER

Federal Public Defender for the
District of Columbia

by:_____s/_____
Courtney L. Millian
Assistant Federal Public Defenders
625 Indiana Avenue, NW
Washington D.C. 20004
202 208-7500