UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.     ) | Case No. 1:21-cr-00038 (CRC) |
| ) | |
| RICHARD BARNETT,   ) | |
| ) | |
| Defendant.   ) | |

## MOTION FOR RETURN OF RESTITUTION AND ASSESSMENT

Defendant Richard Barnett, through undersigned counsel, respectfully moves this Court for an Order directing the government to return all fines, fees, and restitution payments Mr. Barnett has made in this case. Assistant United States Attorney Thomas Stutsman has indicated that the government does not oppose this motion. In support of this motion, Mr. Barnett submits the following.

### BACKGROUND

On January 29, 2021, the government obtained a seven-count indictment charging Mr. Barnett with various offenses arising from the events of January 6, 2021, including Obstruction of an Official Proceeding under 18 U.S.C. § 1512(c)(2) and Theft of Government Property under 18 U.S.C. § 641.  On December 21, 2022, the government obtained a superseding indictment that added a Civil Disorder charge under 18 U.S.C. § 231. Mr. Barnett invoked his right to a jury trial under the Sixth Amendment.

On January 23, 2023, the jury rendered a verdict of guilty on each count.  On May 24, 2023, the Court sentenced Mr. Barnett to 54-months in prison.  He timely appealed.

On January 20, 2025, while Mr. Barnett was serving his sentence and his appeal was

pending, President Donald J. Trump issued a Proclamation "Granting Pardons and Commutations of Sentences for Certain Offenses Relating to the Events at or Near the United States Capitol on January 6, 2021."  Consistent with the President's Proclamation and pursuant to Federal Rule of Criminal Procedure 48(a), on February 3, 2025, the government moved to vacate Mr. Barnett's convictions and remand his case to the district court for dismissal with prejudice.

On February 4, 2025, the D.C. Circuit vacated Mr. Barnett's convictions and remanded his case to this Court for dismissal as moot.  On February 5, 2025, this Court dismissed Mr. Barnett's case.

Mr. Barnett now requests that the Court order the government to refund his special assessment and restitution payments of $2,455.00, which were made in compliance with his Judgment (Dkt. 208), as shown by his payment receipts (Receipts at Exhibit 1). [1]  Mr. Barnett was not assessed any fines.

**ARGUMENT**

The Court of Appeals order vacating Mr. Barnett's convictions and remanding his case for dismissal requires the government to refund all restitution, fines, and special assessments that Mr. Barnett previously paid.

### A. Because Mr. Barnett's Conviction was Vacated on Appeal, He Should Recover the Restitution Payments He Made

"When a criminal conviction is invalidated by a reviewing court and no retrial will occur, . . . the State [is] obliged to refund fees, court costs, and restitution exacted from the defendant upon, and as a consequence of, the conviction[.]" *Nelson v. Colorado,* 581 U.S. 128, 130 (2017). *Nelson* involved two criminal defendants who sought to recover the costs, fees, and restitution that

---

[1] The redactions in this payment information were made by the Court's financial office and not Mr. Barnett.

had been imposed as part of their original criminal convictions. *Id*. at 131. Both convictions were reversed on appeal, one defendant was acquitted on retrial, and the state declined to retry the other defendant. *Id*. The Supreme Court ruled that, as a matter of due process, "once [the defendants'] convictions were erased, the presumption of their innocence was restored," and the state "may not presume a person, adjudged guilty of no crime, nonetheless guilty *enough* for monetary exactions," including costs, fees, and restitution. *Id*. at 135-36 (emphasis in original). Moreover, because such defendants "are entitled to be presumed innocent," they "should not be saddled with any proof burden" to get their money back. *Id*. at 137.

Under *Nelson*, so long as 1) a reviewing court has invalidated a defendant's convictions, and 2) no retrial will occur, that defendant is entitled to a refund of restitution, fines, and fees without any further showing. *Id*. at 130.

Both criteria are met here. First, the Court of Appeals "invalidated" Mr. Barnett's convictions when it granted the government's motion to vacate them and remanded this case for dismissal. *See United States v. Barnett*, Appeal No. 23-3086, Doc. No. 2098733 (Order). As Judge Bates has explained, "[v]acatur of a conviction on appeal—even if resulting from a pardon—restores to a defendant the presumption of innocence, for finality was 'never reached on the legal question of ... guilt.'" *United States v. St Cyr*, No. CR 22-185 (JDB), 2025 WL 2466044, at *1 (D.D.C. Aug. 27, 2025) (quoting *United States v. Schaffer*, 240 F.3d 35 (D.C. Cir. 2001)). Indeed, a vacatur of an order means it is deemed "void ab initio," meaning "the law acts as though the vacated order never occurred." *Hewitt v. United States*, 145 S. Ct. 2165, 2173 (2025).

Second, by moving for vacatur of Mr. Barnett's convictions and dismissal with prejudice, the government has made clear that it will not seek retrial. *See United States v. Barnett*, Appeal No. 23-3086, Doc. No. 2095728 (Appellee's Unopposed Motion to Vacate Convictions and

Remand for Dismissal). Moreover, this Court, in effect, has granted the government's motion by dismissing Mr. Barnett's case as moot. And in any event, the presidential pardon of Mr. Barnett would prohibit retrial. *See United States v. Scott,* 437 U.S. 82, 87 (1978) (recognizing constitutional prohibition against double jeopardy originates "in the three common-law pleas of *autrefois acquit, autrefois convict,* and pardon," which "prevent[] the retrial of a person who had previously been acquitted, convicted, or pardoned for the same offense.").

Thus, because there is no conviction in this matter, there is no authority for denying the return of restitution, fines, and special assessments Mr. Barnett previously paid. *See, e.g.*, *United States v. Libous*, 858 F.3d 64, 69 (2d Cir. 2017) ("If Libous's conviction is to be vacated and his indictment dismissed, as our precedents require, then his estate is entitled to the return of the fine."); *United States v. Ajrawat*, 738 F. App'x 136, 139 (4th Cir. 2018) ("When the underlying conviction is invalidated—regardless of the reason—there is no longer any basis justifying the government's retaining funds exacted only as a result of that conviction.").

Several courts in this jurisdiction have disagreed, for two primary reasons. First, they claim that vacatur because of a pardon is different than vacatur for other reasons. *See, e.g.*, *United States v. Vargas*, No. CR 21-47 (RDM), 2025 WL 1786681, at *3 (D.D.C. June 27, 2025). And second, they claim that *Nelson* is inapplicable because it was a procedural due process case. *See, e.g.*, *United States v. Sullivan*, 783 F. Supp. 3d 385, 389-90 (D.D.C. 2025). They are mistaken.

As Judge Bakes has explained, a pardon made after a conviction is final is different from a pardon that comes down when a case on appeal. That is because, "when one is pardoned while the conviction is on appeal, the appeal becomes moot, and her conviction must be vacated." *St Cyr*, 2025 WL 2466044, at *4. Vacatur "wipes the slate clean, and restores to the defendant both the presumption of innocence and the right to be paid money based on a now vacated conviction."

4

*Id.* Its "effects do not turn on the reason behind the vacatur." *Id.*

Furthermore, Mr. Barnett is entitled by due process to a return of his funds and, even if he is not, "*Nelson*'s reasoning is not limited to procedural due process." *Id.* at 5. As Judge Bates explained, its conclusion drew on "general principles of vacatur that apply to state and federal convictions alike." *Id.* That is why "every court of appeals to have addressed the issue post-*Nelson* has held that, when a federal conviction is vacated on appeal due to the defendant's death, the defendant's estate has a right to the money the defendant paid to the government pursuant to his conviction." *Id.*

### B. The Appropriations Clause Does Not Limit the Government's Authority to Return Mr. Barnett's Money

One Judge in this Court suggested that the Appropriations Clause limits the government's authority to return Mr. Barnett's money. It does not. First and foremost, any such conclusion—that the government could keep the money it received pursuant to a conviction that no longer exists—raises major constitutional concerns. *Cf. United States v. U.S. Coin & Currency*, 401 U.S. 715, 720-21 (1971) (citing the "serious constitutional questions" that would arise under the Due Process and Takings Clauses of the Fifth Amendment if the government could retain property taken from someone whose conviction was invalidated). Second, a return of Mr. Barnett's money is consistent with the practice in this jurisdiction prior to the January 6 cases. And third, Congress has set forth a number of appropriations that authorize a return of funds here.

In prior cases in this jurisdiction, the restitution, assessments, and fines have been returned without controversy or any need to identify a specific appropriation by Congress. For example, in *United States v Nwoye*, 824 F. 3d 1129 (D.C. Cir. 2016), the D.C. Circuit reversed the district court's decision in a criminal case and remanded for further proceedings. On remand, the government moved to dismiss the indictment, which was granted. Citing *Nelson*, the defendant

5

moved, unopposed for return of the $100 special assessment and $40,206.03 in restitution. Unopposed Motion for Return of Funds, *United States v Nwoye*, Case No. 1:07-cr-00012, Dkt. 99 (D.D.C. Sept. 13, 2017). The district court granted the motion and ordered (1) the government to return the restitution paid and (2) the Clerk's Office to return the special assessment paid. Order Granting Motion for Return of Funds, *United States v Nwoye*, Case No. 1:07-cr-00012, Dkt. 100 (D.D.C. Sept. 15, 2017). There is no need to identify a specific funding source here.

In any event, there are multiple funding sources available. Mr. Barnett gives two for exemplar purposes only: First, 31 U.S.C. § 1322(b)(2), authorizes refunds of "amounts erroneously received." Second, 31 U.S.C. § 1304, states that "[n]ecessary amounts are appropriated to pay final judgments" rendered by district courts against the United States. As Judge Bates explained, this law applies where a party is seeking the return of "money improperly retained or exacted." *St Cyr*, 2025 WL 2466044, at *7. Mr. Barnett does not need to separately sue for a refund under this statute because, "under D.C. Circuit precedent, a district court presiding over criminal proceedings has the authority to issue a judgment for the return of property that it would also be able to issue if sitting as a civil court." *Id.*

Because this Court has the authority to and must render a $2,455.00 judgment for the return of funds to Mr. Barnett, this Court should order the government to make such payment to him.

## CONCLUSION

For these reasons, and any others that may be apparent to the Court, Mr. Barnett requests that the Court order the government and/or the Clerk of Court to refund his payments of $2,000 in restitution, and $455 in special assessments, totaling $2,455.

Respectfully submitted,

A. J. KRAMER
FEDERAL PUBLIC DEFENDER


_____/s/_____
COURTNEY MILLIAN
Assistant Federal Public Defender
625 Indiana Avenue, N.W.
Suite 550
Washington, D.C. 20004
(202) 208-7500
courtney_millian@fd.org